IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT IN AND
FOR SARASOTA COUNTY FLORIDA
CIVIL ACTION

ELIZABETH H. COURSEN,
                Plaintiff,

vs.                             CASE NO.: 2010 CA 008588 NC

JPMORGAN CHASE & Co. a foreign corporation,
JPMORGAN CHASE BANK, N.A., individually and as successor to
WASHINGTON MUTUAL BANK a dissolved federal bank,
FEDERAL NATIONAL MORTGAGE CORPORATION,
a foreign corporation;
SHAPIRO & FISHMAN, GP, a Florida General Partnership n/k/a
SHAPIRO, FISHMAN & GACHE, LLP a Florida Ltd Liability Partnership;
FIDELITY NATIONAL FINANCIAL, INC., a foreign corporation;
FIDELITY NATIONAL DEFAULT SOLUTIONS, a foreign corporation;
FIDELITY NATIONAL INFORMATION SERVICES, Inc.,
LENDER PROCESSING SERVICES, INC., a foreign corporation,
LENDER PROCESSING SERVICES DEFAULT SOLUTIONS, INC., a foreign
corporation,
DOCX a dissolved foreign limited liability company,
DORY GOEBEL, individually and as an employee of
Lender Processing Services, Inc.

                    Defendant,
_____/

## FIRST AMENDED COMPLAINT

    Plaintiff, Elizabeth H. Coursen, by and through her attorneys, The Mack
Law Firm, Chartered, submits this First Amended Complaint against JPMorgan
Chase & Co., Washington Mutual Bank, JPMorgan Chase Bank, N.A.,  Federal
National Mortgage Association, Shapiro & Fishman, Lender Processing Services,
Incorporated , Lender Processing Services Default Solutions, Incorporated, DOCX
and Dory Goebel (all defendants collectively defined as "defendants" unless
otherwise indicated) and, in support, states as follows:

## INTRODUCTORY ALLEGATIONS

1. Plaintiff brings these claims for damages that she has suffered by reason of the attempts of the defendants, their associates, and co-conspirators, to wrongfully eject her from her home of more than a decade. The activities of the defendants were, and are, unlawful racketeering activity and/or conspiracy that give rise to relief by virtue of causing harm to Plaintiff by actions committed in their quest to procure the judgment in the foreclosure case. The unlawful actions are set forth below in detail.

2. Plaintiff is seeking an order from this Court, finding that the judgment of foreclosure was obtained in violation of her Constitutional rights; was obtained by means of fraud; and an order setting aside the judgment of foreclosure that was fraudulently obtained, and obtained in violation of the US and State Constitutional Rights of the Plaintiff including, but not limited to 5th and 14th Amendment Due Process and Constitutional Violations; and to set aside the judgment as an independent action as further authorized by Florida Statutes Florida Rule of Civil Procedure 1.540.

3. On Thursday, September 25, 2008, the United States Office of Thrift Supervision (OTS) seized Washington Mutual Bank from Washington Mutual, Inc. (including all original residential loan documents such as notes and mortgages as well as the buildings that housed those files) and placed it into the receivership of the Federal Deposit Insurance Corporation (FDIC). The FDIC Receiver subsequently sold all deposits and certain assets to JPMorgan Chase for $1.9 billion. However, JPMorgan Chase Bank (and Washington Mutual Bank, FA) instead of dismissing the action, allowed the foreclosure litigation to proceed in the name of Washington Mutual Bank, FA falsely claiming that it owned and held the note and mortgage although the subject note was sold to Defendant Fannie Mae at some point predating the 2006 case. In addition defendants apparently forged promissory note(s) and assignments of mortgage and delivered them via the US Mail and by means of interstate commerce, or other mail service, for the purpose of furthering the conspiracy as complained of herein, to their co-conspirators and their servicing agent. The asset (note) was lost, and thus had never been transferred to the owner of the beneficial interest in the loan nor to any other co-defendant and it is believed that the purported "original" promissory note upon which the foreclosure judgment was based is a sham.

2

## JURISDICTION

4. Plaintiff is an individual over the age of 18 has resided in, and/or own(s) real property in Sarasota County Florida at all times material. The Plaintiff is otherwise *sui juris*.

5. Defendant, JPMorgan Chase & Co., (JPMCC) is a Delaware Corporation that has been registered to transact business in the State of Florida presumably[1], at all time material hereto, was the holding company for JPMorgan Chase Bank, N.A. (JPMC) and/or Chase Home Finance, LLC, and/or by holding and/or servicing loans secured by mortgages on real estate in Sarasota County, Florida, including the purported mortgage and promissory note involved in this case and the related case pending in this Court styled: *Washington Mutual Bank v. Elizabeth H. Coursen*, Case # 2006 CA- 008521 NC. Thus, JPMCC and JPMCC have voluntarily submitted to the jurisdiction of this court by its subsidiaries claim that it was a successor in interest[2] to Washington Mutual Bank (WaMu) the entity that is the Plaintiff in the aforesaid related case and thus, is subject to this Court's personal jurisdiction.

6. WaMu was a federal bank that was placed into receivership by the Federal Deposit Insurance Corporation (FDIC) in September, 2008. WaMu's assets were purportedly purchased by JPMorgan Chase Bank, N.A. (JPMC) via Purchase and Assumption Agreement between the FDIC as receiver of WaMu and JPMorgan Chase Bank, N.A.

7. Defendant Federal National Mortgage Association (FNMA or Fannie Mae) is a government sponsored enterprise (GSE) that is a federally chartered corporation whose mandate is to provide a government insured secondary market for mortgage backed securities in addition to perceived origination of mortgage

---

[1] Plaintiff advises the Court that this Defendant's corporate status within this State at all times material hereto remains questionable in light of the variety of reinstatements with the Florida Secretary of State. *See* http://sunbiz.org/scripts/cordet.exe?action=DETFIL&inq_doc_number=F0200000 6289&inq_came_from=FEI&cor_web_names_seq_number=0001&names_name_i nd=N&fei_fei_number=132624428&fei_cor_number=

[2] Plaintiff's allegations in this regard are merely for jurisdiction purposes and not in any way an admission that JPMC is a "successor in interest" to WaMu.

