UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION

**ELIZABETH H. COURSEN,**

**Plaintiff,**

vs.                           **CASE NO.:**              **8:12-cv-690-T-26-EAJ**
                              **State Court CASE NO.:**    **2010 CA 008588 NC**
                              **(Sarasota County)**

**JPMORGAN CHASE & Co. a foreign corporation,**
**JPMORGAN CHASE BANK, N.A., individually and as successor to**
**WASHINGTON MUTUAL BANK a dissolved federal bank,**
**FEDERAL NATIONAL MORTGAGE CORPORATION,**
**a foreign corporation;**
**SHAPIRO & FISHMAN, GP, a Florida General Partnership n/k/a**
**SHAPIRO, FISHMAN & GACHE, LLP a Florida Ltd Liability Partnership;**
**FIDELITY NATIONAL FINANCIAL, INC., a foreign corporation;**
**FIDELITY NATIONAL DEFAULT SOLUTIONS,  a foreign corporation;**
**FIDELITY NATIONAL INFORMATION SERVICES, Inc., N/K/A**
**LENDER PROCESSING SERVICES, INC., a foreign corporation,**
**LENDER PROCESSING SERVICES DEFAULT SOLUTIONS, INC., a foreign**
**corporation,**
**DOCX a dissolved foreign limited liability company,**
**DORY GOEBEL, individually and as an employee of**
**Lender Processing Services, Inc.**

**Defendants,**

_____/

## RESPONSE TO DEFENDANTS FIDELITY NATIONAL INFORMATION SYSTEMS, INC.  MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, Elizabeth H. Coursen, by and through her attorneys, responds to the Motion to Dismiss filed by Fidelity National Information Systems, Inc.[1]., in support thereof, states the following:

### I.       Introduction

On August 18, 2010, Plaintiff, *pro se,* filed a ten count Complaint[2], pursuant to Florida Rule of Civil Procedure 1.540(b), solely against JPMC, formerly known as WaMu[3], in the Twelfth

---

[1]  "FIS"

1

Judicial Circuit Court for Sarasota County, regarding those entities activities during the foreclosure of a residential mortgage loan given on Plaintiff's primary residence[4]. JPMC/WaMU filed a Motion to Dismiss which was granted with leave to amend.

Plaintiff then filed a First Amended Complaint ("FAC"), which caused Defendants JPMCC, JPMC, WaMu and FNMA to seek removal to this Court (Doc. 2). Plaintiff's FAC seeks relief pursuant to statutory and common law causes of action: Florida Deceptive and Unfair Trade Practices Act violations, Federal Debt Collection Practices Act, Florida Consumer Collections Practices Act, Civil Conspiracy, Abuse of Legal Process and Federal Civil RICO violations. This Court denied  Defendants', JPMCC, JPMC, WaMu and FNMA, Motion to Dismiss (Doc. 3) on May 4, 2012 (Doc. 12).

Defendant, FNF, filed a Motion to Dismiss on June 28, 2012 through Michelle Cavallaro, Esq., an attorney at Fidelity National Title Group (Doc. 28). On the same day, FNF and co-defendant, Fidelity National Information Services, Inc.[5] [6] filed an Agreed Motion for Enlargement of Time to Respond to the First Amended Complaint through their counsel at Berger Singerman (Doc. 29) The Court granted the Motion (Doc. 30).  This Court denied the FNF Motion to Dismiss on July 25, 2012 (Doc. 41).

A motion to dismiss "is viewed with disfavor and rarely granted." *E.g., Brooks v. Blue Cross and Blue Shield of Fla., Inc*., 116 F.3d 1364, 1369 (11th Cir. 1997). In ruling on a motion to dismiss, the trial court is required to view the complaint in the light most favorable to the plaintiff.  *Kelly v. Kelly*, 901 F.Supp. 1567, 1569 (MD Fla. 1995).  The trial court is also required to accept all factual allegations in the complaint as true". *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007) However,  the trial

---

[2]  Count I was a claim for Extrinsic Fraud, Count II was a claim for Fraud; Count III was a claim for Constructive Fraud, Count IV was a claim for Fraud in the Inducement, Count V was a claim for Fraudulent Misrepresentation, Count VI was for Slander of Title, Count VII was for Defamation, Count VIII is Standing, Count IX was for Breach of Fiduciary Duty and Count X was Intentional Infliction of Emotional Distress.

