UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELIZABETH H. COURSEN,

    Plaintiff,

v.                                                      CASE NO: 8:12-cv-690-T-26EAJ

JP MORGAN CHASE & CO., *et al.*,

    Defendants.
_____/

**O R D E R**

    **THIS CAUSE** comes before the Court on Defendant Fidelity National Information Services, Inc.'s ("FNIS") Motion to Dismiss Plaintiff's First Amended Complaint and Plaintiff's Response in Opposition.[1] FNIS moves to dismiss Plaintiff's First Amended Complaint, pursuant to Rule 12(b)(6), Federal Rule of Civil Procedure, on grounds that each of her claims fails to state a claim on which relief can be granted. After careful consideration of the parties' submissions, together with the well-pleaded allegations of Plaintiff's First Amended Complaint, the Court concludes the motion is due to be denied.

---

[1] See dockets 35 and 48.

**Background Facts & Allegations**

On or about September 27, 2001, Plaintiff, Elizabeth H. Coursen ("Plaintiff"), executed and delivered a promissory note (the "Note") and a mortgage (the "Mortgage") to North American Mortgage Company. Defendant Washington Mutual Bank ("WaMu") became the holder of the Note and Mortgage, as successor to North American Mortgage Company, and it assigned the Mortgage to Defendant Federal National Mortgage Corporation ("Fannie Mae") in 2003. Fannie Mae filed a complaint in the Twelfth Judicial Circuit Court in Sarasota County, Florida, seeking foreclosure of the Mortgage against Plaintiff on April 23, 2003, in the case of <u>Federal National Mortgage Association v. Elizabeth H. Coursen</u>, *et. al.*, Case No.: 2003-CA-005846 NC ("the 2003 Foreclosure Case"), which was eventually dismissed.

On or about October 31, 2006, Fannie Mae assigned the Mortgage back to WaMu as attorney-in-fact for Fannie Mae. WaMu determined that Plaintiff had defaulted on her loan payments in 2006, and as a result, filed a foreclosure action against Plaintiff on or about September 13, 2006, in the case of <u>Washington Mutual Bank v. Elizabeth H. Coursen, et. al.</u>, Case No.: 2006-CA-008521 NC ("the 2006 Foreclosure Case").

WaMu received a final judgment of foreclosure in the 2006 Foreclosure Case on or about November 27, 2006 ("the Final Judgment"). In the 2006 Foreclosure Case, WaMu filed the original Note, which reflected a blank endorsement. In 2008, Defendants JP Morgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively "Chase") acquired

WaMu and subsequently became holder of the Note and Mortgage. Following several failed attempts to settle the 2006 Foreclosure Case through loss mitigation efforts, and following several pleadings filed by Plaintiff in an attempt to remain in the property without making mortgage payments, the foreclosure sale was eventually rescheduled for November 14, 2011.

Plaintiff filed a Motion to Vacate Judgment on or about September 27, 2011. The state court denied the motion on October 24, 2011, for lack of jurisdiction. Plaintiff subsequently filed a Motion for Rehearing on or about November 3, 2011, which was denied. At the foreclosure sale on November 14, 2011, the subject property was sold to Chase. Plaintiff subsequently filed her Objection to Sale, not raising any irregularity in the sale or inadequacy of the sale price. In response, Chase filed a Motion to Strike the Objection to Sale, which was granted on March 6, 2012.

Plaintiff filed a Complaint solely against JP Morgan Chase & Co. in state circuit court on August 18, 2010, pursuant to Rule 1.540(b), Florida Rules of Civil Procedure, based upon allegations that Defendant lacked standing and committed fraud in pursuit of the foreclosure. On August 18, 2011, the Complaint was dismissed with leave to amend, for failure to state the fraud claims with particularity. On September 27, 2011, Plaintiff filed a motion to vacate judgment in the 2006 mortgage foreclosure, which was denied on October 24, 2011. She sought rehearing on November 3, 2011, and her motion was denied. The final sale of the property took place on November 4, 2011, and a certificate

of title was issued to Chase. Plaintiff filed an objection to the sale, which was struck on March 6, 2012, because the motion failed to raise any irregularity in the sale or inadequacy of the sale price.

Plaintiff then filed her First Amended Complaint on or about March 6, 2012, in which she seeks relief through five counts for violations of FDUTPA (Count I); violations of the FDCPA and the FCCPA (Count II); for civil conspiracy (Count III); for abuse of legal process (Count IV); for damages and declaratory relief under 18 U.S.C. § 1961, 18 U.S.C. § 1962(b), and 18 U.S.C. § 1964 (Count V). (Dkt. 2.) She added Defendants FNIS, JPMorgan Chase Bank, N.A., WaMu, Fannie Mae, Shapiro & Fishman, GP, Fidelity National Default Solutions ("FNDS"), Fidelity National Financial, Inc. ("FNF"), Inc., Lender Processing Services, Inc. ("LPS"), Lender Processing Services Default Solutions, Inc. ("LPSDS"), DocX, and Dory Goebel ("Goebel"), as Defendants. Defendants Chase, WaMu, and Fannie Mae removed the case to this Court on March 30, 2012. (Dkt. 1.)

