UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
(Tampa)

Case No. 12-CV-690-T-26-EAJ

ELIZABETH H. COURSEN,

 Plaintiff,

v.

JPMORGAN CHASE & CO., *et al.*,

 Defendants.
_____/

**DEFENDANT, SHAPIRO, FISHMAN & GACHÉ, LLP'S, MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Shapiro, Fishman & Gaché, LLP (the "Firm" or "SFG"), pursuant to Federal Rule of Civil Procedure 56(b), respectfully moves the Court for an order granting summary judgment in its favor, as to Plaintiff's claims against the Firm (civil conspiracy, civil RICO, abuse of process, and the Florida Consumer Collection Practices Act), on the grounds that there is no genuine issue as to any material fact and that the Firm is entitled to judgment as a matter of law. In support of this motion, SFG states:

**BACKGROUND**

Plaintiff, Elizabeth H. Coursen ("Coursen") filed this action *pro se* on August 18, 2010 in the Twelfth Judicial Circuit Court in and for Sarasota County, Florida against one defendant: "J.P. Morgan Chase, f/k/a Washington Mutual Bank." SFG's Statement of Undisputed Facts ("SFG Facts") ¶ 35. Coursen is a borrower whose mortgage loan obligation was owed to Washington Mutual Bank ("WAMU"). *See id.* at ¶ 2. On September 13, 2006, WAMU initiated foreclosure proceedings against Coursen ("2006 foreclosure case" or "2006 case"), alleging that

it owned and held the mortgage and promissory note. *Id.* at ¶ 5. The Firm represented WAMU. *Id.* at ¶ 6. Less than one month after the 2006 foreclosure suit was brought, Coursen filed an Answer in which she asserted, among other things, that WAMU "failed to offer written documentation that 'Washington Mutual Bank' is in fact the owner and holder of the subject note and mortgage." *Id.* at ¶ 8.

Not long after the 2006 foreclosure case began, in early November 2006, WAMU moved for summary judgment relying, in part, upon an affidavit executed by Dory Goebel in support of summary judgment ("Goebel Affidavit"). *Id.* at ¶ 11. Before the court entered the 2006 Final Summary Judgment of Foreclosure ("MSJ" or "2006 MSJ") in November 2006, Coursen did not serve any discovery or file any written opposition to WAMU's summary judgment motion. *Id.* at ¶ 14. Coursen attended the November 27, 2006 summary judgment hearing and argued to the court that she had not seen any documentation to show that WAMU owned the loan. *Id.* at ¶ 15. At the hearing, the Firm, as WAMU's counsel, gave the court the original promissory note, bearing a blank endorsement, as well as the original mortgage – those documents were filed with the court. *Id.* Coursen has never denied that she was in default of her mortgage loan or claimed she was confused as to who to send her mortgage payments. *See* Defendants' LPS Default Solutions, Inc. and Dory Goebel's ("LPS") Statement of Undisputed Facts ("LPS Facts") ¶ 15, SFG Facts ¶ 2. In fact, she testified that soon after she obtained the subject 2001 mortgage loan, she sent her mortgage payments to WAMU for years. SFG Facts ¶ 2.

The final summary judgment of foreclosure ("FSJ" or "2006 FSJ") was rendered by the court at the November 27, 2006 hearing. LPS Exhibit 6.[1] The FSJ set the foreclosure sale date for January 25, 2007. *Id.* Thus began Coursen's odyssey claiming fraud throughout, filing

---

[1] References to LPS' and the Firm's exhibits attached to their respective Statement of Undisputed Facts are referred to herein as "LPS Exhibit __" and "SFG Exhibit __," respectively.

2

untold motions, including multiple motions (both sworn and unsworn) asking the 2006 foreclosure court to set aside final judgment, requests for injunctions, bankruptcy proceedings (that require a foreclosure court to stay the proceeding), and objections, for the next four years in the 2006 foreclosure case to delay the execution of the 2006 FSJ – among them the foreclosure sale of the subject property.   The Firm's Statement of Undisputed Facts, which do not need to be repeated here, reveals that Coursen spent years trying to convince the 2006 foreclosure court that the foreclosure was fraudulent.  Apparently after finally giving up these efforts in the 2006 case after many years of litigation, she brought this lawsuit, raising the same issues and allegations, repeatedly brought before the 2006 foreclosure court, in an explicit attempt to get the property back and to now have this court set aside the 2006 FSJ.

In short, Coursen has chosen to file this lawsuit (and abuse the process for which such lawsuits were intended) in an attempt to again attack the final summary judgment of foreclosure entered in November 2006.  Coursen seeks to have this Court reconsider matters that were repeatedly heard, briefed, and ruled upon by the 2006 foreclosure court.

