## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ELIZABETH H. COURSEN,

      Plaintiff,

v.                               CASE NO: 8:12-cv-690-T-26EAJ

JP MORGAN CHASE & CO., *et al.*,

      Defendants.

_____/

## **O R D E R**

**THIS CAUSE** comes before the Court on Defendant Shapiro, Fishman & Gache',

LLP's Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. 140)

with Statement of Undisputed Facts and exhibits (Dkt. 141).[1]  Plaintiff filed a sealed

response to the Motion (Dkt. 147) with exhibits (Dkt. 15, appendix), and a Statement of

Disputed Facts (Dkt. 152).

_____

[1] The Motion also adopts and incorporates Defendant LPS Default Solutions, Inc. and Dory Goebel's Motion for Summary Judgment and Statement of Undisputed Facts.

Plaintiff Elizabeth H. Coursen ("Coursen") sues Defendant Shapiro, Fishman & Gache', LLP ("SFG") in her Amended Complaint for violations of the Florida Consumer Collection Practices Act ("FCCPA") (Count II),  civil conspiracy (Count III), abuse of legal process (Count IV), and violations of federal civil RICO statutes, 18 U.S.C. §§ 1961, 1962(b) and 1964 (Count V)).  SFG now moves for the entry of final summary judgment on all of these claims pursuant to Rule 56(b), Federal Rules of Civil Procedure.

## Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c).  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) (citation omitted).  On a motion for summary judgment, the court must review the record, and all its inferences, in the light most favorable to the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  When measured against this standard, it is clear that SFG's Motion for Summary Judgment is due to be granted and that SFG is entitled to the entry of final judgment in its favor on all of Plaintiff's claims against it.[2]

## Case Background

On September 27, 2001, Coursen executed and delivered a promissory note (the "Note") and a mortgage (the "Mortgage") to North American Mortgage Company.  (See

---

[2]   SFG's Motion for Summary Judgment and Statement of Undisputed Facts are thorough and well-founded and, therefore, portions are adopted and incorporated herein.

Exhibit 7 to Defendants LPS Default Solutions, Inc. and Dory Goebel's sealed Statement of Undisputed Facts ("LPS Facts")).[3]  Coursen testified that soon after she obtained her 2001 mortgage loan, she made payments to Washington Mutual Bank ("WAMU") for years.  (LPS Ex. 29[4], p. 17.)  Coursen never questioned why she sent her mortgage payments to WAMU.  (Id.)  She does not recall ever sending her mortgage payments to any other entity.  (Id. at 18.)  On April 23, 2003, the Federal National Mortgage Association ("Fannie Mae") filed a foreclosure lawsuit (Case number 2003-CA-005846-NC in the Circuit Court of the Twelfth Judicial Circuit Court in and for Sarasota County, Florida) against Coursen ("2003 foreclosure case"), asserting its right to enforce the Note and arguing that Coursen had defaulted on her mortgage loan by failing to make the December 1, 2002 payment and any subsequent payments.  (See Dkt. 1-35, 8-9.)  Then, on October 21, 2003, the state court entered an order granting Fannie Mae's motion to dismiss the 2003 foreclosure suit because Coursen reinstated her mortgage loan by curing the default.  (Dkt. 2, p. 11 ¶ 31; LPS Ex. 21, p. 2, ¶ 12.)  Coursen does not know whether WAMU was the authorized servicer for Fannie Mae in 2003.  (LPS Ex. 29, p. 46.)

---

[3]  Citations to the sealed exhibits attached to the LPS Statement of Undisputed Facts will be referenced as "LPS Ex. ___."

[4]  LPS Exhibit 29 is the transcript of Coursen's deposition taken on January 29, 2013. The deposition was filed under seal because it contains information governed by the Protective Order entered in this case.  (See Dkts. 126, 137.)

Coursen defaulted on her loan payments again in 2006 (SFG Ex. 1, p. 3, ¶¶ 4, 5[5]; LPS Ex. 10) and, as a result, on September 13, 2006, WAMU filed a foreclosure action against her  in the case of Washington Mutual Bank v. Elizabeth H. Coursen, et. al., Case No.: 2006-CA-008521 NC ("2006 case" or "2006 foreclosure case), of which the Court takes judicial notice.  (Dkt. 1-38, pp. 1-25.)  The foreclosure Complaint alleged that WAMU owned and held the mortgage and promissory note.  (Id. at 2, ¶ 2.)  SFG represented the Plaintiff in the 2006 case.  (Dkt. 1-38, p. 4.)  Coursen went to the courthouse, after she was served with the 2006 foreclosure complaint, to research whether WAMU owned the loan, and she then prepared an Answer to the 2006 foreclosure complaint questioning WAMU's right to foreclose.  (LPS Ex. 29, pp. 19-20.)  On October 6, 2006, Coursen filed her Answer to the 2006 case Complaint ("Answer") wherein she asserted that WAMU "failed to offer written documentation that 'Washington Mutual Bank' is in fact the owner and holder of the subject note and mortgage," did not have the right to enforce the Note, and did not have standing.  (LPS Ex. 5, p. 3; Dkt. 1-38, pp. 33-36; Dkt. 1-33, p. 2, ¶ 8; Dkt. 1-35, p. 28; Dkt. 1-36, pp. 1-3 (Exhibit 8-A to Coursen's original complaint in this lawsuit).)  Nonetheless, Coursen recently testified that she "only recently [has] come to believe that Washington Mutual did not own my -- my note or mortgage."  (LPS Ex. 29, pp. 37-38.)  Her Answer did not raise any issues, allegations, or defenses related to the amount she owed on the mortgage loan.  (LPS Ex. 5.)

---

[5]  SFG's exhibits are attached to its Statement of Undisputed Fact, Dkt. 141.

