**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


ELIZABETH H. COURSEN,

       Plaintiff,

v.                                   CASE NO: 8:12-cv-690-T-26EAJ

JP MORGAN CHASE & CO., *et al*.,

       Defendants.

_____/

**O R D E R**


      **THIS CAUSE** comes before the Court on three motions for summary judgment,

which are accompanied by supporting memoranda of law and exhibits, that were filed

under seal by Defendant Lender Processing Services, Inc., Defendants Fidelity National

Information Services, Inc., and Fidelity National Financial, Inc., and Defendants Lender

Processing Services Default Solutions, Inc., and Dory Goebel.[1]  Also before the Court are

Plaintiff's Response in opposition to each of these motions (Dkt. 151), with Statement of

Disputed Facts and exhibits (Dkts. 152-154).

---

     [1]   Defendants Fidelity National Information Services, Inc., Fidelity National Financial, Inc. and Lender Processing Services, Inc., also adopt and incorporate all arguments set forth in the motion for summary judgment filed by Defendants LPS Default Solutions, Inc., and Dory Goebel.

Plaintiff Elizabeth H. Coursen ("Coursen") sues Defendant Lender Processing Services, Inc. ("LPS"), Defendants Fidelity National Information Services, Inc. ("FNIS") and Fidelity National Financial, Inc. ("FNF"), and Defendants Lender Processing Services Default Solutions, Inc. ("LPSDS") and Dory Goebel ("Goebel") (collectively "Defendants") in her Amended Complaint for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), section 501.201, *et seq.*, Florida Statutes (Count I), violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a, *et seq.*, and the Florida Consumer Collection Practices Act ("FCCPA"), section 559.72, Florida Statutes (Count II), civil conspiracy (Count III), abuse of legal process (Count IV), and violations of federal civil RICO statutes, 18 U.S.C. §§ 1961, 1962(b) and 1964 (Count V). Defendants now move for the entry of final summary judgment on all of these claims pursuant to Rule 56(b), Federal Rules of Civil Procedure.

## Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) (citation omitted). On a motion for summary judgment, the court must review the record, and all its inferences, in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). When measured against this standard, it is clear that the three motions

for summary judgment are due to be granted and that these Defendants are entitled to the entry of final judgment in their favor on Coursen's claims against them.

## Case Background

On September 27, 2001, Coursen executed and delivered a promissory note (the "Note") and a mortgage (the "Mortgage") to North American Mortgage Company. (See Exhibit 7 to Defendants LPS Default Solutions, Inc. and Dory Goebel's sealed Statement of Undisputed Facts ("LPS Facts")).[2] Coursen testified that soon after she obtained her 2001 mortgage loan, she made payments to Washington Mutual Bank ("WAMU") for years. (LPS Ex. 29[3], p. 17.) Coursen never questioned why she sent her mortgage payments to WAMU. (Id.) She does not recall ever sending her mortgage payments to any other entity. (Id. at 18.) On April 23, 2003, the Federal National Mortgage Association ("Fannie Mae") filed a foreclosure lawsuit in the Twelfth Judicial Circuit Court in Sarasota County, Florida, against Coursen ("2003 foreclosure case"), asserting its right to enforce the Note and arguing that Coursen had defaulted on her mortgage loan by failing to make the December 1, 2002 payment and any subsequent payments. (See Dkt. 1-35, 8-9.) Then, on October 21, 2003, the state court entered an order granting Fannie Mae's motion to dismiss the 2003 foreclosure suit because Coursen reinstated her

---

[2] Citations to the sealed exhibits attached to the LPS Statement of Undisputed Facts will be referenced throughout this Order as "LPS Ex. ___."

[3] LPS Exhibit 29 is the transcript of Coursen's deposition taken on January 29, 2013. The deposition was filed under seal because it contains information governed by the Protective Order entered in this case. (See Dkts. 126, 137.)

mortgage loan by curing the default.  (Dkt. 2, p. 11 ¶ 31; LPS Ex. 21, p. 2, ¶ 12.)  Coursen

does not know whether WAMU was the authorized servicer for Fannie Mae in 2003.

(LPS Ex. 29, p. 46.)

Coursen defaulted on her loan payments again in 2006 (Dkt. 141, SFG Ex. 1, p. 3,

¶¶ 4, 5[4]; LPS Ex. 10) and, as a result, on September 13, 2006, WAMU filed a foreclosure

action against her  in the case of Washington Mutual Bank v. Elizabeth H. Coursen, et.

al., Case No.: 2006-CA-008521 NC ("2006 case" or "2006 foreclosure case), of which

the Court takes judicial notice.  (Dkt. 1-38, pp. 1-25.)  The foreclosure Complaint alleged

that  WAMU owned and held the mortgage and promissory note.  (Id. at 2, ¶ 2.)

Defendant Shapiro, Fishman & Gache', LLP ("SFG") represented WAMU in the 2006

case.  (Dkt. 1-38, p. 4.)  Coursen went to the courthouse, after she was served with the

2006 foreclosure complaint, to research whether WAMU owned the loan, and she then

prepared an Answer to the 2006 foreclosure complaint questioning WAMU's right to

foreclose.  (LPS Ex. 29, pp. 19-20.)  On October 6, 2006, Coursen filed her Answer to the

2006 case Complaint ("Answer") wherein she asserted that WAMU "failed to offer

written documentation that 'Washington Mutual Bank' is in fact the owner and holder of

the subject note and mortgage," did not have the right to enforce the Note, and did not

have standing.  (LPS Ex. 5, p. 3; Dkt. 1-38, pp. 33-36; Dkt. 1-33, p. 2, ¶ 8; Dkt. 1-35, p.

---

[4]   Defendant Shapiro, Fishman & Gache's exhibits, attached to its Statement of
Undisputed Facts, Dkt. 141, are a part of the record in this case.  The Court relied on them, in
large part, in granting that Defendant's Motion for Summary Judgment.  (See Dkt. 155.)

28; Dkt. 1-36, pp. 1-3 (Exhibit 8-A to Coursen's original complaint in this lawsuit).)

Nonetheless, Coursen recently testified that she "only recently [has] come to believe that

Washington Mutual did not own my -- my note or mortgage."  (LPS Ex. 29, pp. 37-38.)

Her Answer did not raise any issues, allegations, or defenses related to the amount she

owed on the mortgage loan.  (LPS Ex. 5.)

   An Assignment of Mortgage ("AOM") executed on October 20, 2006, and

recorded on October 31, 2006, assigned Coursen's mortgage to WAMU as attorney-in-

fact for Fannie Mae ("2006 AOM").  (LPS Ex. 2.)  The AOM was executed under a

Power of Attorney from WAMU to the predecessor-in-interest of Defendant LPSDS.