3

backed securities through direct funding of select properties and/or "deals". Fannie Mae was the named plaintiff in another related case *Federal National Mortgage Association v. Coursen*, Case # 2003 CA 5846 NC (the 2003 case) that was voluntarily dismissed by Fannie Mae before judgment. Fannie Mae has availed itself to this Court's jurisdiction by seeking redress in its Courts and through the purchase and liquidation of real property in this jurisdiction

8. Defendant, Shapiro & Fishman, GP (SF), is a Florida General Partnership primarily engaged in the provision of legal services, specifically debt collection, for banks, servicers, financial institutions and other "creditors" at all times material hereto. SF through its agents filed and/or prosecuted the first real property foreclosure claim against Plaintiff April 23, 2003 allegedly as a Fannie Mae's agent based upon a purported breach of the September 27, 2001 loan transaction. In the 2003 case, Fannie Mae sought to foreclose the mortgage and re-establish a lost promissory note that it asserted it owned and held the subject note and mortgage in paragraph two of the complaint in that case.

9. On September 13, 2006 SF, once again filed and prosecuted a claim, based upon the identical loan transaction in the 2003 case on behalf of WaMu who according to the operative pleadings to date is the "owner and holder" of the promissory note. SF through its employees prosecuted the above referenced real property foreclosure claim against Plaintiff when SF knew or should have known that the collection of the underlying debt is illegal.

10. Defendant Fidelity National Financial Inc. ("FNF") is a Delaware corporation registered to transact business in Florida. In addition to the divisions set forth below. FNF supplies a range of services and products used by mortgage servicers including title insurance, Broker Price Opinions ("BPO") property inspections, property preservation services and, most importantly, computerized mortgages servicing and accounting systems for over 50% of the mortgage loans in the United States, including the Plaintiff's mortgage.

11. Defendant Fidelity National Default Solutions ("FND") is a division and/or wholly owned subsidiary of FNF having an office and principal place of business at 15661 Red Hill Ave., Suite 201, Santa Ana, California and operating an office for Foreclosure and Bankruptcy Services at 1270 Northland Dr., Suite 200, Mendota Heights, Minnesota. It supplies record-keeping and litigation support for actions brought to foreclose mortgage in Florida,

4

including, the preparation and verification of multitudinous affidavits which are filed with various court clerks in Florida.

12. Defendant, Lender Processing Services, Inc. ("LPS") is a Delaware corporation registered in this State since March 6, 2009 according to the Florida Secretary of State Division of Corporation's filing F09000000934. LPS : principal place of business is located in Jacksonville, Duval County, Florida. LPS is in the business of providing information technology and services to the financial industry.

13. LPS was acquired by FNF in 2003 and was subsequently named Fidelity National Information Services, Inc. ("FIS"). In 2008 LPS was spun off from FIS as an independent publicly traded corporation. Its corporate headquarters are in Duval County, Florida

14. Lender Processing Services Default Solutions, Inc. ("LPSDS") is a foreign corporation that has sufficient contacts to this state to support personal jurisdiction and/or does business either individually and/or through its alter ego LPS in this state.

15. DOCX is a dissolved foreign limited liability company and is/was a wholly owned subsidiary of LPS and/or LPSDS at all times material hereto.

16. Defendant Dory Goebel is employed in by FNF and/or FND and/or FIS/LPS and/or LPDS and/or DOCX and oversees a section of individuals who produce thousands of sworn affidavits a day for filing in state and federal litigation brought by FNF clients including FNMA and/or WaMu and/or JPMC and/or JPMCC and/or SF. Her section produced several boiler plate documents used in the foreclosure of Plaintiff's home and she personally signed an affidavit which was intended to be, and was in fact, filed in that litigation.

17. At all times material hereto FNF and/or FND and/or FIS/ LPS and/or LPSDS and/or DOCX were instrumentalities of each other and they engaged in improper conduct by failing to:

     a.     Observe corporate formalities;

5

b.     By commingling funds;

c.     By commingling assets;

d.     By failing to adequately capitalize;

e.     By using either corporate form to avoid liability for the other;

f.     By actively conspiring to defraud the Defendant of her homestead real property in violation of their Constitutional Rights.

## GENERAL ALLEGATIONS and
## FACTS COMMON TO ALL COUNTS

18. Plaintiff alleges that all Defendants intentionally acted in concert and in furtherance of the conspiracy to defraud Plaintiff of her property when they knew that they lacked the legal right to do so as evidenced below:

a) Creating the Affidavit of Indebtedness in support of WAMU's Motion for Summary Judgment filed in the 2006 case that was purportedly executed by a "Dory Goebel"[3] "AVP...Washington Mutual Bank" on October 23, 2006. Notably, the affidavit proclaimed that WAMU was the owner and holder of the promissory note and mortgage. The affidavit claimed indebtedness of $181,387.28 with interest of $39.65 per day.

b) Creating the documents used to support the January 5, 2009 claim in Plaintiff's bankruptcy[4] by y JPMorgan Chase Bank, N.A. as purchaser of the loans and other assets of Washington Mutual Bank, formerly known

---

[3]    Ms. Goebel is the manager of FNFS "Document Execution team in Minnesota. The document execution team is "set up like a production line, ensuring that each document request is resolved with 24 hours. On average the team will execute 1,000 documents per day.

[4]    The bankruptcy is Case # 8:08-bk-17636-CPM; Middle District, Tampa Division. The referenced claim is 2-1 filed on January 5, 2009. The subject AOM is pages 25 and 26 of 26 pages total.