[3] "JPMC/WAMU"

[4]  Coursen has disputed defaulting on the note and mortgage encumbering her homestead since the 2003 case.  She continues to dispute the alleged default believing that it was "manufactured" by WaMu (Doc. 1-33 at ¶10, 1-39 ¶4).

[5] "FIS"

[6]  Plaintiff will refer to the movant, FNF, LPS, LPSDS and DOCX, collectively as the "LPS defendants"  where appropriate and individually when necessary.

court is not required to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 -1950 (U.S. 2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

FIS's Motion to Dismiss (Doc. 3) should be denied for the reasons that follow.

**II.    Plaintiff's Florida Deceptive and Unfair Trade Practices Act claim against FIS states a Cause of Action because the Creation of False, Perjured Documents in violation of Florida Statutes §§817.54, 831.02 and 831.06 constitutes an Unfair and Deceptive Practice.**

FDUTPA's purpose is to protect the consuming public and legitimate business enterprises from unlawful and deceptive acts. Fla. Stat. § 501.202(2). The Florida Legislature intended chapter 501 to be construed liberally. *Cummings v. Warren Henry Motors, Inc.,* 648 So.2d 1230, 1233 (Fla. 4th DCA 1995). A claim for damages under Florida Deceptive and Unfair Trade Practices Act (FDUTPA) has three elements: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. West's F.S.A. § 501.211; *True Title, Inc. v. Blanchard*, 2007 WL 430659 (M.D. Fla. 2009). A "deceptive practice," within the meaning of FDUTPA, is one that is likely to mislead. *Davis v. Powertel, Inc.,* 776 So.2d 971, 974 (Fla. 3d DCA 2000). A practice is unfair under the FDUTPA if it "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.,* 842 So.2d 773, 777 (Fla.2003). "The plaintiff need not prove the elements of fraud to sustain an action under the statute…. That is so because the question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances." *Davis*, 776 So.2d at 974 (internal citations omitted). "'Trade or commerce' means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. 'Trade or commerce' shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity."§ 501.203(8), Fla. Stat.

In this case Plaintiff has alleged that Defendants, including movant, violated FDUTPA when they created fake identities and manufactured documents to deprive her of her homestead

through foreclosure of a debt that was not in default[7] prior to inception of the foreclosure cases. (Doc. 2, pages 6-19).  Unlike, *Tretn v. Mortgage Electronic Registration Systems, Inc.*, 618 F.Supp.2d 1356 (M.D. Fla. 2007),  Coursen alleges that FIS, and the remaining  LPS defendants, business of preparing forged documents using fictitious identities[8] was an unfair and deceptive practice. (Doc. 2, pages 6-19).  Coursen's allegations that the LPS defendants conduct of their business constitutes the FDUTPA violations distinguish this case from *Trent*, supra, and *Kelly v. Palmer, Reifler, & Associates, P.A.,* 681 So.2d 1356 (S.D. Fla. 2010) where the allegations revolved around those defendants conduct in the "pursuit of legal remedies" *Kelly*, 681 So.2d at 1375.  The FAC identifies movant, and the remaining LPS defendants, as having direct and/or vicarious liability for the alleged fraudulent acts that caused Plaintiff to suffer the loss of her homestead (Doc. 2, ¶11-42).  Whether the allegations may be proven is a question of fact to be determined through discovery. Accordingly the motion to dismiss should be denied.

### III.   The FDCPA applies to FIS's actions alleged in the FAC because Mortgage Foreclosure is Debt Collection, FIS is a debt collector pursuant to 15 U.S.C. §1692(a)(6) and its debt collection activities violated 15 U.S.C. §1692(f).

A debt collector is defined in 15 U.S.C. § 1692(a)(6) which states:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section

---

[7]  Coursen has disputed defaulting on the note and mortgage encumbering her homestead since the 2003 case.  She continues to dispute the alleged default believing that it was "manufactured" by WaMu(Doc. 1-33 at ¶10, 1-39 ¶4) .