### Standard for Dismissal

In determining whether to grant a Rule 12(b)(6) motion, the Court shall not dismiss a complaint if it includes "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (dismissing complaint because plaintiffs had not "nudged their claims across the line from conceivable to plausible"). The Court "must view the

complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." American United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1057 (11th Cir. 2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, (citations omitted), a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-65. To survive a motion to dismiss under Twombly, a complaint's factual allegations, if assumed to be true, "must be enough to raise the right to relief above the speculative level." Id. Plaintiff meets her burden under Twombly.

## Discussion

FNIS asserts that Plaintiff fails to sufficiently allege any liability on its part between 2004 and 2008. Plaintiff does, however, allege that FNIS, as well as FNF, FNDS, LPS, LPSDS, and DocX, employed the individuals whose illegal acts proximately caused her to suffer the loss of her homestead through a wrongful foreclosure. (Dkt. 2, ¶¶ 16-18.) Further, Plaintiff sets out the following allegations of FNF's vicarious liability and a basis for piercing the corporate veil:

-FNF is the parent company of FNDS at all times material. (Dkt. 2, ¶11.)

-FNF acquired LPS a/k/a FNIS in 2003, and was its parent until 2008. (Id. at ¶ 13.)

-LPSDS is an alter ego of LPS. (Id. at ¶ 14.)

-DocX is/was a wholly owned a subsidiary of LPS and/or LPSDS. (Id. at ¶ 15.)

-Defendant Dory Goebel ("Goebel") is an employee of all, or some, of the aforesaid entities. (Id. at ¶ 16.)

-Goebel violated Fla. Stat. § 817.54 and § 831.06 by executing an Affidavit of Indebtedness as "AVP Washington Mutual Bank" on October 23, 2006, in the 2006 foreclosure action. (Id. at ¶ 18(a).)

-At all times material hereto FNF and/or FNDS and/or FNIS/LPS and/or LPSDS and/or DocX were instrumentalities of each other and they engaged in improper conduct by failing to:

> a. Observe corporate formalities;
> b. By commingling funds;
> c. By commingling assets;
> d. By failing to adequately capitalize;
> e. By using either corporate form to avoid liability for the other;
> f. By actively conspiring to defraud Plaintiff of her homestead real property in violation of her constitutional rights.

(Id. at ¶ 17.)

Under Florida law, the corporate veil will only be pierced to prevent fraud or injustice. Eckhardt v. U.S., 463 F.App'x 852, 855 (11th Cir. 2012) (unpublished) (citing Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114, 1121 (Fla. 1984)). Piercing the corporate veil is proper if the corporation "is a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to

accomplish some fraud or illegal purpose." Eckhardt 463 F.App'x at 855 (quoting Aztec Motel, Inc. v. Faircloth, 251 So. 2d 849, 852 (Fla. 1971)). To pierce the corporate veil in Florida, a claimant must establish: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant. Eckhardt, 463 F.App'x at 855-56 (quoting Gasparini v. Pordomingo, 972 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 2008)).

Plaintiff's allegations sufficiently plead these factors for vicarious liability on the part of FNIS. The Court also takes judicial notice of the Securities and Exchange Commission filings that Plaintiff provided to support her allegations that the LPS Defendants[2] are instrumentalities of each other and to devise her flow chart demonstrating the corporate hierarchy of the LPS Defendants. (See Dkt. 40; Dkt. 39, p. 6.) Therefore, the First Amended Complaint, taken as true, sufficiently establishes FNIS as a proper Defendant for purposes of this Rule 12(b)(6) dismissal proceeding. Whether Plaintiff's allegations can be proven is a question of fact that must be determined after discovery.