The Firm adopts and incorporates by reference, as if fully set forth herein, in their entirety, LPS' Motion for Summary and Memorandum of Law ("LPS Motion") and Statement of Undisputed Facts ("LPS Statement"). Nonetheless, the Firm will point out, at relevant times herein, which parts of LPS' Motion and Statement it is referencing.  At this junction, the Firm incorporates by reference LPS' Motion's Introduction at 1-4.

## MEMORANDUM OF LAW

I.   STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant "bears the initial responsibility of

3

informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper if the pleadings, depositions, affidavits, admissions, interrogatory answers and other materials in the record establish that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Pritchard v. Southern Co. Services*, 92 F. 3d 1130 (11th Cir. 1996). This Court may also consider matters of which it can take judicial notice such as matters of public record, including documents filed with this or Florida's state courts. FED. R. EVID. 201.

## II. ALL THE ACTIONS TAKEN BY THE FIRM ARE PROTECTED BY FLORIDA'S LITIGATION PRIVILEGE WHICH AFFORDS THE FIRM ABSOLUTE IMMUNITY

The Firm represented the plaintiff/lender, Washington Mutual Bank, in the 2006 foreclosure lawsuit. SFG Facts ¶ 6. Coursen's claims against the Firm are premised on her assertions that the Goebel Affidavit (*see, e.g.,* DE 2 at ¶ 18(a)) and the 2006 AOM (*see, e.g., id.* at ¶ 18(d)(4)) were fraudulent and were submitted to the state court in order to obtain final summary judgment for its client. The undisputed facts confirm that the conduct Coursen complains of, however, was related to actions the Firm took solely during the course of the 2006 lawsuit which related to that proceeding.

Coursen's claims against the Firm are therefore barred by the litigation privilege. Federal and Florida law both recognize absolute immunity from civil actions based upon an attorney's conduct in previous litigation. "[A]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding." *Echievarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 380-81 (Fla. 2007) (*quoting Levin, Middlebrooks. v. United States Fire Ins. Co.,* 639 So. 2d 606, 608 (Fla. 1994));

4

*accord Wright v. Yurko,* 446 So. 2d 1162, 1164 (Fla. 5th DCA 1984) ("Parties, witnesses and counsel are accorded absolute immunity as to civil liability with regard to what is said or written in the course of a lawsuit."); *Kinsey v. MLH Fin. Servs.*, 2013 U.S. App. LEXIS 3074 (unpublished) (11th Cir. Fla. Feb. 14, 2013).[2] The degree of falsity or maliciousness of the alleged statements is irrelevant. *Fla. Evergreen Foliage v. E.I. Du Pont De Nemours, Co.,* 135 F. Supp. 2d 1271, 1278 (S.D. Fla. 2001), *aff'd. sub nom, Green Leaf Nursery v. E.I. Dupont De Nemours,* 341 F.3d 1292 (11th Cir. 2003) (privilege not defeated by claim that defendant "gave untruthful testimony, submitted improper or obstructive motions, committed misconduct during the litigation or trial of a case, disobeyed orders or stipulations entered in a lawsuit, and took false litigation positions").

Although the Firm did not assert the litigation privilege as an affirmative defense, absolute immunity is more than a defense to liability. The essence of immunity from suit is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (U.S. 1985). The litigation privilege is intended to afford attorneys absolute immunity from their actions related to judicial proceedings. To allow Coursen to sue the Firm here, based on conduct occurring during the course of the state proceeding, would pile "litigation

---

[2] Federal law is in accord. *See, e.g., Trent v. Mortg. Elec. Registration Sys.,* 288 Fed. Appx. 571, 572 (11th Cir. 2008); *U.S. v. Pendergraft*, 297 F.3d 1198, 1207 (11th Cir. 2002); *Mastroianni v. Bowers*, 173 F.3d 1363, 1367 (11th Cir. 1999); *Williams v. Carney*, 157 Fed. Appx. 103, 107-08 (11th Cir. 2005); *Swindell v. Accredited Home Lenders*, 2010 U.S. Dist. LEXIS 132713 (M.D. Fla. Dec. 15, 2010), *aff'd,* 2011 U.S. App. LEXIS 19804 (11th Cir. Fla., Sept. 27, 2011) ("Errors committed in the course of litigation will not support a separate action for fraud. Such action is barred by the judicial and litigation privileges."); *Robb v. Rahi Real Estate Holdings,* 2011 U.S. Dist. LEXIS 55119 (S.D. Fla. May 23, 2011) (litigation privilege barred claims based on statements made in state court foreclosure action); *Huls v. Llabona*, 2010 U.S. Dist. LEXIS 55598 (M.D. Fla. June 7, 2010) (privilege precluded § 1983 claim based on alleged false testimony in earlier state court proceeding); *Miller v. Support Collection Unit Westchester Cnty.*, 2010 U.S. Dist. LEXIS 19818 (M.D. Fla. Mar. 5, 2010) (litigation privilege precluded claims premised on alleged misrepresentations "in affidavits and in testimony to the courts" in earlier proceedings); *Pack v. Unifund CCR Partners,* 2008 U.S. Dist. LEXIS 117481 (M.D. Fla. Mar. 13, 2008) ("[t]he litigation privilege applies not only to common-law causes of action but those initiated pursuant to statute"); *Valenti v. Unum Life Ins. Co. of Am.,* 2006 U.S. Dist. LEXIS 36880 (M.D. Fla. June 6, 2006) ("As the conduct upon which Plaintiff bases his complaint took place during litigation, the litigation privilege attaches and the conduct is not actionable").