An Assignment of Mortgage ("AOM"), prepared by SFG, executed on October 20, 2006, and recorded on October 31, 2006, assigned Coursen's mortgage to WAMU as attorney-in-fact for Fannie Mae ("2006 AOM").  (LPS Ex. 2.)  The 2006 AOM was not filed in the 2006 case nor used as summary judgment evidence in the 2006 case.  (See SFG Ex. 2.)  On November 6, 2006, WAMU filed and served a Motion for Summary Judgment with supporting affidavits, including an Affidavit in Support of Final Summary Judgment that was executed on October 23, 2006, by Dory Goebel, who worked for Defendant Fidelity National Foreclosure Solutions, Inc., an indirect subsidiary of Defendant Fidelity National Information Services, Inc., and who executed affidavits, with authorization, on behalf of WAMU ("Goebel Affidavit").  (LPS Exs. 3 & 4.)  SFG prepared the information that was contained in the Goebel Affidavit, (See Transcript of Deposition of Defendant Dory Goebel ("Goebel") previously filed under seal with the Court, p. 43.)  The unexecuted Goebel Affidavit would have been uploaded by SFG using the Default Solutions technology platform.  (Id. at 136.)  The affidavit would then be printed, signed, and notarized before returning it back to SFG.  (Id. at 111.)

The Goebel Affidavit averred that Coursen's mortgage loan had been in default since May 2006 and set forth the figures of the outstanding amount due on the mortgage loan, including the unpaid principal balance, unpaid interest, late charges (for late payments made before the 2006 case began -- entitled "pre-acceleration late charges"), and about $28.00 in charges for inspection.  (LPS Ex. 3.)  Coursen did not file any

-5-

documents opposing summary judgment in the 2006 foreclosure case before the November 27, 2006, hearing on the motion for summary judgment. (SFG Ex. 2.) She also did not engage in any discovery, including requesting any documents from WAMU. (See id.) Coursen never provided the court in the 2006 case with any written documents that contained contrary or alternative figures to what she believed were the outstanding amounts due on her loan. (See id.)

On November 27, 2006, Coursen attended the hearing on WAMU's Motion for Summary Judgment in the 2006 case, (Dkt. 1-33, p. 4, ¶ 13; Dkt. 1-5, p. 2 ¶ 4; LPS Ex. 29, p. 27.) At the hearing, WAMU's counsel, who had physical possession of the original note and mortgage on behalf of WAMU, provided and filed with the court the original Note and Mortgage. (Dkt. 2, p. 12, ¶ 38.) The original Note bore a blank endorsement executed by the entity to which the note had previously been specifically endorsed. (See LPS Ex. 7, p. 4; Dkt. 2, p. 11, ¶ 30.) Coursen argued at the hearing that she had not "seen any documentation to -- to show that Washington Mutual -- had ownership of the loan...." (LPS Ex. 29, p. 28.) Coursen does not recall that there was any argument at the summary judgment hearing by WAMU that it had the right to enforce based on an assignment of mortgage. (Id. at 40.) At the hearing, Coursen did assert that she had been told by a WAMU representative that she would be eligible for a forbearance program. (Id. at 33.)

Coursen believes that WAMU was not the proper party to foreclose based upon the 2006 AOM that was executed and recorded after the 2006 case was filed. (Id. at 45-46.)

Her belief that the persons who signed the 2006 AOM were not authorized to do so is based on a newsletter called "The Summit" she found online. (Id. at 47.)  She testified she has no other basis for believing that the documents used in the 2006 case were falsified. (Id. at 47-48.)  Notwithstanding, Coursen testified that her allegations that Defendants committed fraud were based on her belief that Defendants "attempted to enforce a mortgage debt when they knew the right to foreclose did not exist." (Id. at 49. 18.)

The court rendered a final judgment against Coursen on November 27, 2006, which set the foreclosure sale date for January 25, 2007. (LPS Ex. 6; Dkt. 1-38, pp. 26-32.) Despite the fact that WAMU had obtained final judgment, and the corresponding right to sell the subject property, WAMU and then JPMorgan Chase ("Chase")[6] spent years working with Coursen in an attempt, among other things, to get her approved for a permanent loan modification, (see Dkt. 1-36, pp. 4-6, 10-11, 18-19; Dkt. 1-12, pp. 14-16); to offer her the alternative to complete a "short sale" of the property (see Dkt. 1-36, pp. 32, 34), all while forbearing on the right to sell the property at a foreclosure sale (see Dkt. 1-1, p. 4, ¶ 23).  After the November 2006 final judgment, Coursen filed at least seven motions to cancel sale in the 2006 case "due to 'loss mitigation' discussions between Coursen and WAMU." (Dkt. 1-1, p. 4 ¶ 23; SFG Ex. 2; LPS Ex. 29, pp. 65-66.)

---

[6]  About two years after final summary judgment had been entered, Chase acquired WAMU's assets, including its loans, on September 28, 2008. (See SFG Ex. 3.)

On October 6, 2008, the foreclosure sale was once again reset to take place on November 7, 2008.  (SFG Ex. 2.)  Then, on November 6, 2008 (the day before the foreclosure sale), Coursen faxed an Emergency Motion to Cancel the November 7, 2008, sale directly to the judge in the 2006 case.  (Dkt. 1-36, pp. 20-22; SFG Ex. 2.)  In Coursen's cover letter to the judge (Dkt. 1-36, p. 20), she stated that she would file for bankruptcy if the sale, set for the following day, was not cancelled.  The judge's judicial assistant in the 2006 case apparently emailed an SFG attorney to advise that Coursen had prepared an Emergency Motion to Cancel the Foreclosure Sale for the following morning and to obtain SFG's position on the matter.  SFG's attorney stated, in part, in an email in response to the judicial assistant's request that "My client placed the file on hold three times to attempt loss mitigation.  Defendant never complied.  Final judgment was entered 11/27/06 and there were holds due to opposition and attempts at loss mitigation.  There were multiple resets of the sale.  The last motion and order to reset was forwarded 9/25/08 and the sale was set for Nov 7."  (Dkt. 1-36, pp. 26-27.)  The judicial assistant advised SFG by email that the judge requested WAMU to file its objections with the court (and to file Coursen's faxed Emergency Motion).  Nonetheless, because Coursen was unable to obtain an order cancelling the November 7, 2008, sale, she filed a Chapter 13 Bankruptcy Petition (Case number 8-08-bk-17636-CPM in the United States Bankruptcy Court for the Middle District of Florida) ("bankruptcy case") (see LPS Composite Ex.