(LPS Ex. 3.)  The 2006 AOM was not filed in the 2006 case nor used as summary

judgment evidence in the 2006 case.  (See SFG Ex. 2.)  On November 6, 2006, WAMU

filed and served a Motion for Summary Judgment with supporting affidavits, including an

Affidavit in Support of Final Summary Judgment that was executed on October 23, 2006,

by Defendant Goebel, who worked for Fidelity National Foreclosure Solutions, an

indirect subsidiary of Defendant FNIS, and who executed affidavits on behalf of WAMU

pursuant to a Power of Attorney ("Goebel Affidavit").  (LPS Exs. 3 & 4.)  Defendant

Shapiro, Fishman & Gache', LLP prepared the information that was contained in the

Goebel Affidavit, (See Transcript of Deposition of Defendant Dory Goebel ("Goebel")

previously filed under seal with the Court (Dkt. 90), p. 43.)  The unexecuted Goebel

Affidavit would have been uploaded by SFG using the Default Solutions technology

platform.  (Id. at 136.)  The affidavit would then be printed, signed, and notarized before returning it back to SFG.  (Id. at 111.)

The Goebel Affidavit averred that Coursen's mortgage loan had been in default since May 2006 and set forth the figures of the outstanding amount due on the mortgage loan, including the unpaid principal balance, unpaid interest, late charges (for late payments made before the 2006 case began -- entitled "pre-acceleration late charges"), and about $28.00 in charges for inspection.  (LPS Ex. 3.)  Coursen did not file any documents opposing summary judgment in the 2006 foreclosure case before the November 27, 2006, hearing on the motion for summary judgment.  (SFG Ex. 2.)  She also did not engage in any discovery, including requesting any documents from WAMU.  (See id.)  Coursen never provided the court in the 2006 case with any written documents that contained contrary or alternative figures to what she believed were the outstanding amounts due on her loan.  (See id.)

On November 27, 2006, Coursen attended the hearing on WAMU's Motion for Summary Judgment in the 2006 case, (Dkt. 1-33, p. 4, ¶ 13; Dkt. 1-5, p. 2 ¶ 4; LPS Ex. 29, p. 27.)  At the hearing, WAMU's counsel, who had physical possession of the original note and mortgage on behalf of WAMU, provided and filed with the court the original Note and Mortgage.  (Dkt. 2, p. 12, ¶ 38.)  The original Note bore a blank endorsement executed by the entity to which the note had previously been specifically endorsed.  (See LPS Ex. 7, p. 4; Dkt. 2, p. 11, ¶ 30.)  Coursen argued at the hearing that she had not "seen

any documentation to -- to show that Washington Mutual -- had ownership of the loan...."
(LPS Ex. 29, p. 28.)  Coursen does not recall that there was any argument at the summary
judgment hearing by WAMU that it had the right to enforce based on an assignment of
mortgage.  (Id. at 40.)  At the hearing, Coursen did assert that she had been told by a
WAMU representative that she would be eligible for a forbearance program.  (Id. at 33.)

Coursen believes that WAMU was not the proper party to foreclose based upon the
2006 AOM that was executed and recorded after the 2006 case was filed.  (Id. at 45-46.)
Her belief that the persons who signed the 2006 AOM were not authorized to do so is
based on a newsletter called "The Summit" she found online.  (Id. at 47.)  She testified
she has no other basis for believing that the documents used in the 2006 case were
falsified.  (Id. at 47-48.)  Notwithstanding, Coursen testified that her allegations that
Defendants committed fraud were based on her belief that Defendants "attempted to
enforce a mortgage debt when they knew the right to foreclose did not exist."  (Id. at 49.
18.)

The court rendered a final judgment against Coursen on November 27, 2006,
which set the foreclosure sale date for January 25, 2007.  (LPS Ex. 6; Dkt. 1-38, pp. 26-
32.) Despite the fact that WAMU had obtained final judgment, and the corresponding
right to sell the subject property, WAMU and then JPMorgan Chase ("Chase")[5] spent
years working with Coursen in an attempt, among other things, to get her approved for a

---

[5]    About two years after final summary judgment had been entered, Chase acquired
WAMU's assets, including its loans, on September 28, 2008.  (See SFG Ex. 3.)

permanent loan modification, (see Dkt. 1-36, pp. 4-6, 10-11, 18-19; Dkt. 1-12, pp. 14-16); to offer her the alternative to complete a "short sale" of the property (see Dkt. 1-36, pp. 32, 34), all while forbearing on the right to sell the property at a foreclosure sale (see Dkt. 1-1, p. 4, ¶ 23).  After the November 2006 final judgment, Coursen filed at least seven motions to cancel sale in the 2006 case "due to 'loss mitigation' discussions between Coursen and WAMU."  (Dkt. 1-1, p. 4 ¶ 23; SFG Ex. 2; LPS Ex. 29, pp. 65-66.)

On October 6, 2008, the foreclosure sale was once again reset to take place on November 7, 2008.  (SFG Ex. 2.)  Then, on November 6, 2008 (the day before the foreclosure sale), Coursen faxed an Emergency Motion to Cancel the November 7, 2008, sale directly to the judge in the 2006 case.  (Dkt. 1-36, pp. 20-22; SFG Ex. 2.)  In Coursen's cover letter to the judge (Dkt. 1-36, p. 20), she stated that she would file for bankruptcy if the sale, set for the following day, was not cancelled.  The judge's judicial assistant in the 2006 case apparently emailed an SFG attorney to advise that Coursen had prepared an Emergency Motion to Cancel the Foreclosure Sale for the following morning and to obtain SFG's position on the matter.  SFG's attorney stated, in part, in an email in response to the judicial assistant's request that "My client placed the file on hold three times to attempt loss mitigation.  Defendant never complied.  Final judgment was entered 11/27/06 and there were holds due to opposition and attempts at loss mitigation.  There were multiple resets of the sale.  The last motion and order to reset was forwarded 9/25/08 and the sale was set for Nov 7."  (Dkt. 1-36, pp. 26-27.)  The judicial assistant

advised SFG by email that the judge requested WAMU to file its objections with the court (and to file Coursen's faxed Emergency Motion).   Nonetheless, because Coursen was unable to obtain an order cancelling the November 7, 2008, sale, she filed a Chapter 13 Bankruptcy Petition (Case number 8-08-bk-17636-CPM in the United States Bankruptcy Court for the Middle District of Florida) ("bankruptcy case") (see LPS Composite Ex. 14), to avoid the impending foreclosure sale.  (Dkt. 1-36, p. 20 (Ex. 19 to Coursen's original Complaint); LPS Ex. 29, p. 114.)

Coursen's bankruptcy Petition, signed under penalty of perjury, named "Washington Mutual" as a creditor holding a secured claim described as a "First Mortgage." (Bankruptcy Case, LPS Composite Ex. 14.)[6]  In the bankruptcy case, Coursen did not dispute that WAMU was the correct entity seeking to collect the money it was owed as a result of her failure to make mortgage payments since at least 2006.  (Dkt. 1-36, pp. 29, 31.)  On February 4, 2009, the bankruptcy case Trustee filed his second motion to dismiss the bankruptcy case because Coursen failed to make the requisite Chapter 13 plan payments.  (LPS Composite Ex. 15.)  On March 13, 2009, the bankruptcy court granted the Trustee's Motion to Dismiss the bankruptcy case.  (SFG Ex. 4.)  After the bankruptcy case was dismissed, the court in the 2006 case entered yet another order, on April 21, 2009, rescheduling the foreclosure sale to May 20, 2009.  (LPS Ex. 16.)