Filed for Record 03/06/2012 04:30 PM - Karen E. Rushing, Clerk of the Circuit Court - Sarasota County, FL - 2010 CA 008588 NC  Dkt-13363071  Page 6 of 68

as Washington Mutual Bank FA. The claim stated that $208,576.75[5] was the amount of claim for the unpaid principal on the subject mortgage. Notably, the proof of claim consisted of: a copy of the promissory note, mortgage, 1-4 family rider and an unexecuted, unrecorded Assignment of Mortgage (AOM) prepared by Defendant SF. The AOM was apparently intended to represent an assignment of the subject mortgage directly from North American Mortgage Company (NAMCO)[6] to WaMu and although unexecuted bears the date 2007 and was prepared by SF employee, Denise Elder, Esquire.

c) Defendants WaMu and/or JPMC and/or SF and/or FNMA obtained an unconscionable advantage by concealing and/or misrepresenting the true owner of the beneficial interest in the subject loan and/or the amount owed and/or misrepresentation of good faith forbearance/loss mitigation.

d) Defendants, WaMu and/or JPMC and/or FNMA through its attorney(s) and/or employees, and/or FN and/or FND and/or FF and/or FIS and/or LPS and/or LPSDS and/or DOCX conspired to commit and did commit criminal acts as follows:

1) Creation of Assignment of Mortgage recorded at instrument number 2003087301 in the Sarasota County Official Records on May 5, 2003. This recorded document is executed by "Sharon M. Litt" who is identified as a "Vice President and Assistant Secretary of Washington Mutual Bank, FA."

2) Ms. Litt is/was an officer of "Title & Abstract Agency of America, Inc."[7] along with Gerald M. Shapiro and Barry S. Fishman, the attorneys that practice as "Shapiro & Fishman".

---

[5] The amount of the indebtedness and the amount contained in the proof of claim bear no logical relationship to each other. Eight hundred days separated the two documents, each day bore interest of $39.65/day which equates to $31,720.00 which when added to the AOI amount of $181,387.28 equals $213,107.28 which is $4,530.53 more than the amount contained in the Proof of Claim filed *800 days after* the AOI.

[6] NAMCO is the name of the "table funding" broker that provided the settlement services for the alleged loan in this case at closing but it did not actually provide the funds for the loan.

[7] See Florida Division of Corporations document number: K32084.

7

3) Creation of Assignment of Mortgage recorded at Book 2985, page 2337-2338, Leon County Florida Official Records by SF employees. The Leon County AOM is identical to the Sarasota County AOM except for the property description, mortgagor name, recording information and date.

4) Creation of an Assignment of Mortgage recorded as instrument number 2006192115 in Sarasota County Official Records. This AOM purports to assign the Coursen mortgage and note to WaMu as Attorney in Fact for FNMA. It was created by an SF employee who prosecuted the Coursen 2006 case, Denise Elder, Esq. This AOM was signed by Eric Tate, AVS, and Mark Cardenas, AVP for WaMu as Attorney in Fact for FNMA and notarized by Christopher Fyhr a notary public in Minnesota (currently inactive) commission number 313012033.

5) Mr. Tate is/was a FIS/FNFS/LPS/LPSDS "staff photographer"[8], a supervisor and/or manager of the "referral team"[9].

6) Mr. Cardenas is/was a FIS/FNFS/LPS/LPSDS "referral team manager" who was promoted to Operations/IT Liaison on the Project Management team" in October, 2007. According to the Summit[10], Mr. Cardenas began working at FIS Foreclosure Solutions in October, 2003 and was working for them on or about October 31, 2006 when he claimed to be the "AVP" of WaMu as Attorney-In-Fact for FNMA.

7) Mr. Christopher Fyhr is/was a FIS/FNFS/LPS/LPSDS "document execution" team member under Dory Goebel, supra, in the "review and quality control team".[11] The quality control team "reviews the

---

[8]   Exhibit A  attached hereto is a copy of FIS "The Summit" Volume 2 Issue 3, September 2006.  Page 3.

[9]   Exhibit B  attached hereto is a copy of "The Summit"' Volume 3, Issue 3, October 2007, page 14.

[10]   Exhibit B at page 6.

[11]   Exhibit A page 16.

8

documents to ensure that the proper signing authority has been utilized, all information is filled out, and proper signature and notary is completed."[12]

    e) It is believed and alleged that the above acts violate Florida Statutes §817.54. Obtaining of mortgage, mortgage note, promissory note, etc., by false representation; §831.06 entitled "Fictitious signature of officer of corporation" and § 831.02. Uttering forged instruments.

16. Defendants were at all times material hereto agent and/or apparent/ostensible agent of the other.

17. Each defendant is engaged in some aspect of the mortgage industry and has, together, operated in concert as the facts relate to this case. Specifically, they operate, and operated, mortgage originating and mortgage servicing businesses that solicit, cater, and service millions of home loans annually, including debt collecting on alleged defaulted mortgages. Based on an understanding and belief, certain defendants and their agents, officers, affiliates, attorneys, and/or employees have operated as a common enterprise and in concert while engaging in the unlawful acts and practices alleged below, including collection of alleged defaulted debts.

18. According to the assignments of mortgage recorded in the Sarasota County Official Records neither Fannie Mae nor WaMu had the legal right to attempt to collect the alleged defaulted debt at the inception of the 2003 and 2006 case because neither possessed an AOM and/or a Promissory Note indorsed in blank prior to filing and neither pled facts in support of any equitable transfer theory to support their standing in each case. In addition, it appears that each obtained the allegedly defaulted mortgage debt after the 2003 and 2006 cases were filed and therefore are considered "debt collectors". Any assertion to the contrary requires strict and convincing proof to the contrary.

19. Further, SF is in the business of collecting allegedly delinquent mortgage loans in Florida. Their attorney-members and employees are under an ethical duty of candor before the court and under a duty not to file frivolous claims. In executing that duty, they are obligated to review all evidence presented by their clients to determine the merit of the case before filing foreclosure lawsuits.

---

[12]    Exhibit A  page 17.