[8]  Coursen has previously requested that eh Courts take Judicial Notice of the April 13, 2011 Consent order between defendants, Lender Processing Services, Inc., DocX, LLC, LPS Default Solutions, Inc., the Federal Reserve Board of Governors, Federal Despot Insurance Corporation, Office of Comptroller of the Currency and Office of Thrift Supervision (Doc. 40, Exhibit K). The Consent Order revolves around allegations that **default management services LPS and its employees provided to** Examined Servicers were unsafe and unsound because: affiants lacked personal knowledge, AOMs contained inaccurate information …, mortgage related documents were executed by individuals  without authority...  (emphasis supplied)

4

808(6) [15 USCS § 1692f(6)], such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

(emphasis added).  The Eleventh Circuit Court of Appeal has recently clarified that mortgage foreclosure can be debt collection under the FDCPA in *Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211 (11th Cir.2012) and *Birster v. Am. Home Mortg. Servicing, Inc.,* 2012 WL 2913786 (11th Cir. July 18, 2012).    Applying *Reese* and *Birster* to this case necessitates a finding that  liability exists if the LPS defendants are debt collectors within the meaning of 15 U.S.C. § 1692a(6). *Birster* at *4.

The term "debt collector" includes lawyers who regularly engage in debt collection through litigation. *See, Reese, supra, and Heintz v. Jenkins,* 514 U.S. 291, 294 (1995). Although some courts have held that "mere messengers" of debt collection notices, without any active participation, are not debt collectors within the meaning of the FDCPA. See*, e.g., Aguino v. Credit Control Servs.,* 4 F.Supp.2d 927 (N.D.Cal.1998); *Laubach v. Arrow Serv. Bureau, Inc.,* 987 F.Supp. 625 (N.D.Ill.1997); *Trull v. Lason Sys., Inc.,* 982 F.Supp. 600 (N.D.Ill.1997).  If a defendant's "activities go beyond mere information gathering or message delivery," those are activities "that the FDCPA was designed to deter." See, *Romine v. Diversified Collection Servs., Inc.,* 155 F.3d 1142, 1149 (9th Cir. 1998*),* 155 F.3d at 1149 (holding Western Union was "debt collector" based upon its telegram service, developed for the collections industry, that stimulated responses to apparently urgent telegram notices in order to capture debtor's telephone number for collection service). Plaintiff has alleged that movant's activities are of the type "abusive, deceptive and unfair" that the FDCPA was designed to deter. See, 15 U.S.C. 1692, *Congressional findings and declaration of purpose*.

Under the FDCPA, 15 U.S.C. § 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  In addition to that general language, subparagraph (6) of the same section specifically prohibits [t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if ...there is no present right to possession of the property claimed as collateral through an enforceable security interest. *Id.* § 1692f(6).   Plaintiff has alleged that these Defendants used "unfair or unconscionable means" in their debt collection activities, as alleged in the FAC.  Specifically,

Plaintiff alleged that movant, and its alleged alter egos, the LPS defendants, fabricated documents in furtherance of a conspiracy to unlawfully divert plaintiff of her homestead. The allegations include:

- Defendant Dory Goebel is employed in by FNF and/or FND and/or FIS/LPS and/or LPDS and/or DOCX and oversees a section of individuals who produce thousands of sworn affidavits a day for filing in state and federal litigation brought by FNF clients including FNMA and/or WaMu and/or JPMC and/or JPMCC and/or SF. Her section produced several boiler plate documents used in the foreclosure of Plaintiff's home and she personally signed an affidavit which was intended to be, and was in fact, filed in that litigation.

(Doc. 2, ¶16).

- Creating the Affidavit of Indebtedness in support of WAMU's Motion for Summary Judgment filed in the 2006 case that was purportedly executed by a "Dory Goebel" "AVP…Washington Mutual Bank" on October 23, 2006. Notably, the affidavit proclaimed that WAMU was the owner and holder of the promissory note and mortgage. The affidavit claimed indebtedness of $181,387.28 with interest of $39.65 per day.

(Doc. 2, ¶18(a)).

- Ms. Goebel is the manager of FNFS "Document Execution team in Minnesota. The document execution team is "set up like a production line, ensuring that each document request is resolved with 24 hours. On average the team will execute 1,000 documents per day.

(Doc. 2, ftnt 3).

- Creation of an Assignment of Mortgage recorded as instrument number 2006192115 in Sarasota County Official Records. This AOM purports to assign the Coursen mortgage and note to WaMu as Attorney in Fact for FNMA. It was created by an SF employee who prosecuted the Coursen 2006 case, Denise Elder, Esq. This AOM was signed by Eric Tate, AVS, and Mark Cardenas, AVP for WaMu as Attorney in Fact for FNMA and notarized by Christopher Fyhr a notary public in Minnesota (currently inactive) commission number 313012033.