FNIS also challenges Plaintiff's claim against it for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204(1)(2001),

---

[2] FNIS, FNDS, LPS, LPSDS and DocX are collectively referred to as "the LPS Defendants."

for failure to state a claim upon which relief may be granted. FDUTPA's purpose is to protect the consuming public and legitimate business enterprises from unlawful and deceptive acts. Fla. Stat. § 501.202(2). A claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. Virgilio v. Ryland Group, Inc., 680 F.3d 1329, 1338 n.25 (11th Cir. 2012) (quoting Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006)). A practice is unfair under FDUTPA if it "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. PNR, Inc. v. Beacon Prop. Mgmt., Inc., 842 So. 2d 773, 777 (Fla. 2003). Here, Plaintiff alleges that Defendants, including FNIS, violated FDUTPA by using fake identities and manufactured documents to deprive her of her homestead through foreclosure of a debt that was not in default[3] prior to inception of the foreclosure cases. (Dkt. 2, ¶¶ 16-19.) The First Amended Complaint alleges that FNIS's business of preparing forged documents using fictitious identities was an unfair and deceptive practice. (Id.) Plaintiff identifies FNIS and the other LPS Defendants as being directly or vicariously liable for the alleged fraudulent acts that caused her to lose her homestead. (Id. at ¶¶ 11-42.) Plaintiff's allegations are sufficient to withstand a Rule 12(b)(6) dismissal motion. She must be afforded the opportunity to prove the allegations through the discovery process.

---

[3] Plaintiff disputes defaulting on the note and mortgage and contends that the default was manufactured by WaMu.

FNIS further argues that Plaintiff fails to state a clam under the Fair Debt Collection Practices Act ("FDCPA") because FNIS was neither owed any part of the loan debt nor did it attempt to collect any money from Plaintiff on the loan in question. Notwithstanding, 15 U.S.C. §1692(a)(6) defines the term "debt collector" to include any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The Eleventh Circuit has recently clarified that mortgage foreclosure can be debt collection under the FDCPA. Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211 (11th Cir. 2012); Birster v. Am. Home Mortg. Servicing, Inc., 2012 WL 2913786 (11th Cir. Jul. 18, 2012). Plaintiff alleges that FNIS and its alter egos, the LPS Defendants, fabricated documents in furtherance of a conspiracy to unlawfully divest Plaintiff of her homestead. (Dkt. 2, ¶¶16, 18(a), 18(d)(1, 4-7), footnote 3.) She alleges that Goebel oversees a section of individuals who produce thousands of sworn affidavits a day for filing in state and federal litigation brought by FNF clients and several boilerplate documents used in the foreclosure of Plaintiff's home. (Id. at ¶ 16.) Furthermore, under 15 U.S.C. § 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Subparagraph (6) of that section specifically prohibits taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest. Consequently, this Court must find that Plaintiff's allegations present a

question of fact as to whether FNIS's activities violated the FDCPA, and she must be allowed the opportunity to establish those facts through the course of discovery.

Dismissal of Plaintiff's claim under the Florida Consumer Collection Practices Act ("FCCPA"), Chapter 559, Florida Statutes, is precluded as well, because she plainly alleges that Defendants, including FNIS, knew it did not have the legal right to collect the alleged debt and created manufactured evidence and sham pleadings to do so. (Dkt. 2, ¶¶ 18-19.) The FCCPA defines "debt collector" as "any person who uses any instrumentality of commerce within this state, whether initiated from within or outside this state, in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another...." Fla. Stat. § 559.55(6). Section 559.72, Florida Statutes, provides that "no person shall" do any of the 19 enumerated items, including collecting a debt which is not owed or is the result of a "manufactured default." FNIS does not cite any authority for the proposition that it does not fit within the scope of "person" as the term is used in § 559.72, but rather, merely states that mortgage foreclosure is not debt collection under the statute. Section 559.72(9) requires that Plaintiff must show that FNIS asserted a legal right that did not exist, with actual knowledge that the right did not exist. Plaintiff meets her burden. (See Dkt. 1-5, ¶¶ 1-4, Dkt. 1-33, ¶ 10, Dkt. 1-39, ¶ 42; Dkt. 2, ¶¶ 18-19.) For these reasons, Plaintiff's allegations in support of her FCCPA claim are sufficient to overcome a Rule 12(b)(6)

dismissal. Additionally, Plaintiff's FDCPA and FCCPA claims are not time-barred inasmuch as Plaintiff asserts that she was prevented from discovering that she was the victim of fraud by Defendants' concealment of the alleged fraud.

Plaintiff's civil conspiracy claim requires that she prove: (a) the existence of an agreement between two or more parties; (b) to do an unlawful act or to do a lawful act by unlawful means; (c) the doing of some overt act in pursuit of the conspiracy; and (d) damage to Plaintiff as a result of the acts done under the conspiracy. Olson v. Johnson, 961 So. 2d 356, 359 (Fla. Dist. Ct. App. 2007). A cause of action for abuse of process requires a showing of willful or intentional misuse of process for some wrongful or unlawful object, or ulterior purpose not intended by law. Peckins v. Kaye, 443 So. 2d 1025, 1026 (Fla. Dist. Ct. App. 1983) (citing Cline v. Flagler Sales Corp., 207 So. 2d 709 (Fla. Dist. Ct. App. 1968)). Plaintiff is able to overcome dismissal of her common law claims for civil conspiracy and abuse of process at this stage of the proceedings through her factual allegations that Defendants acted unlawfully, and in agreement, with the intent to defraud her through the use of sham documents and fabricated evidence, and that their actions caused her damages. (See Dkt. 2, ¶¶ 6-13 , 23.)