on litigation without end." *Pendergraft*, 297 F.3d at 1207.  As this Court noted in dismissing fraud claims alleging a lender had engaged in misleading conduct during a state foreclosure proceeding,

> [f]raud inherent in the litigation process is considered fraud on the court. If Plaintiff can prove fraud on the court, her remedy lies in the state court, either in the form of a direct appeal of the proceedings or a timely action to set aside the final judgment. Relief does not lie in this Court.
>
> *Swindell*, 2010 U.S. Dist. LEXIS 132713 at *6.

Because it is undisputed that the Firm's acts complained of in this action occurred during and were related to the 2006 judicial proceeding, the litigation privilege applies to Coursen's claims against it.  *See Fernandez v. Haber & Ganguzza, LLP*, 30 So. 3d 644, 646 (Fla. 3d DCA 2010) (law firm's actions, including preparing and filing a Notice of Lis Pendens, were privileged because they occurred during the course of a judicial proceeding).  Thus, absolute immunity attaches to all the actions the Firm took during the course of the 2006 lawsuit which bore some relation to that proceeding.

### III. COURSEN IS COLLATERALLY ESTOPPED FROM RELITIGATING THE LEGALITY OF THE FORECLOSURE OF HER PROPERTY

Collateral estoppel or "issue preclusion" bars relitigation of a question or issue previously decided against a party who had "a 'full and fair opportunity' to litigate that issue in [an] earlier case." *Allen v. McCurry*, 449 U.S. 90, 94-95 (1980).

> For collateral estoppel to bar relitigation of an issue four criteria must be met: (1) the issue must be identical in the pending case to that decided in the earlier proceeding; (2) the issue must necessarily have been decided in the earlier proceeding; (3) the party to be estopped must have been a party or have been adequately represented by a party in the earlier proceeding; and (4) the issue must actually have been litigated in the first proceeding.
>
> *Montalbano v. Comm'r*, 307 Fed. Appx. 322, 323 (11th Cir. 2009) (unpublished) (citation omitted).

6

At its core, Coursen's First Amended Complaint seeks to overturn the state court's 2006 final summary judgment. In fact, Coursen avers in her First Amended Complaint that:

> Plaintiff is seeking an order from this Court, finding that the judgment of foreclosure was obtained in violation of her Constitutional rights; was obtained by means of fraud; and an order setting aside the judgment of foreclosure that was fraudulently obtained, and obtained in violation of the US and State Constitutional Rights of the Plaintiff including, but not limited to 5th and 14th Amendment Due Process and Constitutional Violations; and to set aside the judgment as an independent action as further authorized by Florida Statutes Florida Rule of Civil Procedure 1.540.

DE 2 ¶ 2.

During her deposition, Coursen testified that part of the relief she seeks in this lawsuit is to have this Court give her back the home which was foreclosed upon in the 2006 case. LPS Exhibit 29 at 54. Coursen also testified that all of her damages "stem from the fact that her home was wrongfully foreclosed upon." *Id.* at 56.

Further, Coursen alleges in her First Amended Complaint that

> she has suffered by reason of the attempts of the defendants, their associates, and co-conspirators, *to wrongfully eject her from her home* of more than a decade.[3] The activities of the defendants were, and are, unlawful racketeering activity and/or conspiracy that give rise to relief by virtue of causing harm to Plaintiff by actions committed *in their quest to procure the judgment in the foreclosure case.*

DE 2 at ¶ 1 (emphasis added). The "activities" referenced by Coursen in this paragraph of her First Amended Complaint are identical to those "activities" Coursen swore to, raised, litigated, and which were repeatedly ruled upon in the 2006 case, e.g., the use of the Goebel Affidavit in support of summary judgment and Coursen's allegations that Washington Mutual was not the proper party (or did not have "standing" or the right to enforce the note and foreclose the mortgage) based on, according to Coursen, the 2006 AOM. *See* LPS Exhibit 29 at 45-46.

---

[3] The only reason that Coursen kept her home "for over a decade" is because of the numerous post-foreclosure judgment motions and objections she filed to delay the foreclosure sale, to set aside the final foreclosure judgment and to object to the November 2011 foreclosure sale once it had been completed. Furthermore, it is undisputed that Coursen spent most of the decade living in her home for free. *See* LPS Exhibit 29 at 209.