14), to avoid the impending foreclosure sale.  (Dkt. 1-36, p. 20 (Ex. 19 to Coursen's original Complaint); LPS Ex. 29, p. 114.)

Coursen's bankruptcy Petition, signed under penalty of perjury, named "Washington Mutual" as a creditor holding a secured claim described as a "First Mortgage."  (Bankruptcy Case, LPS Composite Ex. 14.)[7]  In the bankruptcy case, Coursen did not dispute that WAMU was the correct entity seeking to collect the money it was owed as a result of her failure to make mortgage payments since at least 2006.  (Dkt. 1-36, pp. 29, 31.)  On February 4, 2009, the bankruptcy case Trustee filed his second motion to dismiss the bankruptcy case because Coursen failed to make the requisite Chapter 13 plan payments.  (LPS Composite Ex. 15.)  On March 13, 2009, the bankruptcy court granted the Trustee's Motion to Dismiss the bankruptcy case.  (SFG Ex. 4.)  After the bankruptcy case was dismissed, the court in the 2006 case entered yet another order, on April 21, 2009, rescheduling the foreclosure sale to May 20, 2009.  (LPS Ex. 16.)  Once again, Coursen filed an emergency motion to cancel sale and, as a result, the May 20, 2009 sale was cancelled by court order on May 11, 2009.  (SFG Ex. 2.)

On July 23, 2009, in the 2006 case, Coursen filed a sworn "Motion for Hearing" (SFG Ex. 1) and on July 24, 2009, she filed a "Motion for Temporary Injunction" because she believed:

---

[7]   The Court takes judicial notice of Coursen's 2008 Bankruptcy Case.

that certain entities had conspired to have a scheme that I could not reasonably discover during times when certain defenses -- I could have availed myself of certain defenses.  There's certain things that happened that there's time limitation to in -- in terms of attacking a -- a summary judgment, and so I remember I read a case called United States versus Throckmorton, 18 -- I don't know -- 1886 something ancient,  And I read it, and I remember thinking to myself, that's exactly what happened to me. There was a scheme that couldn't be readily discovered, and Washington Mutual, I felt, worked with Shapiro and Fishman to extend the time that -- discussions were underway to resolve the situation so that certain defenses that I might have had early on had expired, and I thought that they did that on purpose, and I thought that they made it very difficult to discover what had actually happened.

(LPS Composite Ex. 17.)

In Coursen's July 23, 2009 "Motion for Hearing," she sought to set aside the 2006 foreclosure judgment expressly pursuant to Florida Rule of Civil Procedure 1.540(b) based on "both intrinsic and extrinsic fraud perpetuated [sic] by her mortgage company [WAMU] and that 'newly discovered evidence' reinforces her claim."  (SFG Ex. 1.) Coursen asserted that the final judgment was "procured by fraud."  (Id.)  She requested an evidentiary hearing.  (Id. at 1.)  Under penalty of perjury, Coursen made the following assertions:

> a.  In February 2006 her mortgage payments increased by $500.  (Id. at 3, ¶ 3.)[8]
>
> b.  Coursen defaulted on her mortgage loan when she failed to pay the June, July and August 2006 mortgage payments.  (Id. at ¶ 4, 5.)

---

[8]  Exhibit 22 to Coursen's original Complaint contains a February 2009 letter filed in the bankruptcy case in which she made a contrary assertion, specifically, that her mortgage payments increased by $1,000 -- from $2,000 to $3,000 "a couple of years ago."  (Dkt. 1-36, p. 31.)

c.  "Plaintiff's representatives . . . recommended that instead of worrying about the foreclosure action [Coursen] should turn her attention to gaining acceptance into the forbearance program, which would give [Coursen] several months worth of grace on her loan payments while simultaneously stopping any foreclosure activity.  Acceptance into forbearance, [Coursen] was led to believe, would nullify foreclosure."  (Id. at 4. ¶ 6.)

d.  "When told by [Coursen] that she planned to put her house on the market in October, 2006, the Plaintiff's representatives assured her that foreclosure would not affect her ability to sell her home."  (Id. at ¶ 8.)

e.  "Because of these assurances, [Coursen] did not fully defend herself in court . . . because of Coursen's own assumption that "aggressive questioning and demands for an accounting of her loan would imperil her acceptance into the forbearance program."  (Id. at ¶ 9.)

f.  Coursen alleged there was "newly discovered evidence" and "intrinsic fraud," citing to Florida Rule of Civil Procedure 1.540(b)(2).  (Id. at 6.)

g.  "In May 2009, the Plaintiff provided a 47-page 'mortgage audit' to the Defendant . . . ."  (Id. at 7, ¶ 9.)

h.  "The mortgage audit clearly shows," according to Coursen, that WAMU erroneously added amounts to her escrow "immediately prior to her default."  (Id. at 8, ¶ 14.)

Coursen has no written documentation to support her assertion that a foreclosure judgment was a condition of WAMU's forbearance program.  (LPS Ex. 29, p. 28.) Coursen alleges that WAMU made representations that a foreclosure judgment was a condition to the forbearance program, but any such representations were made solely by individuals at WAMU and not by anyone from SFG.  (LPS Ex. 29, p. 29.)

On July 6, 2010, a motion to reschedule the foreclosure sale was filed in the 2006 case.  (SFG Ex. 2.)  Then, on July 9, 2010, Coursen filed her second request for a

temporary injunction ("Request").  (SFG Ex. 6.)  In that Request, she stated "the

Defendant claims extrinsic and other fraud by the Plaintiff both against the Defendant and

the Court in securing its summary judgment and will be filing a lawsuit asserting such a

claim within 10 days. (Rule 1.540(b))."  (Id. at 1, ¶ 2.)  On July 20, 2010, the judge in the

2006 case set Coursen's Request for Temporary Injunction for hearing on August 18,

2010 at 11:00 a.m.  (SFG Ex. 5.)  On the morning of August 18, 2010, the court in the

2006 case denied Coursen's Request and reset the foreclosure sale to September 22, 2010.