---

[6]   The Court takes judicial notice of Coursen's 2008 Bankruptcy Case.

Once again, Coursen filed an emergency motion to cancel sale and, as a result, the May

20, 2009 sale was cancelled by court order on May 11, 2009.  (SFG Ex. 2.)

On July 23, 2009, in the 2006 case, Coursen filed a sworn "Motion for Hearing"

(SFG Ex. 1) and on July 24, 2009, she filed a "Motion for Temporary Injunction" because

she believed:

> that certain entities had conspired to have a scheme that I could not
> reasonably discover during times when certain defenses -- I could have
> availed myself of certain defenses.  There's certain things that happened
> that there's time limitation to in -- in terms of attacking a -- a summary
> judgment, and so I remember I read a case called United States versus
> Throckmorton, 18 -- I don't know -- 1886 something ancient,  And I read it,
> and I remember thinking to myself, that's exactly what happened to me.
> There was a scheme that couldn't be readily discovered, and Washington
> Mutual, I felt, worked with Shapiro and Fishman to extend the time that --
> discussions were underway to resolve the situation so that certain defenses
> that I might have had early on had expired, and I thought that they did that
> on purpose, and I thought that they made it very difficult to discover what
> had actually happened.

(LPS Composite Ex. 17.)

In Coursen's July 23, 2009 "Motion for Hearing," she sought to set aside the 2006

foreclosure judgment expressly pursuant to Florida Rule of Civil Procedure 1.540(b)

based on "both intrinsic and extrinsic fraud perpetuated [sic] by her mortgage company

[WAMU] and that 'newly discovered evidence' reinforces her claim."  (SFG Ex. 1.)

Coursen asserted that the final judgment was "procured by fraud."  (Id.)  She requested an

evidentiary hearing.  (Id. at 1.)  Under penalty of perjury, Coursen made the following

assertions:

a.  In February 2006 her mortgage payments increased by $500.  (Id. at 3, ¶ 3.)[7]

b.  Coursen defaulted on her mortgage loan when she failed to pay the June, July and August 2006 mortgage payments.  (Id. at ¶ 4, 5.)

c.  "Plaintiff's representatives . . . recommended that instead of worrying about the foreclosure action [Coursen] should turn her attention to gaining acceptance into the forbearance program, which would give [Coursen] several months worth of grace on her loan payments while simultaneously stopping any foreclosure activity.  Acceptance into forbearance, [Coursen] was led to believe, would nullify foreclosure."  (Id. at 4. ¶ 6.)

d.  "When told by [Coursen] that she planned to put her house on the market in October, 2006, the Plaintiff's representatives assured her that foreclosure would not affect her ability to sell her home."  (Id. at ¶ 8.)

e.  "Because of these assurances, [Coursen] did not fully defend herself in court . . . because of Coursen's own assumption that "aggressive questioning and demands for an accounting of her loan would imperil her acceptance into the forbearance program."  (Id. at ¶ 9.)

f.  Coursen alleged there was "newly discovered evidence" and "intrinsic fraud," citing to Florida Rule of Civil Procedure 1.540(b)(2).  (Id. at 6.)

g.  "In May 2009, the Plaintiff provided a 47-page 'mortgage audit' to the Defendant . . . ."  (Id. at 7, ¶ 9.)

h.  "The mortgage audit clearly shows," according to Coursen, that WAMU erroneously added amounts to her escrow "immediately prior to her default."  (Id. at 8, ¶ 14.)

Coursen has no written documentation to support her assertion that a foreclosure judgment was a condition of WAMU's forbearance program.  (LPS Ex. 29, p. 28.)

---

[7]  Exhibit 22 to Coursen's original Complaint contains a February 2009 letter filed in the bankruptcy case in which she made a contrary assertion, specifically, that her mortgage payments increased by $1,000 -- from $2,000 to $3,000 "a couple of years ago."  (Dkt. 1-36, p. 31.)

Coursen alleges that WAMU made representations that a foreclosure judgment was a condition to the forbearance program, but any such representations were made solely by individuals at WAMU and not by anyone from SFG. (LPS Ex. 29, p. 29.)

On July 6, 2010, a motion to reschedule the foreclosure sale was filed in the 2006 case. (SFG Ex. 2.) Then, on July 9, 2010, Coursen filed her second request for a temporary injunction ("Request"). (SFG Ex. 6.) In that Request, she stated "the Defendant claims extrinsic and other fraud by the Plaintiff both against the Defendant and the Court in securing its summary judgment and will be filing a lawsuit asserting such a claim within 10 days. (Rule 1.540(b))." (Id. at 1, ¶ 2.) On July 20, 2010, the judge in the 2006 case set Coursen's Request for Temporary Injunction for hearing on August 18, 2010 at 11:00 a.m. (SFG Ex. 5.) On the morning of August 18, 2010, the court in the 2006 case denied Coursen's Request and reset the foreclosure sale to September 22, 2010. (SFG Ex. 2.) That same morning, Coursen filed this lawsuit ("2010 lawsuit") as an independent action in state court solely against "J.P. Morgan Chase, f/k/a Washington Mutual Bank." (Dkt. 1-33, p. 1.) The original complaint, among other things, raised again her allegations of "extrinsic fraud" and "standing" issues in the 2006 case. (Dkt. 1-33, pp. 1-19.) Coursen swore that the Complaint's assertions were true. (Id. at 19.) She sought damages of "$423,000.00, this being the difference between the Plaintiff's listing price of her home ($595,000.00) and the balance of the mortgage ($172,000.00)." (Dkt.

1-33, p. 11.)  She does not know of any reason why she was unable to sell her home.

(LPS Ex. 29, p. 13, lines 19-24.)

On August 24, 2010, Coursen filed a Motion for a Temporary Injunction in the 2010 lawsuit to "stop[] the currently scheduled foreclosure sale . . . ." in the 2006 case. (Dkt. 1-30.)  On September 10, 2010, in the 2010 lawsuit, she filed an "Affidavit in Support of Plaintiff's Motion for Temporary Injunction," wherein she swore that in the 2010 lawsuit "that she was the victim of extrinsic fraud in Case #2006 CA008521 NC [the 2006 case], and seeks relief from the foreclosure judgment which was the resolution of that case."  (Dkt. 1-5, p. 1.)  She sought "relief from judgment, pursuant to Rule 1.540(b)."  (Id. at 3.)  Then, on September 15, 2010, in the 2006 case, WAMU moved to cancel the September 22, 2010, foreclosure sale and that motion was granted.  On September 15, 2010, in the 2010 lawsuit, Coursen filed a motion to withdraw her August 24, 2010, Motion for Temporary Injunction because she stated the court in the 2006 case cancelled the upcoming sale.  (Dkt. 1-16.)  On December 27, 2010, Chase moved to dismiss Coursen's 2010 Complaint.  (Dkt. 1-37.)  On June 16, 2011, WAMU filed a motion to reset the foreclosure sale in the 2006 case.  (LPS Ex. 19.)  In the 2010 lawsuit, Chase agreed several times to continue the hearing on its Motion to Dismiss the 2010 Complaint so that Coursen could obtain counsel.  (Dkt. 1-12, pp. 1-2.)