Further, by filing and/or prosecuting a foreclosure lawsuit based upon information provided by their clients, these attorneys are ratifying the veracity of its evidence in support of that lawsuit and presenting to the Court that their clients' actions as well as their own actions are meritorious.   Once these attorneys file a claim on behalf of a client, they are acting in concert with that client in collecting the purported debts.  Misconduct on behalf of its clients, its members, and its employees is imputed to plaintiff's attorneys and *vice versa.*

20. On September 27, 2001 Plaintiff obtained a mortgage on her homestead from North American Mortgage Company ("NAMCO") in the principal amount of $217,000.00.

21. On March 5, 2002 NAMCO withdrew its application to transact/conduct business in the Florida. This document is filed with the Florida Secretary of State, Division of Corporations, document number P37297.

22. On September 17, 2002 NAMCO assigned the mortgage to State Street Bank and Trust Company as Custodian/Trustee; the assignment of mortgage ("AOM") is recorded as instrument number 2002151833 in the Sarasota County property records.

23. On September 17, 2002 State Street Bank and Trust Company assigned the mortgage to WAMU; this AOM is recorded as instrument number 2002151834 in the Sarasota County property records.

24. On April 23, 2003 FNMA, through its attorneys at SF, filed a foreclosure complaint against Plaintiff based upon a purported breach of the September 27, 2001 loan transaction. That case number is 2003-CA-005846 (hereafter 2003 case). Fannie Mae sought to foreclose the mortgage and re-establish a lost promissory note that it asserted it owned and held the subject note and mortgage in paragraph two of the complaint.

25. On May 5, 2003 WAMU, through its attorneys SF, assigned the subject mortgage to Fannie Mae; this AOM is recorded in Sarasota County property records as instrument number 2003087301.

26. On May 23, 2003 Fannie Mae, through SF, and its servicer WAMU, filed an Affidavit of Lost Instrument in the 2003 case which states that the original promissory note and mortgage were lost but that Fannie Mae was the owner and holder of the lost note and mortgage.

10

27. Coursen filed for Chapter 13 bankruptcy protection in the Middle District Bankruptcy Court, Tampa, Case number 03-11803-8P3 on June 9, 2003. SF appeared on Fannie Mae's behalf and non-party McCalla, Raymer, Padrick et al. appeared for Washington Mutual Home Loans, curiously on the same day, July 1, 2003.

28. Coursen filed a Motion to Dismiss the Chapter 13 bankruptcy case on July 10, 2003 because she "wishes to try to resolve her financial problems outside of the Bankruptcy." The bankruptcy was dismissed.

29. On September 3, 2003, Fannie Mae, through SF, and its servicer WAMU, filed a Notice of Filing Original Note and Mortgage in open court.

30. The promissory note bore the following markings: a special endorsement, without recourse, to State Street Bank and Trust Company as Custodian/Trustee from NAMCO signed by vice president Liz Papke; an unexecuted, crossed out blank endorsement from State Street Bank and Trust Company as Custodian/Trustee and a blank endorsement from State Street Bank and Trust Company as Custodian/Trustee, without recourse, signed/stamped by "Paul T. Bavis Vice President".

31. On October 21, 2003 Fannie Mae moved the Court for dismissal of the 2003 case "because by virtue of the payment of sums currently due, Plaintiff and Defendant have amicably resolved this matter." It also moved for the return of the "original" documents. The Court entered an Order dismissing the case and returning the "original" documents. The dismissal was without prejudice and prior to judgment.

32. On September 13, 2006 WAMU, through SF, filed a complaint for foreclosure of the subject mortgage and re-establishment of a lost promissory note claiming that Coursen was in default as of July 1, 2006 and owed $172,785.54 with interest and title search expenses as of May 1, 2006. The case number is 2006-CA-008521 and remains pending to date (hereafter "2006 case").

33. WAMU pled that it "was the owner and holder of the subject note and mortgage" in paragraph two of the 2006 Complaint.

34. On October 31, 2006 Fannie Mae, through its attorneys Shapiro & Fishman, recorded an AOM from Fannie Mae to WAMU as Attorney-in-Fact for Fannie

11

Mae; that AOM is recorded at instrument # 2006192115 in the Sarasota County official records.

35. Plaintiff herein, Coursen, filed a *pro se* Answer in the 2006 case that raised the defense of WAMU's lack of standing and its negligence in losing the original promissory note.

36. WAMU proceeded to prosecute the foreclosure by filing a Motion for Summary judgment on November 6, 2006 that included an Affidavit of Indebtedness executed by a "Dory Goebel" "AVP…Washington Mutual Bank" on October 23, 2006. Notably, the affidavit proclaimed that WAMU was the owner and holder of the promissory note and mortgage. The affidavit claimed indebtedness of $181,387.28 with interest of $39.65 per day.

37. The Court entered Final Summary Judgment on November 27, 2006 in the amount of $182,886.38 in favor of WaMu.

38. WAMU filed a Notice of Filing Original Note and Mortgage in open court that same day. It is clear from the docket that neither the original promissory note, nor a copy of it, had been produced prior to that date in the 2006 case.

39. On November 6, 2008 Coursen filed for Chapter 13 bankruptcy protection in the Middle District Bankruptcy Court, Tampa, Case number 8:08-bk-17636.

40. JPMC. as purchaser of the loans and other assets of WaMu filed a claim on January 5, 2009. It claimed that it was owed $208,576.75 for the unpaid principal on the subject mortgage. JPMC allegation is specious because the Purchase and Assumption Agreement (PAA) that it relies upon has been reformed to reflect the deletion as a "scrivener's error", Schedule 3.1 which was the schedule of loans allegedly purchased via the PAA.

41. The proof of claim contained a copy of the promissory note, mortgage, 1-4 family rider and an unexecuted, unrecorded Assignment of Mortgage prepared by Denise Elder, Esq., an employee of Defendant Shapiro & Fishman. The AOM was from NAMCO to WAMU and although unexecuted bears the date 2007.