- Mr. Tate is/was a FIS/FNFS/LPS/LPSDS "staff photographer", a supervisor and/or manager of the "referral team".

- Mr. Cardenas is/was a FIS/FNFS/LPS/LPSDS "referral team manager" who was promoted to Operations/IT Liaison on the Project Management team" in October, 2007. According to the Summit, Mr. Cardenas began working at FIS Foreclosure Solutions in October, 2003 and was working for them on or about October 31, 2006 when he claimed to be the "AVP" of WaMu as Attorney-In-Fact for FNMA.

- Mr. Christopher Fyhr is/was a FIS/FNFS/LPS/LPSDS "document execution" team member under Dory Goebel, supra, in the "review and quality control team". The quality control team "reviews the documents to ensure that the proper signing authority has been utilized, all information is filled out, and proper signature and notary is completed."

(Doc. 2, ¶18(d)(1, 4-7)).

These allegations, if proven, show that movants alleged creation of sham pleadings[9] in furtherance of foreclosing a mortgage where there was no "present right to possession of the property claimed as collateral through an enforceable security interest" violates the FDCPA. The conduct alleged would violate the FDCPA because the LPS defendants are debt collectors and they are alleged to have used unfair and unconscionable conduct in their debt collection activities.

**IV.    The Florida Consumer Collection Practices Act prohibits Fidelity National Information Systems Alleged Participation in the Debt Collection Acts that Employed Instrumentality of Commerce**

The FCCPA defines "debt collector" as "any person who uses any instrumentality of commerce within this state, whether initiated from within or outside this state, in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another..." Florida Statutes §559.55(6). Section 559.72 entitled "prohibited practices" is not limited to debt collectors who are financial institutions or their servicers. Rather § 559.72 states that "no person shall" do any of nineteen (19) enumerated items, including collecting a debt which is not owed or is the result of a "manufactured default". Naturally, the Florida legislature could have limited such prohibitions to its definition of "debt collectors," but it did not. Movant does not cite any authority for the proposition that they do not fit within the scope of "person" as the term is used in § 559.72, Florida Statutes.   Movant merely states that mortgage foreclosure is not debt collection under the statute.   However the appropriate inquiry is whether the alleged debt is within the purview of the FCCPA.  Movant cannot reasonably believe that it would not be liable

---

[9]  "A plea is considered 'sham' when it is palpably or inherently false, and from the plain or conceded facts in this case, must have been known to the party interposing it to be untrue" *Rhea v. Hackney*, 157 So. 190, 193 (Fla. 1943); *O'Berrv v. Pearson* 186 So. 430 (1939); *Furst v. Blackman*, 819 So.2d 222(Fla. 4th DCA 2002), *Reif Development, In. v. Wachovia Mort. Co.*, 340 So.2d 1267 (Fla. 4th DCA 1976).

for creating false, perjured documents for the purpose of collection of the alleged debt.  At a minimum, such conduct would amount to common law fraud, and such conduct is alleged in paragraphs which are within Introductory Allegations, paragraphs one through fifty eight and Count II (Doc. 2 ).

Coursen agrees that to establish a violation under the FCCPA she must show that movant asserted a legal right that did not exist, with actual knowledge that the right did not exist. *See* Fla. Stat. § 559.72(9).  Plaintiff has alleged that there was no legal right to collect the alleged debt because a) they did not have the right to enforce the debt and b) she was not in default (Doc. 1-5 at ¶1-4,  1-33 at ¶10, 1-39 at  ¶42 and 2 ). In addition, Coursen alleges that movant*, inter alia*, manufactured evidence and sham pleadings because the legal right to collect the alleged debt did not exist (Doc. 2 at 18-19). Therefore, the FIS's request to dismiss this claim should be denied because the FAC allegations sufficiently state a cause of action against FIS for FCCPA violations.