Plaintiff's civil RICO claim under 18 U.S.C. § 1962 alleges facts that, at least for purposes of a Rule 12(b)(6) dismissal motion, are adequate to support each of the statutory elements for the predicate acts that allegedly divested her of her homestead. See Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 949 (11th Cir.

1997) (holding that in order to survive a motion to dismiss, a plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts) (citing Central Distribs. of Beer, Inc. v. Conn, 5 F.3d 181, 183-84 (6th Cir. 1993)). Plaintiff alleges that Defendants unlawfully employed the United States mail, Florida state courts, and perjured and fabricated evidence to divest her of her homestead. (Dkt. 2, ¶¶ 1-16.) She alleges that Defendants were the principals of, or participated in, the operation or management of the enterprise itself and that the pattern of racketeering included at least two acts, transmission through the use of the mail of fake Assignments of Mortgage and fictitious corporate signatures. (Id. at ¶¶ 6-12.) Furthermore, Plaintiff's civil RICO claim is not time-barred inasmuch as Plaintiff asserts that she was prevented from discovering that she was the victim of fraud by Defendants' concealment of the alleged fraud.

Defendant erroneously claims that Plaintiff's claims are barred in their entirety for several reasons. FNIS maintains that this action is nothing more than an attack on the state court foreclosure judgement and, thus, is barred by the Rooker-Feldman Doctrine[4], which holds that United States federal courts other than the Supreme Court should not sit in direct review of state court decisions unless Congress has specifically authorized such relief. In short, federal courts other than the Supreme Court must not become a court of

---

[4] The doctrine evolved from the two United States Supreme Court cases from which its name is derived, Rooker v. Fid. Trust Co., 263 U.S. 416 (1923) and D.C. Ct. of App. v. Feldman, 460 U.S. 462 (1983).

appeals for state court decisions. However, as Plaintiff points out, Rooker-Feldman does not bar claims based upon allegations that a state-court judgment was obtained by extrinsic fraud. Kougasian v. TMSL, Inc., 359 F.3d 1136 (9th Cir. 2004). Plaintiff brought this case pursuant to Florida Rule of Civil Procedure 1.540(b)(6), which provides for vacation of a judgment that is the product of extrinsic fraud.

FNIS next contends that the Bankruptcy Code and Rules of Procedure bar Plaintiff's claims, which it alleges are based upon a proof of claim filed in her bankruptcy proceeding. However, Plaintiff points out that none of the LPS Defendants, including FNIS, were litigants in the 2008 bankruptcy, and they are not alleged to be the alter ego of JPMC. Plaintiff maintains that she did not even discover all the Defendants alleged misconduct until April, 2011, and could not have challenged the proof of claim in the earlier bankruptcy case. Plaintiff further contends that her allegations actually give rise to claims that arise outside of bankruptcy (i.e. sending letters to a debtor in violation of the automatic stay and debt collection activities in violation of a discharge injunction), thereby distinguishing her claims from those in In re Williams, 392 B.R. 882 (Bkrtcy.M.D.Fla. 2008).

Defendant also argues, relying on Corbett v. Beneficial Ohio, Inc., 2012 WL 871226 (S.D. Ohio Mar. 14, 2012), that Plaintiff cannot recover any damages related to the 2003 litigation inasmuch as that case was dismissed prior to the entry of any judgment against her. However, Plaintiff's claims appear to be distinguishable from those in

Corbett, at least at this early stage of these proceedings, because she was ultimately divested of her homestead. Lastly, Defendant urges that the litigation privilege bars Plaintiff's claims because the alleged illegal and improper conduct relates to Plaintiff's state court proceeding. Nevertheless, courts have found that the privilege does not necessarily attach every communication, but rather, the communication must be analyzed in light of its relation to the litigation. N. Star Capital Acquisitions, LLC v. Krig, 611 F. Supp. 2d 1324, 1331-32 (M.D. Fla. 2009); Ball v. D'Lites Enter., Inc., 65 So. 3d 637, 640 (Fla. Dist. Ct. App. 2011). That analysis cannot be made at this early stage in these proceedings.

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED**:

Defendant Fidelity National Information Services, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 35) is denied. Defendant shall file its answer and any defenses to the First Amended Complaint within ten (10) days of this Order.

**DONE AND ORDERED** at Tampa, Florida, on August 9, 2012.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

COPIES FURNISHED TO:
Counsel of Record