7

Coursen also seeks to have this Court decide the very same issues that she repeatedly brought before the court in the 2006 foreclosure case – and were ruled upon. This Court is barred from deciding these same issues under the collateral estoppel or issue preclusion doctrine.

For example, the sworn attestations in her Verified Motion to Vacate Final Summary Judgment in the 2006 case (and ruled upon by that court) are quite literally identical to her allegations in this lawsuit – word for word. SFG Facts ¶ 49.

Even after the foreclosure sale finally took place nearly five years after the entry of the 2006 FSJ, Coursen filed an "Objection to November 14, 2011 Sale and Request [for] a Evidentiary Hearing based upon Fraud on the Court" ("Objection"). SFG Facts ¶ 56. The Objection again contained the *same allegations* made in her prior motions to vacate the 2006 MSJ and are now made here. *Id.*

Because the issues in this lawsuit are identical to those that Coursen repeatedly and previously litigated and were ruled upon in the 2006 case,[4] Coursen is collaterally estopped from relitigating the same issues in this suit.[5] The Firm incorporates by reference, as if fully set forth herein, LPS' Motion at 10-12.

### IV. THE FULL FAITH AND CREDIT ACT, 28 U.S.C. § 1738, REQUIRES THIS COURT GIVE THE SAME PRECLUSIVE EFFECT TO COURSEN'S ALLEGATIONS THAT CONSTITUTE INTRINSIC FRAUD, THAT WOULD BE GIVEN IN STATE COURT

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires this Court to give the same

---

[4] Although *res judicata* is generally an affirmative defense that must be plead, there are several exceptions to this general rule. First, this Court can consider the merits of *res judicata* (that include collateral estoppel) *sua sponte* when all relevant data and legal records are before the court and the demands of comity, continuity in the law, and essential justice mandate judicial invocation of the principles of *res judicata*." *Carbonell v. La. Dep't of Health & Human Res.*, 772 F.2d 185, 189 (5th Cir. 1985). Further, because Coursen has not been prejudiced by the Firm's failure to affirmatively plead the defense of collateral estoppel, this Court may consider it. *See United States v. Shanbaum,* 10 F.3d 305 (5th Cir. 1994) (if party raised affirmative defense at a pragmatically sufficient time and party opposing the defense was not prejudiced in its ability to respond, the court may hold that the defense is not waived); *Lucas v. United States,* 807 F.2d 414 (5th Cir. 1986) (failure to plead affirmative defense did not result in waiver when there is no prejudice to the respondent).

[5] Coursen's continued assertion of the same issues and arguments ironically constitutes an abuse of the judicial process.

preclusive effect to state court actions as Florida courts would. *Allen v. McCurry*, 449 U.S. 90, 97–99 (1980). Under Florida law, the use of allegedly fraudulent affidavits would constitute "intrinsic" fraud. *Parker v. Parker*, 950 So. 2d 388, 391 (Fla. 2007) (*quoting DeClair v. Yohanan*, 453 So. 2d 375, 377 (Fla. 1984), *superseded on other grounds by statute*, FLA. R. CIV. P. 1.540(b)); *Southeast Bank v. Almeida*, 693 So. 2d 1015, 1020 (Fla. 3d DCA 1997). "Intrinsic fraud" is "fraudulent conduct that arises within a proceeding and pertains to the issues in the case that have been tried *or could have been tried*." *Southeast Bank*, 693 So. 2d at 1019 (emphasis added). Florida law unambiguously requires claims of intrinsic fraud be brought in the same case in which the alleged fraud took place. Indeed, the court in the 2006 case considered the same issues, raised by Coursen in this suit that she characterized repeatedly as "intrinsic fraud" under Rule 1.540(b). As such, this Court is precluded from considering Coursen's claims and allegations based on submission of false documents in the 2006 foreclosure case.

## V. BACKGROUND OF FLORIDA FORECLOSURE LAW

Because Coursen's suit is based on several faulty premises, including the erroneous premise that "ownership" of a mortgage loan or note (however that may be defined) or an assignment of mortgage is relevant to a determination of who the proper party is to foreclose a mortgage (since Coursen's lawsuit is based upon her notion that false documents were prepared and filed so that the wrong party, i.e., Washington Mutual Bank had standing to foreclosed her mortgage), a brief discussion of Florida foreclosure law is required. As will be explained below, ownership and assignments of mortgage are entirely irrelevant to a determination as to who the proper party is to foreclose a mortgage. Thus, any documents relating to ownership or assignments of mortgage, *as a matter of law*, were unrelated and irrelevant to the state court's determination in the 2006 case that Washington Mutual Bank had the right to foreclose Coursen's mortgage.