(SFG Ex. 2.)  That same morning, Coursen filed this lawsuit ("2010 lawsuit") as an

independent action in state court solely against "J.P. Morgan Chase, f/k/a Washington

Mutual Bank."  (Dkt. 1-33, p. 1.)  The original complaint, among other things, raised

again her allegations of "extrinsic fraud" and "standing" issues in the 2006 case.  (Dkt. 1-

33, pp. 1-19.)  Coursen swore that the Complaint's assertions were true.  (Id. at 19.)  She

sought damages of "$423,000.00, this being the difference between the Plaintiff's listing

price of her home ($595,000.00) and the balance of the mortgage ($172,000.00)."  (Dkt.

1-33, p. 11.)  She does not know of any reason why she was unable to sell her home.

(LPS Ex. 29, p. 13, lines 19-24.)

On August 24, 2010, Coursen filed a Motion for a Temporary Injunction in the

2010 lawsuit to "stop[] the currently scheduled foreclosure sale . . . ." in the 2006 case.

(Dkt. 1-30.)  On September 10, 2010, in the 2010 lawsuit, she filed an "Affidavit in

Support of Plaintiff's Motion for Temporary Injunction," wherein she swore that in the

2010 lawsuit "that she was the victim of extrinsic fraud in Case #2006 CA008521 NC

[the 2006 case], and seeks relief from the foreclosure judgment which was the resolution

of that case." (Dkt. 1-5, p. 1.)  She sought "relief from judgment, pursuant to Rule

1.540(b)."  (Id. at 3.)  Then, on September 15, 2010, in the 2006 case, WAMU moved to

cancel the September 22, 2010, foreclosure sale and that motion was granted.  On

September 15, 2010, in the 2010 lawsuit, Coursen filed a motion to withdraw her August

24, 2010, Motion for Temporary Injunction because she stated the court in the 2006 case

cancelled the upcoming sale.  (Dkt. 1-16.)  On December 27, 2010, Chase moved to

dismiss Coursen's 2010 Complaint.  (Dkt. 1-37.)  On June 16, 2011, WAMU filed a

motion to reset the foreclosure sale in the 2006 case.  (LPS Ex. 19.)  In the 2010 lawsuit,

Chase agreed several times to continue the hearing on its Motion to Dismiss the 2010

Complaint so that Coursen could obtain counsel.  (Dkt. 1-12, pp. 1-2.)

On July 7, 2011, Coursen's present counsel entered an appearance in the 2010

lawsuit.  (Dkt. 1-18.)  In that same year, her present counsel would also go on to represent

Coursen in the 2006 case wherein Coursen continued to file, among other things, motions

to vacate final judgment.  (LPS Ex. 21.)  On July 28, 2011, the magistrate issued his

recommended order on Chase's motion to dismiss the 2010 complaint.  (Dkt. 1-27, pp. 3-

9.)  The magistrate's order found that Coursen failed to state claims based upon fraud and

that Coursen's claims based upon WAMU's "standing" in the 2006 case "is an

affirmative defense and should have been raised in the foreclosure action."  (Id. at 6.)

The magistrate recommended that the court in the 2010 lawsuit dismiss the complaint and give Coursen 30 days to amend it.  (Id. at 7.)  On August 18, 2011, the state court in the 2010 lawsuit entered an Order Adopting [the] Recommended Order.  (Id. at 1-2.)

On September 19, 2011, Coursen filed a Motion to Extend time to file Amended Complaint in the 2010 lawsuit.  (Dkt. 1-2.)  In the Motion, she expressly stated that "the Plaintiff is seeking to set aside a Final Judgment of Foreclosure in the case styled Washington Mutual Bank v. Coursen, Case # 2006-CA-008521, currently pending in this Court" and "the Plaintiff believes that the issues in this case would be more streamlined after the Motion to Vacate the Final Judgment of Foreclosure is heard by the Trial Court in the 2006 case.  Plaintiff will have the Motion to Vacate filed within the next 48 hours." (Dkt. 1-2.)  More than 48 hours later, on September 27, 2011, Coursen, no longer *pro se*, in the 2006 case filed another Verified Motion to Vacate Final Summary Judgment ("Motion to Vacate") under Florida Rule of Civil Procedure 1.540(b).  (LPS Ex. 21.)

Coursen testified that she does not know whether the information contained in the Goebel Affidavit is accurate.  (LPS Ex. 29, p. 45.)  She testified that she accepts everything contained in the Goebel Affidavit as true statements of fact.  (Id. at 82.) Although Coursen testified that she has no factual basis to dispute the amount listed as the unpaid principal balance in Goebel's Affidavit, (id. at 83, lines 18-20), she does not have a factual basis to dispute the accuracy of any of the itemized figures in the Goebel Affidavit, (id. at 85), and she does not believe she can hire any person to calculate the

figures in Goebel's Affidavit for her, (id. at 84-85), she later testified, during the same deposition, based on her belief that her payments improperly increased before the 2006 case was filed, that the figures in the Goebel Affidavit might not be accurate.  (Id. at 281.) Coursen is unable to identify any facts supporting her belief that her payments were improperly increased in 2006.  (Id. at 283.)

Coursen's sworn statements in the September 27, 2011, Verified Motion to Vacate Final Summary Judgment in the 2006 case are identical to many of the factual allegations in this lawsuit which are set forth in her First Amended Complaint.  For example, paragraphs 1 through 22 of the Verified Motion are identical to paragraphs 20 through 42 of Coursen's First Amended Complaint in this case.  The Motion to Vacate cited as authority a September 2006 newsletter called "The Summit" purportedly published by Fidelity National Foreclosure Solutions, Inc. (id. at 8 n. 10) -- the same newsletter cited to and attached to Coursen's First Amended Complaint in this 2010 lawsuit.  (See Dkt. 2-1.) On October 6, 2011, the court in the 2006 foreclosure case once again reset the foreclosure sale to November 14, 2011, nearly five years (to the day) after final summary judgment had been entered in the 2006 case.  (LPS Ex. 22.)