On July 7, 2011, Coursen's present counsel entered an appearance in the 2010 lawsuit.  (Dkt. 1-18.)  In that same year, her present counsel would also go on to represent

Coursen in the 2006 case wherein Coursen continued to file, among other things, motions to vacate final judgment. (LPS Ex. 21.) On July 28, 2011, the magistrate issued his recommended order on Chase's motion to dismiss the 2010 complaint. (Dkt. 1-27, pp. 3-9.) The magistrate's order found that Coursen failed to state claims based upon fraud and that Coursen's claims based upon WAMU's "standing" in the 2006 case "is an affirmative defense and should have been raised in the foreclosure action." (Id. at 6.) The magistrate recommended that the court in the 2010 lawsuit dismiss the complaint and give Coursen 30 days to amend it. (Id. at 7.) On August 18, 2011, the state court in the 2010 lawsuit entered an Order Adopting [the] Recommended Order. (Id. at 1-2.)

On September 19, 2011, Coursen filed a Motion to Extend time to file Amended Complaint in the 2010 lawsuit. (Dkt. 1-2.) In the Motion, she expressly stated that "the Plaintiff is seeking to set aside a Final Judgment of Foreclosure in the case styled Washington Mutual Bank v. Coursen, Case # 2006-CA-008521, currently pending in this Court" and "the Plaintiff believes that the issues in this case would be more streamlined after the Motion to Vacate the Final Judgment of Foreclosure is heard by the Trial Court in the 2006 case. Plaintiff will have the Motion to Vacate filed within the next 48 hours." (Dkt. 1-2.) More than 48 hours later, on September 27, 2011, Coursen, no longer *pro se*, in the 2006 case filed another Verified Motion to Vacate Final Summary Judgment ("Motion to Vacate") under Florida Rule of Civil Procedure 1.540(b). (LPS Ex. 21.)

Coursen testified that she does not know whether the information contained in the Goebel Affidavit is accurate.  (LPS Ex. 29, p. 45.)  She testified that she accepts everything contained in the Goebel Affidavit as true statements of fact.  (Id. at 82.)  Although Coursen testified that she has no factual basis to dispute the amount listed as the unpaid principal balance in Goebel's Affidavit, (id. at 83, lines 18-20), she does not have a factual basis to dispute the accuracy of any of the itemized figures in the Goebel Affidavit, (id. at 85), and she does not believe she can hire any person to calculate the figures in Goebel's Affidavit for her, (id. at 84-85), she later testified, during the same deposition, based on her belief that her payments improperly increased before the 2006 case was filed, that the figures in the Goebel Affidavit might not be accurate.  (Id. at 281.)  Coursen is unable to identify any facts supporting her belief that her payments were improperly increased in 2006.  (Id. at 283.)

Coursen's sworn statements in the September 27, 2011, Verified Motion to Vacate Final Summary Judgment in the 2006 case are identical to many of the factual allegations in this lawsuit which are set forth in her First Amended Complaint.  For example, paragraphs 1 through 22 of the Verified Motion are identical to paragraphs 20 through 42 of Coursen's First Amended Complaint in this case.  The Motion to Vacate cited as authority a September 2006 newsletter called "The Summit" purportedly published by Fidelity National Foreclosure Solutions, Inc. (id. at 8 n. 10) -- the same newsletter cited to and attached to Coursen's First Amended Complaint in this 2010 lawsuit.  (See Dkt. 2-1.)

-15-

On October 6, 2011, the court in the 2006 foreclosure case once again reset the foreclosure sale to November 14, 2011, nearly five years (to the day) after final summary judgment had been entered in the 2006 case.  (LPS Ex. 22.)

On October 24, 2011, the court in the 2006 case denied Coursen's Motion to Vacate.  (LPS Ex. 23.)   Then, on November 3, 2011, Coursen filed a "Motion for Rehearing of Motion to Vacate Judgment and/or Renewed Motion to Vacate Summary Final Judgment and to Cancel and/or Stay the Foreclosure Sale set for November 14, 2011" ("Motion for Rehearing"). (LPS Ex. 24.)  The Motion for Rehearing once again sought to set aside the final judgment under Rule 1.540(b) and also argued that the judgment was "void" due to lack of standing.  (Id.)  On November 14, 2011, the foreclosure sale finally took place in the 2006 case.  (SFG Ex. 2.)  On November 15, 2011, the court denied Coursen's November 3, 2011, Motion for Rehearing in the 2006 case.  (LPS Ex. 25.)  On November 23, 2011, Coursen filed an "Objection to November 14, 2011 Sale and Request a Evidentiary Hearing based upon Fraud on the Court" ("Objection") in the 2006 case.  (LPS Ex. 26.)  This document repeated arguments based on standing and contained numerous allegations identical to the ones asserted in the First Amended Complaint in this case and to Coursen's September 27, 2011 Verified Motion to Vacate Final Judgment in the 2006 case that had been disposed of by the court in the 2006 case.  (LPS Exs. 21 & 26.)  On December 15, 2011, Coursen filed a Notice of Appeal in the 2006 case, appealing the October 24, 2011 Order denying her Verified

Motion to Vacate Final Judgment and the November 15, 2011 Order denying her Motion for Rehearing.  (LPS Ex. 28.)

On January 6, 2012, the Second District Court of Appeal denied Coursen's Motion for Extension of time to file her Initial Brief.  (SFG Ex. 7.)  On January 13, 2012, Coursen filed a Notice of Voluntary Dismissal of her appellate case.  (Id.)  On March 6, 2012, Coursen filed a First Amended Complaint in the 2010 lawsuit.  (Dkt. 2.)  On March 27, 2012, the court in the 2006 case denied Coursen's "Objection to November 14, 2011 Sale and Request a Evidentiary Hearing based upon Fraud on the Court."  (LPS Ex. 27.)  On March 30, 2012, Defendant Chase removed the 2010 lawsuit to this federal court.

Coursen has not been able to identify any damages she has sustained as a result of the alleged wrongful conduct of the defendants in this lawsuit.  (LPS Ex. 29, pp. 21-22.)  As of January 29, 2013, Coursen could not say when she would compute the damages for this lawsuit filed in 2010.   (Id. at 135.)  She seeks return of the home that was foreclosed in 2006.  (Id. at 54.)  According to Coursen, when somebody at WAMU told her that a fax machine was not working, after Coursen faxed documents, this was fraudulent behavior because the WAMU representative did not check to see if the fax machine was working before Coursen faxed the documents.  (Id. at 63.)  Coursen testified that her damages result from WAMU, then Chase, not trying "to get [her] back on track to re-instate the loan, to have . . . a good resolution to let [her] privately sell [her] house."  (Id. at 64.)  Her belief that WAMU was not the proper party to foreclose is based solely on the

2006 assignment of mortgage that was executed after the 2006 foreclosure suit began. (Id. at 45-46.)  Coursen cannot identify any other proper party besides WAMU who would have been authorized to foreclose her mortgage. (Id.)  Coursen does not know who owns the subject mortgage loan.  (Id. at 204.)