42. A review of the 2006 case docket reveals that WAMU rescheduled the foreclosure sale numerous times each due to "loss mitigation" discussions

12

between Coursen and WAMU. The Motions to Cancel Sale begin on January 30, 2007 and continued to September 15, 2010 when WaMu filed its last Motion to cancel sale.

## BACKGROUND

43. It is axiomatic that enforcement of a lost, destroyed, or stolen instrument must first prove entitlement to enforce the instrument when the loss of possession occurred, or how it has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when the loss of possession occurred.

44. Further, a foreclosure plaintiff must prove the loss of possession was not the result of a transfer by the foreclosure plaintiff or a lawful seizure, and the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process. Fla. Stat. §673.3091 (2009).

45. Plaintiff questions whether Fannie Mae, or any Defendant, ever had possession of the subject note and mortgage. In the 2003 case, Fannie Mae did not establish foundation to show possession of the note or when the loss of possession occurred. Fannie Mae established that it lost possession of the note after it was transferred to it, and it could not reasonably obtain possession thereof in May 23, 2003 via its Lost Instrument Affidavit. However, several months later, Fannie Mae then filed the original note and mortgage via a Notice of Filing without further authentication. Having provided a Lost Instrument Affidavit Fannie Mae could not attempt to carry on with the 2003 case without at the very least attempting to amend its Complaint via FLA.R.CIV.P. 1.090(a) to reflect the appearance of the alleged original note and mortgage. To be clear, Fannie Mae could not maintain the 2003 action on the pleadings and evidence that was presented in that case.

46. On information and belief, Fannie Mae dismissed the 2003 complaint because it could not prove the terms of the instrument and its right to enforce the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Fla. Stat. § 673.3091(2).

13

47. On information and belief, Plaintiff specifically denied all necessary terms of the note were provided in the mortgage attached to the 2003 foreclosure complaint. The note attached to the foreclosure complaint was allegedly missing; as such, essential terms and conditions precedent were not established by Fannie Mae in the 2003 case and Plaintiff challenged Fannie Mae's standing in that case.

48. Neither Fannie Mae nor WaMu could allege sufficient facts establishing that either was entitled to enforce the purported debt or otherwise establish either entity's standing before this Court in either the 2003 or the 2006 case. Simply put, neither entity "knew" how it purportedly became entitled to enforce the note it claimed it owned and intentionally withheld this material information from the Plaintiff and this Court by asserting that each was entitled to collect the alleged defaulted debt in the respective cases.

49. WaMu, therefore, failed to allege in its foreclosure complaint any ultimate facts whatsoever placing either within the chain of ownership of the purported note and mortgage. Plaintiff draws the Court's attention to Uniform Commercial Code, especially but not limited to UCC 3-604. Coursen avers that there are serious questions about the legitimacy of the instant foreclosure complaint filed in 2006 by Washington Mutual Bank, which also raise questions about how its claimed successor JP Morgan Chase National Bank N.A., hereafter "JPMCB" hereafter "WaMu" came into possession of the note and whether it actually owns the note. If the Defendant does not raise these objections and the proper owner would later make a claim against her, she would not have the defense of having acted in good faith, and would not be protected again such third party claims under UCC 3-604. Therefore she is entitled to a declaratory ruling of relief by the Court.

50. In 2006, "WaMu" filed for foreclosure, claiming to be the owner and holder. It claimed the original note was lost and was left to prove how it came into possession of the note and how it was lost. To date, Washington Mutual Bank, has not brought such proof.

51. The JPMC proof of claim in the 2008 bankruptcy proceeding was filed on the basis of JPMC being the purchaser of the loans and other assets of WaMu. As evidence of debt, JPMC included an assignment of mortgage from the original lender, NAMCO to Washington Mutual Bank- the previously claimed lost note had suddenly been found.

14

52. Either, WaMu in the instant complaint misrepresented that the note was lost to the Court, as it apparently was easy to find or it would not have "found" it in the 2006 case, or it was not the party in possession of the note when it was lost and for which it has the burden of proof that it did, a requirement under UCC for filing a lost note affidavit.

53. Under UCC, specifically, UCC Section 1-201(b)(21)(A), one can only be a holder as the payee on the note or by a bearer endorsement in blank, otherwise one is a nonholder in possession of the [note] who has the rights of a holder. However, WaMu, pled owner and holder in the 2006 case, however it has not proven with preponderance of evidence it is a holder by a bearer endorsement in blank.

54. If WaMu could not plead status of a holder by a bearer endorsement in blank, then JPMC cannot do so either. In fact, JPMC statement in its proof of claim in the 2008 Bankruptcy, that it JPMC as the purchaser of the loans and other assets of WaMu. [that is not a sentence] There is not a shred of evidence in the instant case or the 2006 case, that the instant loan was acquired as an asset of WaMu by JPMC.

55. WaMu was seized by the FDIC on September 25, 2008. Only WaMu and the FDIC could pursue the 2006 foreclosure, and only if these parties could prove that it was in actual psychical possession of the note at the time of the "freeze frame" complaint in 2006. To this effect, WaMu claimed it had lost the note. However, the assignments of mortgage indicate that the note was not in WaMu's possession before filing the 2006 case. The affidavit in the 2003 case, shows that the note was in the possession of different entity, Washington Mutual Home Loan, but only as a custodian and servicer in 2003.

56. It follows that the foreclosure filing in 2006 is moot. The role of JPMC which solely rests on the inadequate indorsement in blank by State Street does not confer any entitlement herein to enforce the note on JPMC. JPMC also fails as a successor to any claim by WaMu, since WaMu itself would only have been a holder by virtue of the flawed endorsement in blank. The bankruptcy claim by JMPC and the assignment of mortgage to WaMu in 2007 clearly show that WaMu was not in possession of the note that it claimed to have lost in 2006 or entitled to file a lost note affidavit by being the last in the chain of custody. Again, foreclosure is a "freeze frame" proceeding, the lack of standing and capacity by WaMu in 2006 cannot be repaired afterwards, whether by WaMu

itself or even less, JPMC. In addition JPMC could only become successor holder of the subject loan if it was evidenced on the failed bank's general accounting ledger.