**V.     The Bankruptcy Code and Rules of Procedure do not bar Plaintiff's claims Because A Proof of Claim Based Upon Forged Documents is Not Authorized by the Bankruptcy Code or the Rules of Procedure and is Evidence of Movant's Alleged Misconduct.**

The allegations herein are distinguished from those in found in, In re Williams, 392 B.R. 882 (Bkrtcy.M.D.Fla.   2008) because  here JPMC's use of the alleged forged AOM  to support its Proof of  Claim[10] in the 2008 bankruptcy was unauthorized *within* the bankruptcy system. Coursen disagrees that the POC was an authorized use of  bankruptcy practice and procedure. See, e.g., *In re: Peed*, 2012 WL 1999485 (Bankr. S.D. Ala. June 4, 2012)  Where the alleged facts giving rise to FDCPA and RICO claims arise outside of bankruptcy, "i.e., sending letters to a debtor in violation of the automatic stay. …debt collection activities following a debtor's discharge in violation of the discharge injunction." they are not authorized by the Bankruptcy Code.

> Several courts have made the same distinction with regard to actions taken pursuant to the Code and Rules versus actions taken outside the bankruptcy system. *Bacelli v. MFP, Inc.,* 729 F.Supp .2d 1328, 1336–37 (M.D.Fla.2010); *In re Chaussee,* 399 B.R. 225, 237–38 (B.A.P. 9th Cir.2008); *In re McMillen,* 2010 WL 2025610, at *3–*4 (Bankr.N.D.Ga. February 25, 2010); *In re Poteet,* 2011 WL 3626696, at *5–*6 (Bankr.E.D.Tenn. August 17, 2011).

---

[10] "POC"

*In re Peed*, 09-15486, 2012 WL 1999485 (Bankr. S.D. Ala. June 4, 2012)

In addition, none of the LPS defendants, including movant, were litigants in the 2008 bankruptcy and Plaintiff has not alleged that they are corporate doppelganger of JPMC. Therefore, because Coursen did not discover the all Defendants alleged misconduct until April, 2011 it is unclear how she could have challenged the POC with evidence she didn't even know existed at the time.

### VI.     The Litigation Privilege does not Bar Plaintiff's claims because the Alleged Illegal, Improper Conduct does not Clearly Relate to a Judicial Proceeding.

Promissory note collection and the concomitant foreclosure of its collateral that has plagued this country in the recent past have revealed a stunning display of misconduct in the prosecution of those debt collection claims. A variety of financial institutions have entered into Consent Orders with their primary regulators for the very practices that Plaintiff has claimed proximately caused the loss of her homestead (Doc. 1, ¶79).    Assuming *arguendo* that the Court in  *Levin, Middlebrooks, Mabie, Thomas, Mayes Mitchell, PA v. United States Fire In. Co*., 639 So.2d 606 (Fla. 1994) had  "unambiguously confirmed that the privilege applies to all torts…" (Doc 35, page 11), it would not automatically provide FIS its claimed immunity for allegedly manufacturing false, forged, perjured documents for profit to be used to deprive a person of their property. AS the Court in *N. Star Capital Acquisitions, LLC v. Krig,* 611 F. Supp. 2d 1324, 1331 (M.D. Fla. 2009)(citing authorities) stated:

> "When viewed *in toto,* the purpose and intent of the FCCPA, like the FDCPA, is to eliminate abusive and harassing tactics in the collection of debts." ... This is not to say that the litigation privilege is wholly inapplicable to claims under the FCCPA. ...Yet, the mere existence of FCCPA litigation does not attach the privilege to every communication between litigants; rather, the communication must be analyzed in light of its relation to the litigation.

The Fourth District Court of Appeal recently specified that absolute immunity does not attach to statements made before  litigation, or upon its conclusion, and those made outside of litigation.

> [Absolute immunity] does not apply to or include any publication of defamatory matter before the commencement, or after the termination of the judicial proceeding (unless such publication is an act incidental to the proper initiation thereof, or giving legal effect thereto); *nor does it apply to or include any publication of defamatory matter to any person other than those to whom, or in any place other than that in which, such publication is required or authorized by law to be made for the proper conduct of the judicial proceedings.*"

*Ball v. D'Lites Enterprises, Inc.*, 65 So. 3d 637, 640 (Fla. Dist. Ct. App. 2011) (emphasis original).

In this case the two allegedly false, perjured AOMS and the Goebel AOI were created during the 2003 and 2006 foreclosure proceedings but do not provide shelter for FIS unless those acts were authorized by law to be made proper for the conduct of the judicial proceedings" *Id*. Plaintiff has alleged that the creation of the two AOMs and the Goebel AOI violate Florida Statutes §817.54; §831.06 and § 831.02 which would make them illegal, improper conduct in the respective judicial proceedings. *Ball, supra*.