The proper party, or the party who has what has been described as "standing" to foreclose a mortgage, is the party who has the right to enforce the promissory note for which the mortgage acts as collateral, a security, or a lien. In other words, a mortgage allows a lender to foreclose the mortgage and take title to the subject property should the borrower stop making payments due under the promissory note ("note").

The only relevant inquiry under Florida law as to whether a party has standing in a foreclosure suit is whether that party has the right to enforce the note under section 673.3011, Florida Statutes (2012) ("section 673.3011"). *See Riggs v. Aurora Loan Services,* 36 So. 3d 932 (Fla. 4th DCA 2010); *Harvey v. Deutsche Bank,* 69 So. 3d 300 (Fla. 4th DCA 2011); *Isaac v. Deutsche Bank,* 74 So. 3d 495, 496 (Fla. 4th DCA 2011). A party who possesses the original note bearing a blank endorsement is a "holder" of the note (under section 673.3011) and has "standing" to foreclose. *See Mers v. Azize*, 965 So. 2d 151, 153 (Fla. 2d DCA 2007); *Harvey*, 69 So. 3d at 304.

In this case, it is undisputed that the original note containing a blank endorsement was filed with the court in the 2006 case at the time the 2006 FSJ was rendered. *See* DE 2, p. 11 ¶ 30. Thus, under Florida law, Washington Mutual Bank had the right to enforce Coursen's note and had standing in the 2006 case, irrespective of any assignments of mortgage or documents related to "ownership."

Assignments of mortgage are therefore irrelevant to a determination of standing. In *Harvey*, the borrower alleged that the signatures on an assignment of mortgage were fraudulent. The Fourth District ruled:

> Here, because the note at issue is payable to AHMAI, and indorsed in blank, and because Deutsche possessed the original note and filed it with the circuit court, its standing may be established from its status as the note holder, ***regardless of any recorded assignments***. As to Harvey's argument regarding "questionable

signatures," although Harvey argued this point in her motion for reconsideration, she failed to present any evidence below to support her contention that the signatures were fraudulent. ***Even if Harvey could prove this, the dispute would be between AHMAI and Deutsche. Importantly, Harvey has never denied that she was in default as to her mortgage payments.***

*Harvey*, 69 So. 3d at 304 (emphasis added).

As this Court has recognized, the Florida statute governing the recording of assignments of mortgage is only applicable between competing creditors and is unrelated to whether a creditor has the right to foreclose a mortgage. See *Aum Shree of Tampa, LLC v. HSBC Bank USA, N.A.*, 2011 Bankr. LEXIS 1832, *18 (Bankr. M.D. Fla. May 18, 2011).

Ownership of an instrument is also irrelevant to a determination of standing in a foreclosure suit. *See MERS v. Revoredo*, 955 So. 2d 33, 34 (Fla. 3d DCA 2007) (it does not make any difference whether the Plaintiff was the "owner" or not). Section 673.3011 states that "A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument."

In short, any facts related to ownership or assignments of mortgage are not material to this case.

## VI. THE UNDISPUTED FACTS ESTABLISH THAT COURSEN'S CIVIL CONSPIRACY CLAIM FAILS AS A MATTER OF LAW

To state a claim for civil conspiracy, the Plaintiff must allege: (1) an agreement between two or more parties; (2) to perform an unlawful act; (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy. *Fla. Fern. Growers Ass'n, Inc. v. Concerned Citizens of Putman County,* 616 So. 2d 562, 565 (Fla. 2d DCA 1993).

Coursen has not and cannot establish a single fact regarding the nature and content of the alleged agreement between the Defendants, and offers no specific allegations regarding the scope

of the conspiracy or when the agreement was entered. Moreover, Count III is addressed to "all Defendants;" however, Coursen cannot possibly maintain that "all Defendants" agreed to commit a conspiracy. For example, Chase was not involved in any Assignment of Mortgage between Washington Mutual Bank and the Federal National Mortgage Association and was not a party to such transaction. She also cannot improperly lump all Defendants together in this conclusory and meritless claim, especially since some of the Defendants did not possess the mortgage and note at the time some of the allegedly improper acts occurred. Simply put, Coursen cannot properly maintain a cause of action for civil conspiracy as a matter of law.

Additionally, in March 2012, Coursen first named the Firm as a defendant and for the first time asserted all of her present causes of action. Coursen's suit essentially asserts that the Defendants created false or fraudulent documents in order to obtain the 2006 FSJ in November 2006. However, there is a four-year statute of limitations for civil conspiracy claims under Florida law. *See* § 95.11(3)(o), Fla. Stat. (2012). Because the alleged wrongful conduct took place before November 2006, Coursen's claim is untimely.

Finally, Coursen has sustained no damages as a result of the alleged conspiracy and her claim is barred by the statute of limitations. The Firm adopts and incorporates by reference sections I and III of LPS' Motion.