On October 24, 2011, the court in the 2006 case denied Coursen's Motion to Vacate.  (LPS Ex. 23.)   Then, on November 3, 2011, Coursen filed a "Motion for Rehearing of Motion to Vacate Judgment and/or Renewed Motion to Vacate Summary Final Judgment and to Cancel and/or Stay the Foreclosure Sale set for November 14,

2011" ("Motion for Rehearing"). (LPS Ex. 24.)  The Motion for Rehearing once again sought to set aside the final judgment under Rule 1.540(b) and also argued that the judgment was "void" due to lack of standing.  (Id.)  On November 14, 2011, the foreclosure sale finally took place in the 2006 case.  (SFG Ex. 2.)  On November 15, 2011, the court denied Coursen's November 3, 2011, Motion for Rehearing in the 2006 case.  (LPS Ex. 25.)  On November 23, 2011, Coursen filed an "Objection to November 14, 2011 Sale and Request a Evidentiary Hearing based upon Fraud on the Court" ("Objection") in the 2006 case.  (LPS Ex. 26.)  This document repeated arguments based on standing and contained numerous allegations identical to the ones asserted in the First Amended Complaint in this case and to Coursen's September 27, 2011 Verified Motion to Vacate Final Judgment in the 2006 case that had been disposed of by the court in the 2006 case.  (LPS Exs. 21 & 26.)  On December 15, 2011, Coursen filed a Notice of Appeal in the 2006 case, appealing the October 24, 2011 Order denying her Verified Motion to Vacate Final Judgment and the November 15, 2011 Order denying her Motion for Rehearing.  (LPS Ex. 28.)

On January 6, 2012, the Second District Court of Appeal denied Coursen's Motion for Extension of time to file her Initial Brief.  (SFG Ex. 7.)  On January 13, 2012, Coursen filed a Notice of Voluntary Dismissal of her appellate case.  (Id.)  On March 6, 2012, Coursen filed a First Amended Complaint in the 2010 lawsuit.  (Dkt. 2.)  On March

27, 2012, the court in the 2006 case denied Coursen's "Objection to November 14, 2011 Sale and Request a Evidentiary Hearing based upon Fraud on the Court." (LPS Ex. 27.) On March 30, 2012, Defendant Chase removed the 2010 lawsuit to this federal court.

Coursen has not been able to identify any damages she has sustained as a result of the alleged wrongful conduct of the defendants in this lawsuit. (LPS Ex. 29, pp. 21-22.) As of January 29, 2013, Coursen could not say when she would compute the damages for this lawsuit filed in 2010. (Id. at 135.) She seeks return of the home that was foreclosed in 2006. (Id. at 54.) According to Coursen, when somebody at WAMU told her that a fax machine was not working, after Coursen faxed documents, this was fraudulent behavior because the WAMU representative did not check to see if the fax machine was working before Coursen faxed the documents. (Id. at 63.) Coursen testified that her damages result from WAMU, then Chase, not trying "to get [her] back on track to re-instate the loan, to have . . . a good resolution to let [her] privately sell [her] house." (Id. at 64.) Her belief that WAMU was not the proper party to foreclose is based solely on the 2006 assignment of mortgage that was executed after the 2006 foreclosure suit began. (Id. at 45-46.) Coursen cannot identify any other proper party besides WAMU who would have been authorized to foreclose her mortgage. (Id.) Coursen does not know who owns the subject mortgage loan. (Id. at 204.)

Other than the 2006 assignment of mortgage and generalized allegations about WAMU's use of purported "robo-signers," Coursen has no other basis for her belief that

WAMU was not the proper party to foreclose in the 2006 lawsuit.  (Id. at 47.)  The basis

for her assertion that the persons who signed the 2006 assignment of mortgage, Eric Tate

and Mark Cardenas, were not authorized to do so an online newsletter called "The

Summit."  (Id.)  Although Coursen believes a party's standing is based upon an

assignment of mortgage, she testified that even if the 2006 AOM was executed *before* the

2006 case, she does not know whether WAMU would have been entitled to foreclose her

mortgage.  (Id. at 263.)  Out of the 60 months of payments due since 2006, Coursen

claimed she made 10 and admittedly was allowed to live in her home for at least six years

since the suit was filed.  (Id. at 209.)  She testified that her home was on the market from

2005 through 2008.  (Id. at 70, lines 19-20.)  Coursen testified she received two offers to

buy her home and that the first offer fell through because her "real estate agent was

concerned about [her] divorce . . . the buyers went away."  (Id. at 71-72.)  She testified

that WAMU agreed to postpone the foreclosure sale because she called WAMU and

stated she wanted more time to sell her house.  (Id. at 72.)  Coursen has no documents

showing that she made mortgage payments (id. at 145) and the documents she had

showing that she made any mortgage payments were stolen from her home in 2008 (id. at

147).  Although she testified that she never received an accounting on her mortgage loan

(id. at 246), in the Motion for Hearing she filed in the 2006 case in July 2009, she

asserted that WAMU provided her with a 47-page loan audit (SFG Ex. 1, p. 7, ¶ 9.)

# DISCUSSION

## Litigation Privilege

SFG represented the plaintiff/lender, WAMU in the 2006 foreclosure lawsuit.

(SFG Facts, ¶ 6.)  Coursen claims that the Goebel Affidavit and the 2006 AOM were

fraudulent and were submitted to the state court in order to obtain final summary

judgment for its client; however, the undisputed facts confirm that the conduct she

complains of was related to actions that SFG took solely during the course of the 2006

lawsuit which related to that proceeding.  Federal and Florida law both recognize absolute

immunity from civil actions based upon an attorney's conduct in previous litigation.