Other than the 2006 assignment of mortgage and generalized allegations about WAMU's use of purported "robo-signers," Coursen has no other basis for her belief that WAMU was not the proper party to foreclose in the 2006 lawsuit.  (Id. at 47.)  The basis for her assertion that the persons who signed the 2006 assignment of mortgage, Eric Tate and Mark Cardenas, were not authorized to do so an online newsletter called "The Summit."  (Id.)  Although Coursen believes a party's standing is based upon an assignment of mortgage, she testified that even if the 2006 AOM was executed before the 2006 case, she does not know whether WAMU would have been entitled to foreclose her mortgage.  (Id. at 263.)  Out of the 60 months of payments due since 2006, Coursen claimed she made 10 and admittedly was allowed to live in her home for at least six years since the suit was filed.  (Id. at 209.)  She testified that her home was on the market from 2005 through 2008.  (Id. at 70, lines 19-20.)  Coursen testified she received two offers to buy her home and that the first offer fell through because her "real estate agent was concerned about [her] divorce . . . the buyers went away."  (Id. at 71-72.)  She testified that WAMU agreed to postpone the foreclosure sale because she called WAMU and stated she wanted more time to sell her house.  (Id. at 72.)  Coursen has no documents

showing that she made mortgage payments (id. at 145) and the documents she had

showing that she made any mortgage payments were stolen from her home in 2008 (id. at

147).  Although she testified that she never received an accounting on her mortgage loan

(id. at 246), in the Motion for Hearing she filed in the 2006 case in July 2009, she

asserted that WAMU provided her with a 47-page loan audit (SFG Ex. 1, p. 7, ¶ 9.)

It was not until March 30, 2012 that Coursen amended her complaint to include

Defendants. LPS, FNIS, FNF, LPSDS and Goebel.  With respect to LPSDS, LPS, FNIS

and FNF, Coursen admits that she has never received or sent one document to these

entities, that she has never communicated with these entities, and that she has no idea

what these entities did that provides a basis for liability.  (LPS Ex. 29, pp. 135-36, 142-

43.)  She testified that she did speak to Goebel years after the fact – calling her on the

phone at the "Jacksonville" office of LPSDS and hanging up after hearing her voice

without saying anything.  (Id. at 136.)  Evidently, however, Goebel always worked in the

Minnesota office.

## DISCUSSION

### Defendants LPS Default Solutions and Dory Goebel

#### Litigation Privilege

Coursen's claims are based on allegations that Defendants fabricated the Goebel

Affidavit and the 2006 AOM and caused them to be submitted to the state court in order

to obtain final summary judgment for WAMU; however, the undisputed facts confirm

that the conduct she complains of was related to actions taken during the course of the 2006 lawsuit.  Federal and Florida law both recognize absolute immunity from civil actions based upon an attorney's conduct in previous litigation.  "[A]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding." Kinsey v. MLH Fin. Servs., 2013 WL 536019, at *2 (11th Cir. 2013) (unpublished) (citing Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So. 2d 380, 383-84 (Fla. 2007) and Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co., 639 So. 2d 606, 608 (Fla. 1994)). The essence of immunity from suit is the entitlement not to stand trial or face the other burdens of litigation.  Mitchell v. Forsyth, 472 U.S. 511, 526 (U.S. 1985).   The privilege applies here because to allow Coursen to sue Defendants based on conduct occurring during the course of the state proceeding in furtherance of litigation would pile litigation on litigation without end

Preclusion

The Court agrees with Defendants that this lawsuit amounts to another attempt to re-litigate the issues Coursen has already asserted in the underlying foreclosure action. As set forth in the Case Background portion of this Order, Coursen has already challenged the judgment of foreclosure on the basis of alleged fraud and deficiencies in connection with the 2006 AOM and Affidavit on no fewer than seven occasions.

-20-

Collateral estoppel or "issue preclusion" applies in this case to bar relitigation of a question or issue previously decided against a party who had "a 'full and fair opportunity' to litigate that issue in [an] earlier case." Allen v. McCurry, 449 U.S. 90, 94-95 (1980). For collateral estoppel to bar relitigation of an issue four criteria must be met:  (1) the issue must be identical in the pending case to that decided in the earlier proceeding; (2) the issue must necessarily have been decided in the earlier proceeding; (3) the party to be estopped must have been a party or have been adequately represented by a party in the earlier proceeding; and (4) the issue must actually have been litigated in the first proceeding.  Montalbano v. Comm'r, 307 F. App'x 322, 323 (11th Cir. 2009) (unpublished) (citing In re Raiford, 695 F.2d 521, 523 (11th Cir. 1983)).  Similarly, in order to assert res judicata, there must be: (1) a final judgment on the merits; (2) rendered by a court of competent jurisdiction; (3) parties, or those in privity with them, that are identical in both suits; and (4) the same cause of action.  Tuscano v. Evening Journal Ass'n, 179 F. App'x 621, 625 (11th Cir. 2006).  Because all relevant data and legal records are before the court, the demands of comity, continuity in the law, and essential justice mandate judicial invocation of the principles of preclusion here.  See Carbonell v. La. Dep't of Health & Human Res., 772 F.2d 185, 189 (5th Cir. 1985); see also Allen, 449 U.S. 90, 97-99 (1989) (holding that the Full Faith and Credit Act, 28 U.S.C. § 1738, requires this Court to give the same preclusive effect to state court actions as Florida courts would).

Coursen's First Amended Complaint seeks to overturn the state court's 2006 final summary judgment.  She specifically states that:

> Plaintiff is seeking an order from this Court, finding that the judgment of foreclosure was obtained in violation of her Constitutional rights; was obtained by means of fraud; and an order setting aside the judgment of foreclosure that was fraudulently obtained, and obtained in violation of the US and State Constitutional Rights of the Plaintiff including, but not limited to 5th and 14th Amendment Due Process and Constitutional Violations; and to set aside the judgment as an independent action as further authorized by Florida Statutes Florida Rule of Civil Procedure 1.540.

(Dkt. 2, ¶ 2.)   During her deposition, Coursen testified that part of the relief she seeks in this lawsuit is to have this Court give her back the home which was foreclosed upon in the 2006 case.  (LPS Ex. 29, p. 54.)  She also testified that all of her damages "stem from the fact that her home was wrongfully foreclosed upon."  (Id. at 56.)  Further, Coursen alleges in her First Amended Complaint that:

> she has suffered by reason of the attempts of the defendants, their associates, and co-conspirators, to wrongfully eject her from her home of more than a decade.  The activities of the defendants were, and are, unlawful racketeering activity and/or conspiracy that give rise to relief by virtue of causing harm to Plaintiff by actions committed in their quest to procure the judgment in the foreclosure case.