57. Under the applicable law, any "servicer" which acquires a bad debt, such as one in foreclosure, is deemed a "debt collector." If WaMu disputes this identity it must set forth clear and convincing evidence to the contrary. Further, whether a party is a "debt collector" under the relevant statutes also relates the amount of debt collecting it performs compared to servicing. A significant portion of defendants JPMCC, JPMC, FNMA, the Fidelity/LPS entities business, through robo-signors such as Dory Goebel is "debt collection." This is especially true considering the failure rate of the loans it initiates collection processes which were originated from a third party.

58. In addition to joint and several liability for misconduct among joint tortfeasors, defendants have also operated as a common enterprise, and each of them is jointly and severally liable for the acts and practices alleged herein. No alleged owner of the beneficial interest in the subject promissory note and mortgage was a holder in due course. All references to defendants' "misrepresentations" are defined as fraudulent misrepresentations, reckless and wanton misrepresentations, and/or negligent misrepresentations, regardless of whether referred to as "misrepresentation" or "intentional misrepresentation" or "fraudulent misrepresentation," or any other characterization of the misrepresentation at issue.

## COUNT I
### Florida Deceptive and Unfair Trade Practice Act
### As to all Defendants except SF

Plaintiff realleges and incorporates paragraphs 1-58 as though fully set forth in this paragraph.

59. The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) provides for a civil cause of action for "[u]nconsciable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.20491 (2005).

60. This is an action for injunctive and declaratory relief pursuant to the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §§ 501.201, *et seq.* (hereinafter "the Act") and Chapter 86, FLA.STAT.

16

61. The provisions of the Act are to be liberally construed to promote the following policies:

    a. To simplify, clarify, and modernize the law governing consumer protection, unfair methods of competition, and unconscionable, deceptive, and unfair trade practices; and

    b. To protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce. FLA. STAT. §501.202(1) and (2).

62. At all times relevant hereto, Coursen was a "consumer" as defined by FLA. STAT. §501.203 (7).

63. At all times relevant hereto, these defendants  were engaged in "trade or commerce" as defined by FLA. STAT. §501.203 (8)

64. Either, any, or all of the  Defendants in this count created the documents purportedly transferring the subject mortgage from NAMCO to State Street Bank and Trust  Company as Custodian Trustee simultaneously with a transfer to WaMu FA on September 17, 2002 and then a transfer to Fannie Mae on May 5, 2003 and the final AOM from Fannie Mae to WaMu as "Attorney in Fact" for Fannie Mae on October 6, 2006.

65. These defendants violated the Act by engaging in unfair and deceptive acts and practices including, but not limited to: preparing and executing a false and improper Affidavit of Indebtedness by known robo-signor Dory Goebel who has no apparent signing authority, manufacturing documents  to create the illusion that WaMu possessed equitable ownership of the subject mortgage despite a complete lack of evidence to support that contention.

66. These defendants knew, or should have known, the AOMs, Affidavit of Indebtedness, along with other documents "created" to give the illusion that the 2003 and 2006 foreclosure plaintiffs possessed equitable ownership of the subject promissory note and mortgage was unauthorized, invalid and illegal.  The document creation was performed on Fannie Mae and WaMu's

behalf and with each's acceptance and approval when in fact neither was the real party in interest at the time the claims were filed.

67. These Defendants have violated the act by engaging the following acts of unconscionable conduct, or unfair/deceptive practices in the conduct of trade or commerce. Defendants, claimed and continue to claim JPMC as successor to WaMu is the owner and holder of the subject note and mortgage even though they knew this status was based upon falsified documents created and executed to give the illusion that WaMu and then JPMC owned the subject note and mortgage when in fact the true owner of the beneficial interest was and is Fannie Mae.

68. These Defendants' conduct alleged above, notably collection of a debt without the legal ownership of that debt was a deceptive practice, prohibited by the mortgage contract, State and Federal law and thus unconscionable. In light of such misconduct, the prosecution of this case also amounts to a deceptive practice. Despite this fatal defect, defendants filed and /or prosecuted and/or participated in the malicious foreclosure action against plaintiff.

69. As a direct result of these Defendants actions, Plaintiff has been damaged because she is in danger of losing her homestead, the equity she has established in her home and has had her credit slandered by the wrongful foreclosure and deceptive practices employed to achieve same.

70. Plaintiff has been harmed by defendants' deception and unconscionable conduct. Such acts, the wrongful attempts to collect the note, and the filing of a baseless foreclosure complaint constitute a deceptive business practice and are unconscionable as per se violations of a variety of consumer protection laws enacted to prevent the very conduct engaged in by the defendants in this case. Each and every defendant is jointly and severally liable for such conduct.

71. Plaintiff Coursen incurred substantial damages as a direct and proximate result of plaintiffs' illegal conduct including harm to her credit, loss of her homestead real property and associated equity, pain and suffering caused by

18

the utter lies perpetuated upon her including the Plaintiff's attorney's fees and costs associated with each case. Attorneys fees and costs are sought pursuant to Fla. Stat. §501.2105.

WHEREFORE, Plaintiff respectfully request that this Court award damages, and any other just and appropriate relief under the law, including but not limited to, attorneys' fees and costs.

## COUNT II
### Illegal Consumer Collection
(FDCPA claims against all defendants except SF)
FCCPA claims against all defendants)


Plaintiff realleges and incorporates paragraphs 1-58 as though fully set forth in this paragraph.

72. The FDCPA was enacted to protect all consumers from debt collectors who seek to collect debts through illegal means and who engage in unfair and/or deceptive practices during the collection of a debt. Plaintiff, is a "consumer" within the meaning of FDCPA, 15 U.S.C. §1692a(3).