**VII. Plaintiff's Allegations Regarding the Movant's and the LPS Defendants role in the 2003 Foreclosure Provide Evidence of the Defendants Sentient Scheme to Commit Fraud Upon the Courts and Plaintiff that Ultimately Disposed Plaintiff of her Homestead.**

Movant's sole case on this issue, *Corbett v. Beneficial Ohio Inc*., 2012 WL 871226 (S.D. Ohio Mar 14, 2012) is easily distinguished**.** The *Corbett* Plaintiff, unlike Coursen, was successful in vacating the state court judgment before suffering the loss of property by virtue of a process infected with fraud. *Id*. At *8.

**VIII. Rooker Feldman is Inapplicable to this Case Because Coursen has Brought a Collateral Attack on the State Court Judgment Based Upon Allegations of Extrinsic Fraud**

*Rooker-Feldman* does not bar claims asserting that state-court judgments had been obtained by extrinsic fraud. *Kougasian v. TMSL, Inc.,* 359 F.3d 1136 (9th Cir. 2004). Coursen brought this case pursuant to Fla.R.Civ.P. 1.540 (b) (6) which provides for vacation of a judgment that is the product of extrinsic fraud.

**IIX & IX Plaintiff's First Amended Complaint sufficiently Alleges FIS's Liability from 2004 through 2008 because it pleads facts that support the allegations that FIS was a coconspirator and that FIS and the LPS Defendants are instrumentalities of each other and engaged in illegal conduct.**

Where a parent corporation is itself a direct participant in the acts giving rise to the cause of action there is no need to pierce the corporate veil between the parent corporation and its subsidiary corporation. *Rollins v. Heller,* 454 So.2d 580, 582 (Fla. 3d DCA 1984). Plaintiff has

alleged that all, or some, of the LPS defendants, including movant, employed the individuals, including defendant Dory Goebel, whose illegal acts proximately caused Plaintiff to suffer the loss of her homestead through a wrongful foreclosure. (Doc. 2, ¶16-18).

If the Court determines Plaintiffs allegations are insufficient as to movant direct liability, Plaintiff suggests that the FAC sufficiently pleads alternative theories of liability and a basis for the Court to pierce the corporate veil.   "Those who utilize the laws of this state in order to do business in the corporate form have every right to rely on the rules of law which protect them against personal liability unless it be shown that the corporation is formed or used for some illegal, fraudulent or other unjust purpose which justifies piercing the corporate veil." *Dania Jai-Alai Palace, Inc. v. Sykes,* 450 So.2d 1114, 1120-21 (Fla.1984).   The *Dania Jai-Alai* Court heard the matter on the basis of conflict jurisdiction.   The Court analyzed over half a century of "piercing the corporate veil" case law when it clarified the requisite elements and quashed the district courts holding "on this point" *Id.* at 1121. Allegations sufficient to pierce the corporate veil are:

> Generally, the rule is that the corporate veil will not be pierced absent a showing of improper conduct. *Dania Jai-Alai Palace, Inc. v. Sykes,* 450 So.2d 1114, 1121 (Fla.1984); *accord Steinhardt v. Banks,* 511 So.2d 336 (Fla. 4th DCA 1987). Under this standard, it must be shown that the corporation was organized or used to mislead creditors or to perpetrate a fraud upon them. *See id.* Three factors must be proven by a preponderance of the evidence:
>
> > (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation;
> >
> > (2) the corporate form must have been used fraudulently or for an improper purpose; and
> >
> > (3) the fraudulent or improper use of the corporate form caused injury to the claimant.
>
> *In re Hillsborough Holdings Corp.,* 166 B.R. 461, 468 (Bankr.M.D.Fla.1994)(citing *Dania Jai-Alai* ). Whether there has been improper conduct is a jury question. *Dania Jai-Alai.*

Plaintiff's First Amended Complaint[11] factual allegations giving rise to her various causes of action begin in 2003 and continue through 2012 (Doc 2, ¶18-42). In regard to the relationship between movant and the following entities, Plaintiff has alleged that:

- FNF is the parent company of Fidelity National Default Solutions[12] at all times material (Doc. 2, ¶ 11);

- FNF acquired Lender Processing Services a.k.a. Fidelity National Information Services, Inc. in 2003 and was its parent until 2008 (Doc. 2, ¶13);

- Lender Processing Services Default Solutions, Inc.[13] is a alter ego of LPS (Doc. 2, ¶14);

- DOCX is/was a wholly owned subsidiary of LPS and/or LPSDS )Doc. 2, ¶15);

- Dory Goebel is an employee of all, or some, of the aforesaid entities (Doc. 2, ¶16).