**VII.   THE UNDISPUTED FACTS DEMONSTRATE THAT COURSEN'S ABUSE OF PROCESS CLAIM FAILS AS A MATTER OF LAW**

As to Coursen's claim of abuse of process, such a claim requires the use of the criminal or civil legal process against another primarily to accomplish a purpose for which it was not designed. *Bothmann v. Harrington*, 458 So.2d 1163 (Fla. 3d DCA 1984); *see Cline v. Flagler Sales Corp.*, 207 So.2d 709 (Fla. 3d DCA 1968). For the cause of action to exist, there must be a use of the process for an immediate purpose other than that for which it was designed. There is

12

no abuse of process, however, when the process is used to accomplish the result for which it was created, regardless of an incidental or concurrent motive of spite or ulterior purpose. As noted in *Bothmann*, 458 So.2d at 1169, the usual case of abuse of process involves some form of extortion. *See Restatement (Second) of Torts* § 682, comment b (1977); W. Prosser, *Handbook of the Law of Torts* § 121 (4th ed. 1971).

Here, the undisputed facts confirm that the Firm used the legal process to represent a client in a state court foreclosure suit. Further, the submission of affidavits and documents in a foreclosure case does not constitute "process" or an abuse of process under Florida law. *See Huber v. GMAC Mortgage, LLC,* 2011 WL 6020410, *3 (M.D. Fla. Dec. 2, 2011); *See, e.g.*, *Antoine v. State Farm Mut. Auto. Ins.*, 662 F. Supp. 2d 1318, 1325 (M.D. Fla. 2009) ("The filing of an affidavit in state court by the Defendant cannot . . . constitute abuse of civil legal process without anything further.").[6] This is true even if the affidavits contain false statements. Numerous courts, applying similar state law principles, have rejected the notion that an abuse of process claim can be based on the theory of "injection of a lie into the judicial process." *Rauh v. Coyne,* 744 F. Supp. 1186, 1194 (D.D.C. 1990) ("Abuse of process, however, does not arise from a misrepresentation to the Court").[7]

Applying these principles, the District Court of Maine rejected a very similar abuse of process claim. There, the plaintiffs alleged abuse of process in "the filing of false certifications

---

[6] *See also Blatt v. Council Rock Taxpayers*, 1995 WL 567454, at *5 (E.D. Pa. 1995) (submission of affidavits "hardly amounts to actively seeking and employing legal process"); *Julien J. Studley v. Lefrak*, 376 N.Y.S.2d 200, 204–05 (N.Y. App. Div. 1975) ("The filing of … an affidavit, even for an ulterior purpose, does not, without more, constitute a legally sufficient claim for abuse of process."), *aff'd*, 362 N.E.2d 611 (N.Y. 1977).

[7] *See also Silver v. Kuehbeck*, 217 Fed. Appx. 18, 21 (2d Cir. 2007) (in cases involving allegedly false affidavits, "the falsity of the allegations and defendant's malicious motive in making them do not, of themselves, give rise to a cause of action for abuse of process where the process was both issued and used for its intended purpose"); *Wainwright v. Doria,* 1994 WL 178347, at *7-8 (N.D. Ill. May 9, 1994) ("The basis or motive for such proceedings, even the allegation that she knowingly presented perjured testimony in such a proceeding are insufficient to constitute abuse of process."); *Sage Int'l v. Cadillac Gage Co.,* 556 F. Supp. 381, 389 (E.D. Mich. 1982) ("the court's research has failed to reveal an instance in which an allegation that defendants induced perjured testimony has been held to satisfy the second element of an abuse-of-process claim.").

and affidavits in support of GMAC's motions for summary judgment in various Maine foreclosure proceedings." *Bradbury v. GMAC Mortg., LLC*, 780 F. Supp. 2d 108, 111 (D. Me. 2011). Expressing doubts that affidavits could constitute "process," *id.* at 111 & n.11, the court found that the use of allegedly false affidavits — even if they could be considered "process"— did not constitute an abuse of it:

> [The affidavits were] used to win the foreclosure lawsuits, and that is a proper use of such documents. If they were false (false documents and testimony are a deep concern to any judge or court), then the remedy is to seek to vacate the judgment that was obtained, not to start a new lawsuit alleging abuse of process. A contrary ruling would mean that the outcome of every lawsuit could produce a later lawsuit by the unhappy loser, seeking damages on account of the outcome of the former lawsuit and claiming that it resulted from false testimony or false affidavits.

*Id.* at 111 (footnotes omitted). *Cf.* Christine M.G. Davis, et al., FLA. JUR. 2D, Process § 6 (2011) ("Absolute immunity is afforded to any act occurring during the scope of a judicial proceeding and pursuant to court order, regardless of whether the act involves an alleged abuse of process, so long as the act has some relation to the proceeding").