"[A]bsolute immunity must be afforded to any act occurring during the course of a

judicial proceeding, regardless of whether the act involves a defamatory statement or

other tortious behavior . . . so long as the act has some relation to the proceeding."

Kinsey v. MLH Fin. Servs., 2013 WL 536019, at *2 (11th Cir. 2013) (unpublished) (citing

Echievarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So. 2d 380, 383-84 (Fla.

2007) and Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United

States Fire Ins. Co., 639 So. 2d 606, 608 (Fla. 1994)). The essence of immunity from suit

is the entitlement not to stand trial or face the other burdens of litigation.  Mitchell v.

Forsyth, 472 U.S. 511, 526 (U.S. 1985).  The litigation privilege is intended to afford

attorneys absolute immunity from their actions related to judicial proceedings.  The Court

agrees with SFG that the litigation applies to protect it from Plaintiff's claims because to

allow Coursen to sue SFG here, based on conduct occurring during the course of the state proceeding in furtherance of litigation (not debt collection), would pile litigation on litigation without end.  Cf. U.S. v. Pendergraft, 297 F.3d 1198, 1207 (11th Cir. 2002).

## Issue Preclusion

Collateral estoppel or "issue preclusion," also applies in this case inasmuch as it bars relitigation of a question or issue previously decided against a party who had "a 'full and fair opportunity' to litigate that issue in [an] earlier case." Allen v. McCurry, 449 U.S. 90, 94-95 (1980).  For collateral estoppel to bar relitigation of an issue four criteria must be met:  (1) the issue must be identical in the pending case to that decided in the earlier proceeding; (2) the issue must necessarily have been decided in the earlier proceeding; (3) the party to be estopped must have been a party or have been adequately represented by a party in the earlier proceeding; and (4) the issue must actually have been litigated in the first proceeding.  Montalbano v. Comm'r, 307 F. App'x 322, 323 (11th Cir. 2009) (unpublished) (citing In re Raiford, 695 F.2d 521, 523 (11th Cir. 1983)).  Because all relevant data and legal records are before the court, the demands of comity, continuity in the law, and essential justice mandate judicial invocation of the principles of collateral estoppel here.  See Carbonell v. La. Dep't of Health & Human Res., 772 F.2d 185, 189 (5th Cir. 1985); see also Allen, 449 U.S. 90, 97-99 (1989) (holding that the Full Faith and Credit Act, 28 U.S.C. § 1738, requires this Court to give the same preclusive effect to state court actions as Florida courts would).

-20-

Coursen's First Amended Complaint seeks to overturn the state court's 2006 final

summary judgment.  She specifically states that:

> Plaintiff is seeking an order from this Court, finding that the judgment of
> foreclosure was obtained in violation of her Constitutional rights; was
> obtained by means of fraud; and an order setting aside the judgment of
> foreclosure that was fraudulently obtained, and obtained in violation of the
> US and State Constitutional Rights of the Plaintiff including, but not limited
> to 5th and 14th Amendment Due Process and Constitutional Violations; and
> to set aside the judgment as an independent action as further authorized by
> Florida Statutes Florida Rule of Civil Procedure 1.540.

(Dkt. 2, ¶ 2.)   During her deposition, Coursen testified that part of the relief she seeks in

this lawsuit is to have this Court give her back the home which was foreclosed upon in

the 2006 case.  (LPS Ex. 29, p. 54.)  She also testified that all of her damages "stem from

the fact that her home was wrongfully foreclosed upon."  (Id. at 56.)  Further, Coursen

alleges in her First Amended Complaint that:

> she has suffered by reason of the attempts of the defendants, their
> associates, and co-conspirators, to wrongfully eject her from her home of
> more than a decade.  The activities of the defendants were, and are,
> unlawful racketeering activity and/or conspiracy that give rise to relief by
> virtue of causing harm to Plaintiff by actions committed in their quest to
> procure the judgment in the foreclosure case.

(Dkt. 2, ¶ 1.)  The "activities" referenced by Coursen here are identical to those activities

that Coursen swore to, raised, litigated, and which were repeatedly ruled upon in the 2006

case, e.g., the use of the Goebel Affidavit in support of summary judgment and Coursen's

allegations that WAMU was not the proper party (or did not have "standing" or the right

to enforce the note and foreclose the mortgage) based on, according to Coursen, the 2006 AOM.  (See LPS Ex. 29, pp. 45-46.)

Coursen also seeks to have this Court decide the very same issues that she repeatedly brought before the court in the 2006 foreclosure case -- and were ruled upon. The sworn attestations in her Verified Motion to Vacate Final Summary Judgment in the 2006 case (and ruled upon by that court) are identical to her allegations in this lawsuit – word for word.  (SFG Facts, ¶ 49.)  Even after the foreclosure sale finally took place nearly five years after the entry of the 2006 FSJ, Coursen filed an "Objection to November 14, 2011 Sale and Request [for] a Evidentiary Hearing based upon Fraud on the Court"  ("Objection") (SFG Facts, ¶ 56.)  The Objection again contained the same allegations made in her prior motions to vacate the 2006 MSJ and are now made here. (Id.)  Because the issues in this lawsuit are identical to those that Coursen repeatedly and previously litigated and were ruled upon in the 2006 case, Coursen is collaterally estopped from relitigating the same issues in this suit and SFG is entitled to the entry of final judgment in its favor.

<u>Standing to Foreclose</u>

As SFG asserts, the only relevant inquiry under Florida law as to whether a party has standing in a foreclosure suit is whether that party has the right to enforce the note under section 673.3011, Florida Statutes (2012).  See <u>Harvey v. Deutsche Bank</u>, 69 So. 3d 300, 304 (Fla. Dist. Ct. App. 2011).  A party who possesses the original note bearing a

blank endorsement is a "holder" of the note (under section 673.3011) and has "standing" to foreclose.  See Mortgage Elec. Registration Sys., Inc. v. Azize, 965 So. 2d 151, 153 (Fla. Dist. Ct. App. 2007); Harvey, 69 So. 3d at 304.  In this case, it is undisputed that the original note containing a blank endorsement was filed with the court in the 2006 case at the time the 2006 FSJ was rendered.  (See Dkt. 2, p. 11, ¶ 30.)  Assignments of mortgage are irrelevant to a determination of standing.  See Harvey, 69 So. 3d at 304.