(Dkt. 2, ¶ 1.)  The "activities" referenced by Coursen here are identical to those activities that Coursen swore to, raised, litigated, and which were repeatedly ruled upon in the 2006 case, e.g., the use of the Goebel Affidavit in support of summary judgment and Coursen's allegations that WAMU was not the proper party (or did not have "standing" or the right

to enforce the note and foreclose the mortgage) based on, according to Coursen, the 2006

AOM.  (See LPS Ex. 29, pp. 45-46.)

Coursen also seeks to have this Court decide the very same issues that she

repeatedly brought before the court in the 2006 foreclosure case -- and were ruled upon.

The sworn attestations in her Verified Motion to Vacate Final Summary Judgment in the

2006 case (and ruled upon by that court) are identical to her allegations in this lawsuit –

word for word.  (SFG Facts, ¶ 49.)  Even after the foreclosure sale finally took place

nearly five years after the entry of the 2006 FSJ, Coursen filed an "Objection to

November 14, 2011 Sale and Request [for] a Evidentiary Hearing based upon Fraud on

the Court"  ("Objection") (SFG Facts, ¶ 56.)  The Objection again contained the same

allegations made in her prior motions to vacate the 2006 MSJ and are now made here.

(Id.)  Because the issues in this lawsuit are identical to those that Coursen repeatedly and

previously litigated and were ruled upon in the 2006 case, Coursen is barred from

relitigating the same issues in this suit and Defendants are entitled to the entry of final

judgment in their favor.

<u>Standing</u>

The only relevant inquiry under Florida law as to whether a party has standing in a

foreclosure suit is whether that party has the right to enforce the note under section

673.3011, Florida Statutes (2012).  See Harvey v. Deutsche Bank, 69 So. 3d 300, 304

(Fla. Dist. Ct. App. 2011).  A party who possesses the original note bearing a blank

endorsement is a "holder" of the note (under section 673.3011) and has "standing" to foreclose.  See Mortgage Elec. Registration Sys., Inc. v. Azize, 965 So. 2d 151, 153 (Fla. Dist. Ct. App. 2007); Harvey, 69 So. 3d at 304.  In this case, it is undisputed that the original note containing a blank endorsement was filed with the court in the 2006 case at the time the 2006 FSJ was rendered.  (See Dkt. 2, p. 11, ¶ 30.)  Assignments of mortgage are irrelevant to a determination of standing.  See Harvey, 69 So. 3d at 304.  But, nevertheless, under Florida law Coursen as a non-party to the assignment lacks standing to contest it.  See In re Canellas, 2012 WL 868772 (M.D. Fla. 2012) (holding that a borrower lacked standing to challenge assignment based on noncompliance with pooling and services agreement where borrower was not a party to the agreement, a third party beneficiary, or an investor in the pooled mortgages).

The Florida statute governing the recording of assignments of mortgage is only applicable between competing creditors and is unrelated to whether a creditor has the right to foreclose a mortgage.  See Aum Shree of Tampa, LLC v. HSBC Bank USA, N.A., 449 B.R. 584, 592 (Bankr. M.D. Fla. 2011).  Ownership of an instrument is also irrelevant to a determination of standing in a foreclosure suit.  See Mortgage Elec. Registration Sys., Inc. v. Revoredo, 955 So. 2d 33, 34 (Fla. Dist. Ct. App. 2007) (holding that it does not make any difference whether the Plaintiff was the "owner" or not). Section 673.3011, Florida Statutes, states that "a person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument."  Thus,

under Florida law, WAMU had the right to enforce Coursen's note and had standing in the 2006 case, irrespective of any assignments of mortgage or documents related to "ownership."

Civil Conspiracy

Coursen claims that all Defendants acted in a conspiracy to defraud her.  To state a claim for civil conspiracy, the Plaintiff must allege: (1) an agreement between two or more parties; (2) to perform an unlawful act; (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy.  <u>Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putman County</u>, 616 So. 2d 562, 565 (Fla. Dist. Ct. App. 1993).  Coursen fails to establish a single fact regarding the nature and content of the alleged agreement between the Defendants, and offers no specific allegations regarding the scope of the conspiracy or when the agreement was entered.  Moreover, although Count III is addressed to "all Defendants," there is no evidence that "all Defendants" agreed to commit a conspiracy.  Chase was not involved in any Assignment of Mortgage between WAMU and Fannie Mae and was not a party to such transaction.  Coursen also cannot improperly lump all Defendants together in this conclusory and meritless claim, especially since some of the Defendants did not possess the mortgage and note at the time some of the allegedly improper acts occurred.  Additionally, it was not until March 2012 that Coursen first named Defendants in this lawsuit and for the first time asserted all of her present causes of action.  She claims in a

-25-

conclusory fashion that all Defendants created false or fraudulent documents in order to obtain the final summary judgment in November 2006.  Yet, she has testified that she has no reason to suspect that the information contained in the Affidavit was false and admits that she has no evidence to dispute its accuracy.  (LPS Ex. 29, pp. 45, 81-82.)  Goebel testified that she had access to the relevant financial data, the same data used by WAMU's attorneys to prepare the Affidavit, and relied on the work product of WAMU's attorneys.  (Dkt. 90, Goebel Depo., pp. 48, 56-57, 135-36.)  Furthermore, there is a four-year statute of limitations for civil conspiracy claims under Florida law.  See § 95.11(3)(o), Fla. Stat. (2012).  She does not allege any wrongful conduct occurring after November 2006, the conduct complained of should have been discovered within the four-year time frame and, therefore, her 2012 claim is not only meritless, it is untimely.

Abuse of Legal Process

As to Coursen's claim of abuse of process, such a claim requires the use of the criminal or civil legal process against another primarily to accomplish a purpose for which it was not designed.  Bothmann v. Harrington, 458 So.2d 1163, 1169 (Fla. Dist. Ct. App. 1984).  For the cause of action to exist, there must be a use of the process for an immediate purpose other than that for which it was designed.  There is no abuse of process, however, when the process is used to accomplish the result for which it was created, regardless of an incidental or concurrent motive of spite or ulterior purpose.  As

noted in <u>Bothmann</u>, the usual case of abuse of process involves some form of extortion. 458 So.2d at 1169.

The undisputed facts of this case confirm that Plaintiff was sued in a foreclosure action and notified of the suit by service of process.  Further, the submission of affidavits and documents in a foreclosure case does not constitute "process" or an abuse of process under Florida law.  <u>See</u> <u>Huber v. GMAC Mortgage, LLC</u>, 2011 WL 6020410, at *3 (M.D. Fla. Dec. 2, 2011); <u>see also</u>, <u>Antoine v. State Farm Mut. Auto. Ins.</u>, 662 F. Supp. 2d 1318, 1325 (M.D. Fla. 2009) (holding that "the filing of an affidavit in state court by the Defendant cannot . . . constitute abuse of civil legal process without anything further..."). This is true even if the affidavits contain false statements.  The notion that an abuse of process claim can be based on the theory of "injection of a lie into the judicial process" has been rejected.  <u>Rauh v. Coyne</u>, 744 F. Supp. 1186, 1194 (D.D.C. 1990) (finding that abuse of process does not arise from a misrepresentation to the Court).