73. These defendants have engaged in collection of "debts" as this phrase is defined by 15 U.S.C. §1692a(5) and Fla. Stat. §559.55 allegedly owed by Plaintiff. Defendants, JPMCC, WaMu/JPMC, the LPS entities and FNMA sought to foreclose upon the subject mortgage after alleged default and are "debt collectors" . The collection activity seeks to foreclose a mortgage, collect monies owed pursuant to a promissory note including a deficiency judgment.

74. It is Plaintiff's good faith belief that the Dory Goebel affidavit, created by Defendants was created through collusion between defendants FNMA and/or WaMu/JPMC and/or JPMCC and/or the LPS entities and/or SF to support the claimed indebtedness and to support that there is "no genuine issue of material fact" in this case as of the date that the affidavit was executed.

75. These Defendants continue to intentionally mislead the court in an effort to unjustly enrich themselves in taking Plaintiff's home when they knew, or

19

should have known,  at the inception of this suit that JPMC and/ or its predecessor in interest has never owned the note as it was merely, at best, the servicer of mortgage.

76. Defendants' collection activities described herein violate the Florida Consumer Collection Practices Act (Fla. Stat. § 559.72) and the Federal Fair Debt Collection Practices Act (15 U.S.C. § 1692a *et seq.*) in that defendants' were claiming, attempting and threatening to collect and enforce this consumer mortgage debt by foreclosure action where they know or should have known that the right to pursue foreclosure does not exist under the law because:

   a. Fannie Mae did not have standing to pursue the 2003  action and WaMu did not have standing to pursue the 2006 action;

   b. Failure to engage in pre-foreclosure settlement discussions with Plaintiff;

   c. Defendants' unconscionable, deceptive methods and practices in collecting this loan should preclude them from seeking  judicial enforcement of the alleged.

77. The assignment of mortgage to Fannie Mae post-dated the filing of the 2003 suit and the AOM from Fannie Mae to WaMu on October 31, 2006 post-dated the filing of the 2006 suit. However, in the 2006 suit WaMu alleged that it was the "owner and holder of the subject note and mortgage" in paragraph two of the complaint. As such, WaMu obtained the defaulted mortgage well after the alleged default and is considered a "debt collector" under the law. Any denial to the contrary must be supported by strict and convincing evidence. Further, merely labeling oneself as a servicer when, in fact, a large percentage of your business is collecting a debt also qualifies all defendants as "debt collectors" under the law.

78. Further, Plaintiff was subjected to "default" fees and charges including, but not limited to, attorney fees, legal fees, foreclosure costs, late charges, property inspection fees, title search expenses, filing fees, broker price opinions, appraisal fees, forced placed insurance, and other charges and advances, and predatory lending fees and charges all of which are not

20

authorized by or in conformity with the terms of the subject note and mortgage.

79. For statute of limitations purpose it was impossible for Plaintiff to prove the conduct herein until April, 2011 when JPMC and LPS entered into consent orders regarding the specific misconduct in this case. Specifically document "creation" by individuals lacking authority and specific knowledge about the documents, such as the Goebel AOI, that were executed and presented to the Courts all in furtherance of the defendants' illegal scheme to divest Plaintiff of her homestead.

80. These acts as well as the prosecution of this case are wrongful, intentional, reckless, willful and wanton, negligent, deceptive, and predatory. Defendants knew they should not falsify documents particularly sworn documents meant to prove a material fact such as AOIs and AOMs. These perjured documents violate 15 U.S.C. §1692e(10) and 15 U.S.C. §1692f.

81. As a result of the aforesaid FDCPA and FCCPA violations, Plaintiff has been subjected to false and illegal collection activities, and has therefore been harmed due to the slander to her credit and emotional/physical health issues proximately caused by these defendants. Plaintiff has retained counsel and is entitled to reimbursement of her costs and attorneys fees pursuant to 15 U.S.C. §1692k(3) and Fla. Stat. §559.77.

WHEREFORE, plaintiff respectfully request: an award of damages in plaintiff's favor and against defendants for their actual or statutory damages whichever is greater; and an award of attorneys' fees and costs and for all other relief to which this Court finds just and appropriate.

## COUNT III- CIVIL CONSPIRACY
### As to all Defendants

Plaintiff realleges and incorporates paragraphs 1-58 as though fully set forth in this paragraph.

82. Plaintiff alleges that Defendants entered into an agreement(s), with each other to defraud Plaintiff by providing false testimony regarding her alleged default on the promissory note securing the mortgage on her house and fake

21

documentary evidence to the Court to support their plan to obtain Plaintiff's homestead.

83. The agreement between the Defendants to provide evidence they knew was unauthenticated and therefore inadmissible and in many instances outright perjury comprises the underlying tort or wrong Defendants have committed against Plaintiff in furtherance of their own financial goals.

84. The overt acts in furtherance of the conspiracy were the following: the preparation and recordation of the November 5, 2003 AOM, the October 31, 2006 AOM, the filing of the "Original Promissory Note" via a September 3, 2003 Notice of Filing in the 2003 case where an Affidavit of Lost Instrument from Fannie Mae's servicer, WaMu, was filed May 23, 2003 and never withdrawn; the filing and reliance upon the Affidavit of Indebtedness executed by Dory Goebel, a known "robo-signor" who completely lacked personally knowledge of any of the data contained in the AOI which was used to prove   material facts in the 2006 foreclosure namely, amount allegedly in default and to whom the debt is owed. Compounding the aforesaid misdeeds, all Defendants behavior towards Plaintiff regarding the setting and re-setting of "foreclosure sale" of her homestead for multiple years evidences a callous and blatant disregard for the good faith and fair dealing that forms the basis for commercial endeavors.

85. At the time SF filed the 2003 and the 2006 cases, their client did not have sufficient documentation to establish it is was the proper party to bring this action and the documentation upon which those Plaintiff relied upon for standing was improperly manufactured by SF, as Plaintiff's counsel in both cases and acting on Plaintiff's behalf as its authorized agent. In other words, Defendants created false documents to make it appear that Fannie Mae and/or WaMu were the proper party to bring the respective actions.