- At all times material hereto FNF and/or FND and/or FIS/ LPS and/or LPSDS and/or DOCX were instrumentalities of each other and they engaged in improper conduct by failing to:

  a.      Observe corporate formalities;
  b.      By commingling funds;
  c.      By commingling assets;
  d.      By failing to adequately capitalize;
  e.      By using either corporate form to avoid liability for the other;
  f.      By actively conspiring to defraud the Defendant of her homestead real property in violation of their Constitutional Rights.

  (Doc. 2, ¶17).

FIS completely ignores the factual allegations, including the exhibits to the FAC, that support Plaintiff's allegations that movant and the other LPS defendants are instrumentalities of each other, engaged in improper conduct, permitting the Court to "pierce the corporate veil". For ease

---

[11] "FAC"
[12] "FND"
[13] "LPSDS"

of reference, the chart below illustrates the corporate hierarchy of the LPS defendants[14].



The FAC factual allegations that satisfy the elements necessary to pierce the corporate veil identified by the *Dania Jai-Alai* Court*, supra*, are set forth sufficiently in the FAC. Factual allegations regarding movants  and the other LPS defendants, alleged business operations in furtherance of a common goal where the operation and goal are felonies in Florida are sufficiently alleged in the FAC and satisfy the *Dania –Jailai* elements as illustrated below.

Defendant, Dory Goebel, is alleged to be the manager of FIS Foreclosure Solutions, Inc. which is a division of FIS Default Solutions according to "The Summit" publication attached as Exhibits to the FAC. Ms. Goebel  is alleged to have violated Fla. Stat. § 817.54 and §831.06 in paragraph 18 (a) of the FAC by executing an Affidavit of Indebtedness as "AVP Washington Mutual Bank" on October 23, 2006 in 2006 foreclosure action (Doc. 2, ¶18(a)).

- Ms. Goebel is alleged to have oversight over non-party Christopher Fyhr as his manager who would have tasked him with notarizing the Assignment of Mortgage[15] identified in paragraph 18(d)(4) of the FAC. (Doc. 2, ¶18(d)(4));

---

[14]   The chart was constructed with reference to FNF, 2003-2008, and LPS, 2008-2012, 10-K filings with the Securities and Exchange Commission. Plaintiff requested that the Court take Judicial Notice of the SEC filings which the Court did at (Doc. 41, p. 8)
[15]   "AOM"

- Non-Parties[16], Eric Tate and Mark Cardenas, are alleged to be managers of the LPS entities in paragraphs 18(d)(5) and (6) of the FAC. Mr. Cardenas and Mr. Tate are alleged to have signed an AOM as officers of Washington Mutual Bank when in fact they worked for some or all of the LPS defendants when they signed the AOM located at instrument number 2006192115 in the Sarasota County, Florida Official Records. The factual basis for these allegations is found in paragraph 18(d)(4-6) in the FAC. (Doc. 2, ₱ 18(d)(4-6). These allegations if proven would violate Fla. Stat. § 817.54 and §831.06.

The Court has already found that Plaintiff's allegations that Defendants unlawful behavior evidenced an intent to defraud her through the use of sham document sand fabricated evidence caused her damages, specifically the loss of her homestead (Doc. 12, pages 6-7). The Court has also found that another LPS defendant, FNF, was sufficiently alleged to be an alter ego of the other LPS defendants in its Order (Doc. 41) denying FNF's Motion to Dismiss (Doc. 28) Plaintiff prays that the Court will find Plaintiff's allegations as to the movant in this regard to be sufficiently well-pled for purposes of this Rule 12(b)(6) motion to dismiss. Florida law provides for strict corporate liability for employees acts in certain situations "a corporation is criminally liable for the acts of an agent who has been vested with the authority to act on behalf of the corporation in the sphere of corporate business in which he commits the criminal act" *West Val. Estates, Inc. v. State* 286 So.2d 208 (Fla. 2d DCA 1973). Therefore, if the Plaintiff's allegations as indicated above are taken as true they would sufficiently allege liability of the entity that employed the actor. Plaintiff has provided factual allegations that any or all of the LPS defendants, including movant, are corporate doppelganger. Therefore, the FIS Motion to Dismiss should be denied on this basis.