Coursen does not allege, nor is there any factual support, that the affidavits were offered, or the foreclosure proceeding itself was initiated, for purposes other than those for which it was intended and designed. There is no allegation that the foreclosure proceeding was brought for any purpose other than to foreclose on Coursen's property. The purpose of the proceedings against Coursen was to enforce the note and the security interest of Washington Mutual Bank; the process in the 2006 case was used to accomplish the result for which it was created. After all, Coursen admitted that she was in default under her mortgage loan and admitted she stopped making mortgage payments before the 2006 case was filed. *See* LPS Exhibit 5, SFG Exhibit 1 at 3 ¶ 4, 5. The Goebel Affidavit was undisputedly submitted in an effort to prevail on summary judgment in the 2006 case.

Moreover, there is a four-year statute of limitations for abuse of process claims under

Florida law. *See* § 95.11(3)(p), Fla. Stat. (2012). Because the alleged wrongful conduct took place before November 2006, Coursen's claim is untimely.

Lastly, Coursen has not sustained any damages resulting from any of the Firm's alleged wrongful conduct. The Firm adopts and incorporates by reference sections I and III of LPS' Motion.

Consequently, this Court should grant the Firm's Motion for Summary Judgment with respect to Coursen's abuse of process claim.

## VIII. THE UNDISPUTED FACTS ESTABLISH THAT COURSEN'S CLAIM UNDER THE FLORIDA CONSUMER COLLECTION PRACTICES ACT FAILS AS A MATTER OF LAW

There is no evidence that the Firm violated the Florida Consumer Collection Practices Act that prohibits an entity from "[c]laim[ing], attempt[ing], or threat[ing] to enforce a debt . . . .[with] know[ledge] that the debt is not legitimate," § 559.72(9), Fla. Stat. (2012). Coursen indisputably failed to satisfy her outstanding debt to WAMU (she had repeatedly admitted that her mortgage loan was in default as far back as October 2006 in the Answer filed in the 2006 case, *see* LPS Exhibit 5) and the Firm is clearly authorized to prosecute foreclosure actions on behalf of its clients. Furthermore, for the reasons explained *supra*, WAMU had the right to enforce the Note.

Additionally, Coursen's claim is time-barred and she has not sustained any damages resulting from any of the Firm's alleged wrongful conduct. The Firm adopts and incorporates by reference sections I, II(B), and III of LPS' Motion.

## IX. THE UNDISPUTED FACTS FAIL TO SUPPORT COURSEN'S CLAIM UNDER RICO

The four central elements to any civil RICO claim are: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *See Williams v. Mohawk Indus., Inc.,* 465 F.3d

15

1277, 1282 (11th Cir. 2006). In addition, pursuant to 18 U.S.C. § 1964(c), in civil cases Coursen must also establish: (1) the requisite injury to "business or property" and (2) that such injury was "by reason of the substantive RICO violation." *Id.* at 1282-83.

To prevail under her 18 U.S.C. § 1962(b) claim against the Firm, Coursen must additionally show that her injuries were proximately caused by the Firm's gaining an interest in, or control of, the enterprise through a pattern of racketeering activity. *See Smart Sci. Labs., Inc. v. Promotional Mktg. Servs.*, 2008 U.S. Dist. LEXIS 118270 *20 (M.D. Fla. June 27, 2008); *Crowe v. Henry*, 43 F. 3d 198, 205 (5th Cir. 1995); *see also Danielsen v. Burnside-Ott Aviation Training Center*, 941 F. 2d 1220, 1231 (D.C. 1991) ("plaintiffs must allege an 'acquisition' injury, analogous to the 'use or investment injury' required under §1962(a) to show injury by reason of a §1962(b) violation").

Most circuits further expressly require the "acquisition or maintenance" injury be distinct from injury caused by the predicate acts. *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 447 (E.D.N.Y. 2007) ("[T]o state a claim under Section 1962(b), a plaintiff must allege that he suffered an injury resulting from the defendant's acquisition or maintenance of its interest (*i.e.*, an acquisition or maintenance injury'), as distinct from an injury caused by the predicate acts alone." (citations omitted)); *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1191 (3d Cir. 1993) ("[A] well-pled complaint under section 1962(b), just as with section 1962(a), requires the assertion of an injury independent from that caused by the pattern of racketeering.")

Coursen has never claimed, nor is there any factual support for the proposition, that she was injured as a result of the Firm's gaining an interest in, or control of, the enterprise through a pattern of racketeering activity or that her injury was independent of any alleged pattern of

racketeering. Coursen has failed to provide any description of the acquisition or maintenance of any interest in or control of the alleged enterprise and whether the Firm is the same entity liable both as the "person" and the "enterprise" under section 1962(b). Thus, her RICO claim must fail as a matter of law.