The  Florida statute governing the recording of assignments of mortgage is only applicable between competing creditors and is unrelated to whether a creditor has the right to foreclose a mortgage.  See Aum Shree of Tampa, LLC v. HSBC Bank USA, N.A., 449 B.R. 584, 592 (Bankr. M.D. Fla. 2011).  Ownership of an instrument is also irrelevant to a determination of standing in a foreclosure suit.  See Mortgage Elec. Registration Sys., Inc. v. Revoredo, 955 So. 2d 33, 34 (Fla. Dist. Ct. App. 2007) (holding that it does not make any difference whether the Plaintiff was the "owner" or not).  Section 673.3011, Florida Statutes, states that "a person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument."  Thus, under Florida law, WAMU had the right to enforce Coursen's note and had standing in the 2006 case, irrespective of any assignments of mortgage or documents related to "ownership."

## Civil Conspiracy

Coursen claims that all Defendants acted in a conspiracy to defraud her. To state a claim for civil conspiracy, the Plaintiff must allege: (1) an agreement between two or more parties; (2) to perform an unlawful act; (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy.  Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putman County, 616 So. 2d 562, 565 (Fla. Dist. Ct. App. 1993).  Coursen fails to establish a single fact regarding the nature and content of the alleged agreement between the Defendants, and offers no specific allegations regarding the scope of the conspiracy or when the agreement was entered.  Moreover, Count III is addressed to "all Defendants," yet there is no evidence that "all Defendants" agreed to commit a conspiracy.  Chase was not involved in any Assignment of Mortgage between WAMU and Fannie Mae and was not a party to such transaction. Coursen also cannot improperly lump all Defendants together in this conclusory and meritless claim, especially since some of the Defendants did not possess the mortgage and note at the time some of the allegedly improper acts occurred. Additionally, it was not until March 2012 that Coursen first named SFG as a defendant and for the first time asserted all of her present causes of action.  She claims in a conclusory fashion that the Defendants created false or fraudulent documents in order to obtain the 2006 final summary judgment in November 2006.  However, there is a four-year statute of limitations for civil conspiracy claims under Florida law.  See §

-24-

95.11(3)(o), Fla. Stat. (2012).  She does not allege any wrongful conduct occurring after

November 2006 and, therefore, her 2012 claim is not only meritless, it is untimely.

<u>Abuse of Process</u>

As to Coursen's claim of abuse of process, such a claim requires the use of the

criminal or civil legal process against another primarily to accomplish a purpose for

which it was not designed.  <u>Bothmann v. Harrington</u>, 458 So.2d 1163, 1169 (Fla. Dist. Ct.

App. 1984).  For the cause of action to exist, there must be a use of the process for an

immediate purpose other than that for which it was designed.  There is no abuse of

process, however, when the process is used to accomplish the result for which it was

created, regardless of an incidental or concurrent motive of spite or ulterior purpose.  As

noted in <u>Bothmann</u>, the usual case of abuse of process involves some form of extortion.

458 So.2d at 1169.

The undisputed facts of this case confirm that SFG used the legal process to

represent a client in a state court foreclosure suit.  Further, the submission of affidavits

and documents in a foreclosure case does not constitute "process" or an abuse of process

under Florida law.  <u>See</u> <u>Huber v. GMAC Mortgage, LLC</u>, 2011 WL 6020410, at *3 (M.D.

Fla. Dec. 2, 2011); <u>see also</u>, <u>Antoine v. State Farm Mut. Auto. Ins.</u>, 662 F. Supp. 2d 1318,

1325 (M.D. Fla. 2009) (holding that "the filing of an affidavit in state court by the

Defendant cannot . . . constitute abuse of civil legal process without anything further...").

This is true even if the affidavits contain false statements.  The notion that an abuse of

process claim can be based on the theory of "injection of a lie into the judicial process" has been rejected. Rauh v. Coyne, 744 F. Supp. 1186, 1194 (D.D.C. 1990) (finding that "abuse of process, however, does not arise from a misrepresentation to the Court).

Coursen does not allege, nor is there any factual support, that the affidavits were offered, or the foreclosure proceeding itself was initiated, for purposes other than those for which it was intended and designed. There is no allegation that the foreclosure proceeding was brought for any purpose other than to foreclose on Coursen's property. The purpose of the proceedings against Coursen was to enforce the note and the security interest of WAMU. Thus, the process in the 2006 case was used to accomplish the result for which it was created. After all, Coursen admitted that she was in default under her mortgage loan and admitted she stopped making mortgage payments before the 2006 case was filed. (See LPS Ex. 5, SFG Ex. 1, p. 3 ¶¶ 4, 5.) Furthermore, there is a four-year statute of limitations for abuse of process claims under Florida law. See § 95.11(3)(p), Fla. Stat. (2012). Because the alleged wrongful conduct took place before November 2006, Coursen's 2012 claim is not only unsupported by the evidence in this case, but it is untimely.

<u>Florida Consumer Collection Practices Act ("FCCPA") Violations</u>

There is no evidence whatsoever that SFG violated the Florida Consumer Collection Practices Act ("FCCPA") that prohibits an entity from "[c]laim[ing], attempt[ing], or threat[ing] to enforce a debt . . .[with] know[ledge] that the debt is not

legitimate." § 559.72(9), Fla. Stat. (2012).  It is beyond dispute that Coursen failed to

satisfy her outstanding debt to WAMU (she had repeatedly admitted that her mortgage

loan was in default as far back as October 2006 in the Answer filed in the 2006 case (see

LPS Ex. 5)) and SFG is clearly authorized to prosecute foreclosure actions on behalf of its

clients.  And, as previously discussed, WAMU had the right to enforce the Note.  The

evidence simply does not support Coursen's conclusory claims that Defendants

manufactured evidence and sham pleadings to recover on a debt that did not exist.