Coursen does not allege, nor is there any factual support, that the affidavits were offered, or the foreclosure proceeding itself was initiated, for purposes other than those for which it was intended and designed.  There is no allegation that the foreclosure proceeding was brought for any purpose other than to foreclose on Coursen's property. The purpose of the proceedings against Coursen was to enforce the note and the security interest of WAMU.  Thus, the process in the 2006 case was used to accomplish the result for which it was created.  After all, Coursen admitted that she was in default under her

mortgage loan and admitted she stopped making mortgage payments before the 2006 case

was filed.  (See LPS Ex. 5, SFG Ex. 1, p. 3, ¶¶ 4, 5.)  Furthermore, there is a four-year

statute of limitations for abuse of process claims under Florida law.  See § 95.11(3)(p),

Fla. Stat. (2012).  Because the alleged wrongful conduct took place before November

2006 and should have been discovered during the four-year time frame, Coursen's 2012

claim is not only unsupported by the evidence in this case, but it is untimely.

FDUTPA, FDCPA & FCCPA Violations

The FDUTPA protects "the consuming public and legitimate business enterprises

from those who engage in unfair methods of competition, or unconscionable, deceptive,

or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla.

Stat.  Defendants' creation of documents for use in foreclosure cases simply does not

constitute "trade or commerce.'  State Office of Atty. Gen. v. Shapiro & Fishman, LLP,

59 So. 3d 353 (Fla. Dist. Ct. App. 2011) (finding that "fabricating or presenting false or

misleading documents for utilization in foreclosure cases" did not "fall within the rubric

of "trade or commerce").  In addition to being meritless, Coursen's claim is time-barred.

The limitations period for Coursen to file her FDUTPA was four years year from the date

of the allegedly wrongful act.  Sundance Apartments I, Inc. v. General Elec. Cap. Corp.,

581 F. Supp. 2d 1215, 1223 (S.D. Fla. 2008).  The latest dates on which the alleged

wrongful actions could be attributed to any Defendant were October 31, 2006 (the date

the 2006 AOM was recorded) and November 6, 2006 (the date the Affidavit was filed, yet

Coursen did not file her First Amended Complaint adding these Defendants to the lawsuit until March 6, 2012, despite the fact that she could have discovered the wrongful conduct complained of during the four-year time frame.

To establish a claim under the FDCPA, Coursen must establish that: (1) she has been the object of collection activity arising from a consumer debt; (2) Defendants are debt collectors as defined by the FDCPA; and (3) Defendants have engaged in an act or omission prohibited by the FDCPA.  Fuller v. Becker & Poliakoff, P.A., 192 F. Supp. 2d 1361, 1366 (M.D. Fla. 2002).  The FCCPA, Florida's counterpart to the FDCPA, prohibits an entity from "[c]laim[ing], attempt[ing], or threat[ing] to enforce a debt . . .[with] know[ledge] that the debt is not legitimate."  § 559.72(9), Fla. Stat. (2012).  Filing a foreclosure lawsuit is not debt collection activity under either Act.  Trent v. Mortgage Electronic Registration Systems, Inc., 618 F. Supp. 2d 1356, 1360-61 (M.D. Fla. 2007).  Furthermore, it is beyond dispute that Coursen failed to satisfy her outstanding debt to WAMU inasmuch as she has repeatedly admitted that her mortgage loan was in default as far back as October 2006 in the Answer filed in the 2006 case. (see LPS Ex. 5).  And, as previously discussed, WAMU had the right to enforce the Note.  The evidence simply does not support Coursen's conclusory claims that Defendants manufactured evidence and sham pleadings to recover on a debt that did not exist.

Finally, the limitations period for Coursen to file her FDCPA and FCCPA claims was one year from the date of the allegedly wrongful act.  See 15 U.S.C. § 1692k(d); §

559.77(4), Fla. Stat.  As stated above, the latest dates on which the alleged wrongful

actions could be attributed to any Defendant were October 31, 2006 (the date the 2006

AOM was recorded) and November 6, 2006 (the date the Affidavit was filed), yet

Coursen did not file her First Amended Complaint adding these Defendants to the lawsuit

until March 6, 2012.  Through due diligence, she should have discovered Defendants'

alleged wrongful conduct within the allotted time.  Thus, her claim is meritless and

untimely.

### RICO Violations

In a conclusory fashion, Coursen alleges that all Defendants acted in an enterprise

with the goal to employ the United States mail service, Florida state courts, and perjured

and fabricated evidence to divest her of her homestead.  The four central elements to any

civil RICO claim are:  (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of

racketeering activity.  See Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1282 (11th

Cir. 2006).  In addition, pursuant to 18 U.S.C. § 1964(c), in civil cases Coursen must also

establish: (1) the requisite injury to "business or property" and (2) that such injury was

"by reason of the substantive RICO violation."  Williams, 465 F.3d at 1282-83.  To

prevail on her 18 U.S.C. § 1962(b) claim, Coursen must also show that her injuries were

proximately caused by Defendants.  Crowe v. Henry, 43 F. 3d 198, 205 (5th Cir. 1995);

see also Danielsen v. Burnside-Ott Aviation Training Center, 941 F. 2d 1220, 1231 (D.C.

1991) (finding that "plaintiffs must allege an acquisition injury, analogous to the use or

investment injury required under section 1962(a) to show injury by reason of a section 1962(b) violation"). Most circuits further require that the "acquisition or maintenance" injury be distinct from injury caused by the predicate acts. Gristede's Foods, Inc. v. Unkechauge Nation, 532 F. Supp. 2d 439, 447 (E.D.N.Y. 2007) (holding that "to state a claim under Section 1962(b), a plaintiff must allege that he suffered an injury resulting from the defendant's acquisition or maintenance of its interest (*i.e.* "an acquisition or maintenance injury"), as distinct from an injury caused by the predicate acts alone.") (citations omitted); Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3rd Cir. 1993) (holding that "a well-pled complaint under section 1962(b), just as with section 1962(a), requires the assertion of an injury independent from that caused by the pattern of racketeering").

Coursen has never claimed, nor is there any factual support for the proposition, that she was injured as a result of Defendants gaining an interest in, or control of, the enterprise through a pattern of racketeering activity or that her injury was independent of any alleged pattern of racketeering. She fails to provide any description of the acquisition or maintenance of any interest in or control of the alleged enterprise. Moreover, in order to establish an "enterprise," Coursen "must prove that each party to the enterprise is separate and distinct from the other." Kelly v. Palmer, Reifler & Assocs., P.A., 681 F. Supp. 2d 1356, 1378 (S.D. Fla. 2009). She fails to meet her burden. Coursen must also show a "pattern" -- *i.e.* that "(1) the defendants committed two or more predicate acts

within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature." <u>Jackson v. BellSouth Telecomms.</u>, 372 F.3d 1250, 1264 (11th Cir. 2004) (citations omitted). However, merely submitting a defective affidavit or AOM is not listed in 18 U.S.C. § 1961 and, therefore, does not constitute a RICO predicate act as a matter of law.