86. Plaintiff was sued twice for foreclosure of her homestead without first allowing her the right to pursue the federally-required pre-foreclosure loss mitigation opportunities. In addition, Fannie Mae,  WaMu, JPMC JPMCC, SF   proceed to pretend to engage in loss mitigation/forbearance with Plaintiff who justifiably relied upon their multiple promises that *untold numbers of other homeowners, in addition to Plaintiff, in this country*

22

*reasonably relied upon*; the promise of "working out" the alleged defaulted debts so the property owner could resolve the matter without foreclosure.

87. As a direct and proximate result of the acts set forth in this Count, Plaintiff has suffered damages including but not limited to psychological and physical pain and suffering, damage to her credit reputation, the expense of retaining counsel and defending the foreclosures and other reasonable and foreseeable damages. Plaintiff has also had to hire undersigned counsel and seeks damages for the litigation fees and costs pursuant to t Florida Statutes §57.105.

WHEREFORE Plaintiff prays that this honorable Court award her damages for the claims set forth herein including litigation fees and costs.

## COUNT IV-
## ABUSE OF LEGAL PROCESS
### As to SF, JPMC as successor to WaMu, FNMA , the LPS entities
### and Dory Goebel

Plaintiff realleges and reavers paragraphs 1-58 as if fully set forth herein and further states:

88. This is an action for injunctive and declaratory relief and for damages based upon these Defendants abuse of the legal process in connection with the foreclosure lawsuits.

89. From the filing of the 2006 action to present, WAMU and then JPMC as successor, did not have sufficient documentation to establish it is the proper party to bring this action and the documentation upon which it relied on for standing was improperly manufactured by Defendants, individually or jointly.

90. These Defendants created and/or used false documents in an effort to obtain a foreclosure final judgment against homeowner. These documents include the aforementioned AOMS and Affidavit of Indebtedness. Furthermore there is a issue as to whether the individual's name that appears on those documents has any information, personal or otherwise, relating to the

23

information contained in the document and/or the authority to sign the documents.

91. Defendants utilized the AOMS and affidavit of indebtedness and "endorsed" promissory note in this legal process to falsely represent to the Court that WaMu, and then JPMC had the requisite standing to bring this mortgage foreclosure lawsuit and the sums due and which should be included in the foreclosure final judgment.

92. By creating and utilizing the false documents these Defendants misused legal process and the Court system to promote their best interests by misleading the Court as to WaMu's right to bring the 2006 mortgage foreclosure lawsuit and by misleading the Court as to the legitimacy of alleged "evidence" of "original" documents that they were relying upon to support their claims against Plaintiff.

93. These Defendants should not have abused the foreclosure process by filing false documents to support their claim that WaMu was the proper party to bring this action.

94. These actions were willful and constituted an intentional misuse of process in an effort to wrongfully foreclose upon homeowner's property.

95. Therefore, Defendants misused civil legal process against homeowner in an effort to accomplish the foreclosure upon her home based upon false documents.

**WHEREFORE**, Plaintiff requests actual and special damages including attorneys fees and costs against these Defendants jointly and severally for abuse of legal process.

## COUNT V
### Damages And Declaratory Relief pursuant to
### 18 U.S.C. §§ 1961, 18 U.S.C. 1962(b) and 18 U.S.C. §§ 1964
### AS TO FANNIE MAE, JPMC, JPMCC, THE LPS ENTITIES, Dory Goebel
### AND SF

Plaintiff incorporate paragraphs 1-58 inclusive, herein, as though set forth herein.

24

96. On April 23, 2003, and continuing, through the present, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(b) (Prohibited activities).

97. Plaintiff further alleges that Defendants, FNMA, JPMC, JPMCC, the LPS entities, SF and Dory Goebel on their own behalf, and on behalf of the co-defendants, in conjunction with and in furtherance of the conspiracy with all the remaining Defendants, did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e. a continuing threat of their respective racketeering activities, also in violation of the RICO law at 18 U.S.C. 1962(b) *supra*.

98. At all times herein, defendants, on their own behalf, and on behalf of the co-defendants, and each of them, conspired with remaining defendants, to interfere with the quiet enjoyment of Plaintiff's home; steal the equity in the Plaintiff's home through the use of sham pleadings, manufactured "evidence" such as fraudulent affidavits in a civil court action in order to fraudulently obtain a judgment of foreclosure.

Wherefore Plaintiff seeks relief as accorded by the applicable Statute, including, but not limited to:

    a. Statutory Compensatory damages for each separate violation according to proof;

    c. Exemplary damages for each separate violation based on the net worth of the Defendants on their own behalf, and on behalf of the co-defendants;

    d. Declaratory relief, including permanent injunctive relief, prohibiting these defendants, or any of their agents or assigns, from any further breaches of the statute;

    e. Reasonable attorney's fees and court costs according to proof;

f.  Such other and further relief as the court deems just and proper.

Pursuant to §768.72 (2002), FLA. STAT., Plaintiff reserves the right to amend this complaint to add a prayer for punitive damages upon a showing by evidence in the record providing a basis for recovery of such damages.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable. U.S. Const. Amend. VII.

Jacqulyn Mack, Esquire
MACK LAW FIRM CHARTERED
2022 Placida Road
Englewood, Florida 34224-5304
(941) 475-7966
(941) 475-0729 facsimile
Jacqulyn@MackLawFirm.org
Florida Bar Number: 0134902
Attorney for Coursen

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent by e-service christine.marlewski@gray-robinson.com and U.S. Mail to Christine A. Marlewski, Esquire, c/o GrayRobinson, P.A., 201 North Franklin Street, Suite 2200, Tampa, FL 33602 on this _6_ day of March, 2012.

Jacqulyn Mack, Esquire

26