### X.   Coursen's FDCPA and FCCPA Claims are not Barred by the Statute of Limitations because Defendants Fraudulently Concealed their Misconduct thereby Tolling the Statute of Limitations as to All Claims against All Defendants.

"Florida courts have held that the last element occurs, and thus the cause of action accrues, when the plaintiff knew, or through the exercise of due diligence should have known, of the invasion of . Coursen has alleged that she did not know the causes of action had accrued until April, 2011 (Doc 1, ¶79).

---

[16] Discovery is ongoing as to these individuals.

XI.    **Coursen has alleged that all Defendants' Sentient Scheme to Defraud her of her Homestead with Perjured, Fabricated evidence and Sham Pleadings caused her to lose her property thereby stating a *prima facie* claim for Civil Conspiracy.**

Coursen's FAC alleges sufficient facts to state a cause of action for conspiracy to defraud against *all* of Defendants. "A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or  to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to Plaintiff as a result of the acts done under the conspiracy." *Charles v Florida Foreclosure Placement Center, LLC* 988 So.2d 1157, 1159-1160 (Fla. 3d DCVA 2008).   Coursen alleged that the movant, either directly or indirectly, fabricated evidence for the purpose of inclusion in sham pleadings filed with the Court and fabricated AOMs for recording in the Official Property Records of Sarasota County, Florida to collect the alleged defaulted debt (Doc. 2 at 6-13).   If these  factual allegations are true then movant, and all Defendants, were acting unlawfully and with intent to defraud Coursen (Doc. 2 at 9).   Coursen alleged that the Defendants' actions caused her damages including the loss of her homestead, associated litigation costs and emotional damage (Doc. 2 at 23). Coursen prays that this Court also deny the Motion to Dismiss this Count.

XII.    **Plaintiff's Civil RICO claims States a Cause of Action because the FAC alleged Three Predicate Act Violations that Caused the loss of Her Homestead and that the Acts were the Product of all Defendants Common Goal.**

The  FAC alleges the RICO enterprise consists of all Defendants who are associated through the facts alleged in the FAC (Doc. 2 at 9).   Plaintiff alleged that their goal was to employ the U.S. Mail, Florida State Courts, and perjured and fabricated evidence, to divest her of her homestead. (Doc. 2 at 1-16).    Plaintiff alleged that the Defendants were the principals of, or participated in, the operation or management of the enterprise itself.   The pattern of racketeering activity includes at least two acts, the transmission through the use of the U.S. Mail of fake AOMs and fictitious corporate officer signatures, as stated in FAC at 6-12.   The alleged predicate statute violations standard of proof is "preponderance of the evidence". I*n re Mack*, 2008 WL 4790386 (Bankr. MD Fla. 2008) . The FAC allegations are sufficient for a conviction, beyond a reasonable doubt,  if the Defendants were charged with violating the charged predicate statutes because it is undisputed that the acts occurred. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 486-88, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); 18 U.S.C. § 1961 (defining racketeering activity to include conduct that is "chargeable" or "indictable" and "offenses" that are

"punishable" under various criminal statutes). Therefore, Coursen has alleged facts sufficient to support each of the statutory elements for the pleaded predicate acts. *See Central Distribs. of Beer, Inc. v. Conn,* 5 F.3d 181, 183-84 (6th Cir.1993), *cert. denied*, 512 U.S. 1207, 114 S.Ct. 2678, 129 L.Ed.2d 812 (1994).  Plaintiff's claims are not time barred because she was prevented from discovering that she was the victim of fraud by the Defendants' concealment of the alleged fraud.

WHEREFORE Coursen prays that this Honorable Court enter an Order denying FIS's Motion to Dismiss, or if it grants the Motion to Dismiss, allowing leave to amend.

S/Jacqulyn Mack
Jacqulyn Mack, Esquire
MACK LAW FIRM CHARTERED
2022 Placida Road
Englewood, Florida 34224-5304
(941) 475-7966
(941) 475-0729 facsimile
Jacqulyn@MackLawFirm.org
Florida Bar Number: 0134902
Attorney for Coursen

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court via the CM/ECF system on August 6, 2012.

s/ Jacqulyn Mack
Jacqulyn Mack, Esquire

16