There are additional hurdles Coursen must overcome in order to assert a RICO claim against the Firm as well. In light of the fact that SFG is a law firm, Coursen has the further problem of establishing that the Firm was separate and distinct from the other alleged participants in the enterprise within the meaning of RICO jurisprudence. In order to establish an "enterprise," Coursen "must prove that each party to the enterprise is separate and distinct from the other." *Kelly v. Palmer, Reifler & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1378 (S.D. Fla. 2009). Where a law firm is an agent pursuing claims on behalf of its clients, it cannot be deemed an entity separate and distinct from the enterprise for RICO liability purposes. *Id.* at 1379 ("The Palmer Law Firm's tactics, even if deceptive or extortionate, were not separate and apart from its corporate client seeking to obtain a civil recovery from the Plaintiffs. They were and are, for RICO purposes, the same actors."). As such, as a law firm, the Firm cannot be sued for RICO violations based on the allegations presented by Coursen.

Coursen must also show a "pattern" -- i.e., that "(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (citations omitted). However, merely submitting a defective affidavit (or assignment) is not listed in 18 U.S.C. §

1961 and therefore does not constitute a RICO predicate act as a matter of law.[8]

Lastly, the statute of limitations bars this claim. Civil RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). A civil RICO claim accrues and the four-year limitations period begins to run "when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering." *Maiz v. Virani*, 253 F.3d 641, 676 (11th Cir. 2001) (citation omitted). Coursen relies upon the Affidavit and Assignments of Mortgage which she herself alleges were prepared in May of 2003 (assignment of mortgage), First Amended Complaint at ¶ 18(d)(1); in October of 2006 (assignment of mortgage), *Id.* at ¶ 18(d)(4); and November of 2006 (Goebel Affidavit) as the basis for her RICO claim. *Id.* at ¶ 36. Because Coursen's civil RICO claims accrued, at the latest, in November 2006, she needed to bring her RICO claims by November 2010 for them to be considered timely. Coursen did not assert her RICO claim, nor even name the Firm as a defendant, until March 2012 when she filed the First Amended Complaint. Coursen's civil RICO claim is, therefore, untimely.[9]

In sum, Coursen's RICO claim is wholly without merit and fails as a matter of law.

## X. COURSEN DID NOT SUSTAIN DAMAGES AND HER CLAIMS THEREFORE FAIL

The Firm adopts and incorporates by reference, as if fully set forth herein, Section III of

---

[8] It is noteworthy that because the First Amended Complaint lumps the Defendants together, Coursen cannot show how they conspired to commit overt acts in order to support her RICO conspiracy claim under 18 U.S.C. § 1962(b). Moreover, there are no allegations describing an agreement among the Defendants.

[9] Moreover, as a matter of law, the undisputed facts establish that Coursen did not utilize "reasonable diligence" in investigating the cause of her alleged injury. *Klehr v. AO Smith Corp.*, 521 U.S. 179, 194-195 (1997). Coursen devoted what seems like her life to delaying the foreclosure sale and setting forth any reason or basis she could present to the court to do so in the 2006 case from the moment the 2006 FSJ was rendered. Among other things, Coursen testified that she went to the courthouse to conduct research as to the "ownership" of the loan soon after the 2006 case was filed, LPS Exhibit 29 at 19-20 and questioned the signatures on the Goebel Affidavit and 2006 AOM when she read a *September 2006* newsletter that was available online. *See id.* at 47. There is no plausible explanation with her exhaustive efforts to delay the foreclosure and to aside the 2006 FSM why she could not find a September 2006 newsletter that was available online by 2010.

the LPS Motion at. 22-25.

## XI.   CONCLUSION

For all of the foregoing reasons, this Court should grant the Firm's Motion for Summary Judgment.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 31, 2013, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, who will provide electronic notification to:

Michele A. Cavallaro, Esq.
Fidelity National Title Group
6600 N. Andrews Avenue, Suite 300
Ft. Lauderdale, FL 33309
*Co-counsel for Fidelity National Financial, Inc.*

Mitchell W. Berger, Esq.
Michel O. Weisz, Esq.
Celine Alexander Funk, Esq.
Berger Singerman, LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
*Counsel for Defendants Fidelity National Financial Inc., Fidelity National Information Services, Inc., LPS Default Solutions, Inc. and Dory Goebel*

Jacqulyn Mack, Esq.
Kerry Mack, Esq.
Mack Law Firm Chartered
2022 Placida Road
Englewood, Florida 34224-5304
*Counsel for plaintiff*

SHAPIRO, FISHMAN & GACHE, LLP
*Counsel for Defendant Shapiro & Fishman*
2424 North Federal Highway, Suite 360
Boca Raton, FL  33431
561-287-5599 (phone)
561-287-5589 (fax)

By: /s/ Ronald M. Gaché, Esq
Ronald M. Gaché, Esq.
Florida Bar No. 699306
rgache@logs.com
Ileen J. Cantor, Esq.
Florida Bar No. 977128
icantor@logs.com