<u>RICO Violations</u>

Coursen alleges that all Defendants acted in an enterprise with the goal to employ

the United States mail service, Florida state courts, and perjured and fabricated evidence

to divest her of her homestead.  The four central elements to any civil RICO claim are:

(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity.  <u>See</u>

<u>Williams v. Mohawk Indus., Inc.</u>, 465 F.3d 1277, 1282 (11th Cir. 2006).  In addition,

pursuant to 18 U.S.C. § 1964(c), in civil cases Coursen must also establish: (1) the

requisite injury to "business or property" and (2) that such injury was "by reason of the

substantive RICO violation."  <u>Id.</u> at 1282-83.  To prevail under her 18 U.S.C. § 1962(b)

claim against the SFG, Coursen must also show that her injuries were proximately caused

by SFG.  <u>Crowe v. Henry</u>, 43 F. 3d 198, 205 (5th Cir. 1995); <u>see also</u> <u>Danielsen v.</u>

<u>Burnside-Ott Aviation Training Center</u>, 941 F. 2d 1220, 1231 (D.C. 1991) (finding that

"plaintiffs must allege an acquisition injury, analogous to the use or investment injury

required under section 1962(a) to show injury by reason of a section 1962(b) violation"").

Most circuits further require that the "acquisition or maintenance" injury be distinct from

injury caused by the predicate acts.  Gristede's Foods, Inc. v. Unkechauge Nation, 532 F.

Supp. 2d 439, 447 (E.D.N.Y. 2007) (holding that "to state a claim under Section 1962(b),

a plaintiff must allege that he suffered an injury resulting from the defendant's acquisition

or maintenance of its interest (*i.e.* "an acquisition or maintenance injury"), as distinct

from an injury caused by the predicate acts alone.") (citations omitted); Lightning Lube,

Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3rd Cir. 1993) (holding that "a well-pled

complaint under section 1962(b), just as with section 1962(a), requires the assertion of an

injury independent from that caused by the pattern of racketeering").

Coursen has never claimed, nor is there any factual support for the proposition,

that she was injured as a result of SFG's gaining an interest in, or control of, the

enterprise through a pattern of racketeering activity or that her injury was independent of

any alleged pattern of racketeering.  She fails to provide any description of the acquisition

or maintenance of any interest in or control of the alleged enterprise and whether SFG is

the same entity liable both as the "person and the enterprise" under § 1962(b). Thus, her

RICO claim must fail as a matter of law.

There are additional hurdles Coursen must overcome in order to assert a RICO

claim against SFG as well.  In light of the fact that SFG is a law firm, Coursen has the

further problem of establishing that SFG was separate and distinct from the other alleged

participants in the enterprise within the meaning of RICO jurisprudence.  In order to establish an "enterprise," Coursen "must prove that each party to the enterprise is separate and distinct from the other."  Kelly v. Palmer, Reifler & Assocs., P.A., 681 F. Supp. 2d 1356, 1378 (S.D. Fla. 2009).  Where a law firm is an agent pursuing claims on behalf of its clients, it cannot be deemed an entity separate and distinct from the enterprise for RICO liability purposes.  Id. at 1379 (holding that "the [Firm's] tactics, even if deceptive or extortionate, were not separate and apart from its corporate client seeking to obtain a civil recovery from the Plaintiffs.  They were and are, for RICO purposes, the same actors").  Therefore, as a law firm, SFG cannot be sued for RICO violations based on the allegations presented by Coursen.

Coursen must also show a "pattern" -- i.e. that "(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature."  Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1264 (11th Cir. 2004) (citations omitted).  However, merely submitting a defective affidavit (or assignment) is not listed in 18 U.S.C. § 1961 and, therefore, does not constitute a RICO predicate act as a matter of law.

Finally, the statute of limitations bars Coursen's civil RICO claim, as it is subject to a four-year statute of limitations.  Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156 (1987).  A civil RICO claim accrues and the four-year limitations

period begins to run "when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering." <u>Maiz v. Virani</u>, 253 F.3d 641, 676 (11th Cir. 2001) (citation omitted).  Coursen relies upon the Affidavit and Assignments of Mortgage which she herself alleges were prepared in May of 2003 (assignment of mortgage) (<u>see</u> First Amended Complaint, ¶ 18(d)(1)); in October of 2006 (assignment of mortgage) (<u>see id.</u> at ¶ 18(d)(4)). and November of 2006 (Goebel Affidavit) as the basis for her RICO claim (<u>see id.</u> at ¶ 36).  Because Coursen's civil RICO claims accrued, at the latest, in November 2006, she needed to bring her RICO claims by November 2010 for them to be considered timely.  Coursen did not assert her RICO claim, or even name SFG as a defendant, until March 2012 when she filed the First Amended Complaint.

## Damages

In each claim against SFG, Coursen requests damages, although she admits that she has no basis for calculating or computing damages, and that she does not know how she will quantify the damages she seeks in this lawsuit.  (Coursen Deposition, pp. 135-38.)  Because Coursen caused her foreclosure by defaulting on her mortgage, because the documents about which she complains did not cause her damage, and because she has not suffered any articulable damages, Defendant SFG is entitled to the entry of final judgment in its favor on Plaintiffs' claims against it.

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED**:

Defendant Shapiro, Fishman & Gache', LLP's Motion for Summary Judgment

(Dkt. 140) is **GRANTED**.  The Clerk is directed to enter final judgment in favor of

Defendant Shapiro, Fishman & Gache', LLP as to all of Plaintiff's claims against it.

**DONE AND ORDERED** at Tampa, Florida, on June 25, 2013.


_s/Richard A. Lazzara_
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**


COPIES FURNISHED TO:
Counsel of Record