Finally, the statute of limitations bars Coursen's civil RICO claim, as it is subject to a four-year statute of limitations. <u>Agency Holding Corp. v. Malley-Duff & Assocs., Inc.</u>, 483 U.S. 143, 156 (1987). A civil RICO claim accrues and the four-year limitations period begins to run "when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering." <u>Maiz v. Virani</u>, 253 F.3d 641, 676 (11th Cir. 2001) (citation omitted). Coursen relies upon the Affidavit and Assignments of Mortgage which she herself alleges were prepared in May of 2003 (assignment of mortgage) (<u>see</u> First Amended Complaint, ¶ 18(d)(1)); in October of 2006 (assignment of mortgage) (<u>see id.</u> at ¶ 18(d)(4)); and November of 2006 (Goebel Affidavit) as the basis for her RICO claim (<u>see id.</u> at ¶ 36). Because Coursen's civil RICO claims accrued, at the latest, in November 2006, she needed to bring her RICO claims by November 2010 for them to be considered timely. Coursen did not assert her RICO claim, or even name Defendants in this lawsuit, until March 2012 when she filed the First Amended Complaint. Therefore, Coursen's RICO claim is not only meritless, it is also untimely.

<u>Damages</u>

In each claim against Defendants, Coursen requests damages, although she admits that she has no basis for calculating or computing damages, and that she does not know how she will quantify the damages she seeks in this lawsuit.  (LPS Ex. 29, pp. 135-38.) Because Coursen caused her foreclosure by defaulting on her mortgage (<u>see id.</u> at 93, 143, 198), because the documents about which she complains did not cause her damage, and because she has not suffered any articulable damages, Defendants are entitled to the entry of final judgment in their favor on all of Plaintiffs' claims against them.

## Defendant Lender Processing Services, Inc.

LPS is entitled to summary judgment on Plaintiff's claims because it did not exist in 2006.  (<u>See</u> Ex. A, Declaration of Colleen Haley, Vice President and Assistant Corporate Secretary of LPS, ¶ 3.)  It was formed in 2007 as a subsidiary of FNIS and was spun off as an independent public company in July 2008.   <u>See</u> <u>Venn v. St. Paul Fire & Marine Ins. Co.</u>, 173 B.R. 759 (N.D. Fla. 1994) (finding that it was impossible to hold an entity liable when it did not exist at the time of the breach); <u>Smith v. New Leaf Assoc., LLC</u>, 2009 WL 2475072 (M.D. La. 2009) (applying Florida law, granting summary judgment in favor of company that did not exist and therefore could not engage in business at the time of the alleged wrongdoing).  Even if LPS had been in existence at the time of the alleged wrongful conduct that forms the basis of Coursen's claims, it is

entitled to the entry of final judgment in its favor for the reasons set forth by the Court in

its foregoing discussion of Coursen's claims against Defendants LPSDS and Goebel.

### Defendants Fidelity National Information Services, Inc. and Fidelity National Financial, Inc.

Coursen alleges, without any specificity, that all Defendants, including FNIS and

FNF, fabricated the Affidavit executed by Defendant Dory Goebel and the AOM

executed by LPSDS for the purpose of depriving her of her homestead though foreclosure

of a debt based on an "alleged" default.  She simply lumps all Defendants together

without distinguishing among them for pleading purposes or explaining why they cannot

or should not be distinguished.  Coursen fails to allege any facts connecting FNIS or FNF

to her alleged harm.  In fact, none of the individual counts in the Complaint even

references FNIS or FNF.  The only specific references to FNIS or FNF in the Complaint

state as follows:

> LPS was acquired by FNF in 2003 and was subsequently named Fidelity
> National Information Services, Inc. ("FNIS").  In 2008 LPS was spun off
> from FNIS as an independent publicly traded corporation.

(Dkt. 2, ¶ 13.), and:

> Defendant Fidelity National Financial, Inc. ("FNF") ... supplies a range of
> services and products used by mortgage servicers, including title insurance,
> Broker Price Options ("BPO") property inspections, property preservation
> services and, most importantly, computerized mortgages servicing and
> accounting systems for over 50% of the mortgage loans in the United
> States, including the Plaintiff's mortgage.

(Dkt. 2, ¶ 10.)  These bare and conclusory allegations cannot, as a matter of law, support a claim for relief against FNIS or FNF.  Each of Plaintiff's claims requires her to attribute specific acts to FNIS and to FNF in order to hold each liable for the alleged harm. Plaintiff, however, does not attribute a single wrongful act to FNF or FNIS.  The record is devoid of any fact tending to show:  (1) a single deceptive, unfair or unconscionable act or practice of FNIS or FNF under FDUTPA; (2) that FNIS or FNF committed any act or omission prohibited by the FDCPA, or that either Defendant did anything to collect a consumer debt under the FCCPA; (3) that FNIS or FNF committed any act in connection with or in furtherance of a conspiracy; (4) that FNIS or FNF took any action within any litigation whatsoever, much less that either of these Defendant abused any process; or (5) that FNIS or FNF committed a single predicate act supporting Plaintiff's RICO allegations.  In fact, Plaintiff concedes that she had no documents from FNF or FNIS attempting to collect a debt or in any way communicating with her.  (LPS Ex. 29, pp. 142-43.)  She further testified that she does not have, and never has had, in her possession any document from FNF or FNIS.  (Id. at 143.)  Coursen's testimony confirms that she has never had any contact or communication with either Defendant.  (Id. at 135.)  Because no disputed issue of fact implicates FNF or FNIS in conduct that harmed Plaintiff, these two Defendants are entitled to the entry of final summary judgment in their favor on Plaintiff's claims against them.  FNF and FNIS are also entitled to the entry of final

judgment in their favor for the reasons set forth by the Court in its foregoing discussion of Coursen's claims against Defendants LPSDS and Goebel.

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED**:

1.  Defendant Lender Processing Services, Inc.'s sealed Motion for Summary Judgment is granted.

2.  Defendants Fidelity National Information Services, Inc. and Fidelity National Financial, Inc.'s sealed Motion for Summary Judgment is granted.

3.  Defendants LPS Default Solutions, Inc. and Dory Goebel's sealed Motion for Summary Judgment is granted.

4.  The Clerk is directed to enter final judgment in favor of these Defendants as to all of Plaintiff's claims against them, terminate any pending motions, and close this case.

**DONE AND ORDERED** at Tampa, Florida, on June 27, 2013.


_s/Richard A. Lazzara_
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**


COPIES FURNISHED TO:
Counsel of Record